# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PAPPAS TELECASTING INCORPORATED, et al.,[1] Debtors. | Case No. 08-10916 (PJW) |
| | (Jointly Administered) |
| | **Objection Deadline: September 4, 2009 at 4:00 p.m.** (prevailing Eastern time) |
| | **Hearing Date:  September 9, 2009 at 9:30 a.m.** (prevailing Eastern time) |

## CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 9014 APPROVING THE SALE OF THE REMAINING RENO ASSETS TO NEW WORLD TV GROUP, LLC, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

E. Roger Williams, as Chapter 11 Trustee (the "**Trustee**" or the "**Seller**") for jointly administered debtors Pappas Telecasting Incorporated, et al (collectively, the "**Debtors**"), hereby moves for the entry of an order (in the form submitted herewith, the "**Remaining Reno Assets Sale Approval Order**") pursuant to sections 105 and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing Pappas Telecasting of Nevada, L.P. ("**Pappas Telecasting Nevada**" or the "**Sale Debtor**") to sell the Remaining Reno Assets (as defined herein) to New World TV Group, LLC ("**New World**"), or its designee (or to the successful bidder at the Auction (as defined herein), if the Auction is

---

[1]      The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Pappas Telecasting Incorporated (2213), Pappas Telecasting of Central California, a California Limited Partnership (3051); Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903); Pappas Telecasting of Sioux City, L.P. (2089); Pappas Telecasting of Concord, a California Limited Partnership (2459); Pappas Telecasting of Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez, L.P. (2202); Pappas Telecasting of Nevada, L.P. (8024); Pappas Telecasting of Siouxland, LLC (2069); CASA of Washington, LLC (7196); KMPH (TV) License, LLC (None); KFRE (TV) License, LLC (None); Concord License, LLC (None); KTNC License, LLC (None); KPTM (TV) License, LLC (None); WCWG License, LLC (None); KPTII License, LLC (None); KAZH License, LLC (None); KDBC License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

conducted), free and clear of all liens, claims, encumbrances and interests of any kind (collectively, the "**Interests**"). In support of his motion (the "**Remaining Reno Assets Sale Motion**" or this "**Motion**"), the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(N) and (O).

4. The statutory bases for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code, and Rules 2002, 4001, 6004, and 9014 of the Bankruptcy Rules.

## BACKGROUND SPECIFIC TO THIS MOTION

5. This Motion has its antecedents in a motion (the "**Bidding Procedures Motion**") filed by the Trustee on August 14, 2009, seeking the entry of an order [Docket No. 1464] (the "**Bidding Procedures Order**") establishing, among other things, (a) the bidding procedures (in the form submitted to the Court as Exhibit A to the Bidding Procedures Order, the "**Bidding Procedures**") to govern the sale of the Remaining Reno Assets, (b) fixing a date and time for the hearing (the "**Reno Sale Approval Hearing**") on this Motion, (c) directing the Trustee to file this Motion no later than fifteen (15) days before the Reno Sale Approval Hearing, (d) approving the form of notice of (i) the auction (the "**Auction**") to be conducted to implement the sale of the Remaining Reno Assets if a Qualified Bid (as defined in the Bidding Procedures Order) is timely submitted, (ii) the Bidding Procedures, (iii) the Reno Sale Approval Hearing, (e) fixing a deadline for submitting bids for the Remaining Reno Assets, (f) fixing a date and time for the Auction, (g) fixing a deadline for serving and filing objections to this Motion, and (h) providing for certain other relief.

## BACKGROUND

6. On May 10, 2008 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. On May 13, 2008, this Court entered an Order Approving the Joint Administration of the Chapter 11 Cases (Docket No. 43). The Debtors continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code until the appointment of the Trustee.

8. On May 20, 2008, a Notice of Appointment of the Official Creditor Committee (Docket No. 90) was filed by Office of the United States Trustee for this district (the "**United States Trustee**") providing notice of the appointment of the official committee of unsecured creditors (the "**Committee**") in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**").

9. On August 5, 2008, this Court entered an Order Approving the Emergency Motion for Appointment of a Chapter 11 Trustee (Docket No. 258).

10. On or about August 14, 2008, a Notice of Appointment of Chapter 11 Trustee (Docket No. 281) was filed by the Office of the United States Trustee appointing E. Roger Williams as the Chapter 11 trustee with regard to the Chapter 11 Cases.

### The Debtors' Business

11. The Sale Debtor, along with the other Debtors and their non-Debtor affiliates, operated the largest privately-held, commercial television broadcast group in the United States measured in terms of U.S. household coverage (as defined by Nielsen Media Research), comprising 30 full-power and low-power television stations in 22 markets across the United States. The Debtors operated 13 of these television stations in the markets of Fresno, California (two stations), San Francisco, California, Omaha, Nebraska (two stations), Greensboro, North

Carolina, Sioux City, Iowa (two stations), Houston, Texas, El Paso, Texas, Reno, Nevada (two stations), and Yakima-Walla Walla, Washington. The Trustee now oversees the operations of the Debtors' business and properties.

12. Harry J. Pappas served as the Chairman and Chief Executive Officer of the Pappas Debtors prior to the appointment of the Trustee.

13. As set forth in the *Declaration of Harry Pappas in Support of Chapter 11 Petitions and First-Day Motions* (Docket No. 3), in the two years prior to the Petition Date, the declining economy, the tightening credit markets, and the increased cost of energy have adversely affected the Debtors, both directly and indirectly. In addition, the a federal mandate for broadcasters to convert from analog to digital television negatively affected the operating cash flow of the Debtors.

### The Fortress Claim

14. Debtors (i) Pappas Telecasting Incorporated ("**PTI**"), (ii) Pappas Telecasting of Central California, L.P., (iii) Pappas Telecasting of the Midlands, L.P., (iv) WCWG of the Triad, LLC, (v) Pappas Telecasting of Sioux City, L.P., (vi) Pappas Telecasting of Concord, L.P., (vii) Pappas Telecasting of Houston, L.P., (viii) Pappas Telecasting of El Paso-Juarez, L.P, (ix) Pappas Telecasting of Nevada, L.P, (x) Pappas Telecasting of Siouxland, LLC, and (xi) CASA of Washington, LLC (collectively the "**Fortress Borrowers**") are parties to that certain Credit Agreement dated as of March 1, 2006 (as amended, the "**Pre-Petition Credit Agreement**") with Fortress Credit Corp., as Administrative Agent and Facility Agent (the "**Pre-Petition Agent**"), and certain other lenders party thereto, including Fortress Credit Corp (collectively, the "**Pre-Petition Lenders**"). The Debtors' obligations (the "**Pre-Petition Debt**") under the Pre-Petition Credit Agreement, as of the Petition Date, were determined by the Court to be in the aggregate

amount of $329,941,293.68, comprising unpaid principal in the amount of $303,574,665.36, accrued and unpaid interest in the amount of $25,499,267.67, and the Pre-Petition Agent's and the Pre-Petition Lenders' accrued and unpaid fees, costs, expenses and other charges (collectively, the "**Fortress Expenses**") incurred by the Pre-Petition Agent and the Pre-Petition Lenders under the Pre-Petition Credit Agreement in the amount of $867,360.65.[2]

15. Each of the Debtors that is not a Fortress Borrower under the Pre-Petition Credit Agreement (collectively, the "**Fortress Guarantors**") is a party to that certain Subsidiary Guaranty and Security Agreement dated as of March 1, 2006 (the "**Guaranty and Security Agreement**"), among themselves and Fortress Credit Corp., as Administrative Agent, pursuant to which the Fortress Guarantors guaranteed the obligations of the Fortress Borrowers under the Pre-Petition Credit Agreement and pledged and granted a security interest in their assets and property to Fortress (for the benefit of the Pre-Petition Lenders) as security for the Pre-Petition Debt.

16. The Pre-Petition Debt is secured by perfected, valid, enforceable, and non-avoidable, first-priority liens on and security interests (the "**Pre-Petition Liens**") in (i) substantially all of the Fortress Borrowers' real and personal property pursuant to the Pre-Petition Credit Agreement and other security documents executed by the Debtors in favor of the Pre-Petition Lenders; and (ii) all of the equity interests in the Debtors pursuant to that certain Affiliate Pledge Agreement dated as of March 1, 2006 (the "**Pledge Agreement**" and together with the Pre-Petition Credit Agreement, the Guaranty and Security Agreement and all other documents and instruments evidencing, granting collateral to secure or otherwise executed in connection with the

---

[2] Since the Petition Date, the Debtors have paid the Fortress Expenses in full pursuant to the Financing Order (as defined herein), thereby reducing the amount of the Fortress Claim (as defined herein) to $329,073,933.03, without taking into account unapplied funds that Fortress is holding.

transactions giving rise to the Pre-Petition Debt, the "**Pre-Petition Loan Documents**"), among Harry J. Pappas, PTI, the pledgors listed on Annex 1 thereto and Fortress Credit Corp., as Administrative Agent.

17. Pursuant to paragraph 25(e) of this Court's final order in respect of post-petition financing entered on September 10, 2008 (as modified by a certain stipulations among the Committee, Fortress, Harry J. Pappas, Stella Pappas, and the Trustee extending certain deadlines, which stipulations were filed with and approved by the Court, the "**Financing Order**"), the Pre-Petition Liens are deemed valid, duly perfected, binding, enforceable, and non-avoidable, and the claim of Fortress and the Pre-Petition Secured Lenders under the Pre-Petition Financing Documents (as defined in the Financing Order) that is secured by the Pre-Petition Liens (the "**Fortress Claim**") is allowed and shall not be subject to any offset, defense, counterclaim, right of recoupment, recharacterization, disallowance under section 502(d) of the Bankruptcy Code or subordination under section 510 of the Bankruptcy Code.

**The Previous Reno Asset Sale**

18. On September 5, 2008, the Trustee filed a *Motion For An Order Pursuant To Sections 105, 363, 364 And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001, 6004 And 6006 (I)(A) Establishing Bidding Procedures In Connection With The Sale Of The Reno Station Assets, Including A Break-Up Fee And Other Bid Protections, (B) Approving The Form And Manner Of Notices, (C) Scheduling Dates for An Auction And Sale Approval Hearing, (D) Authorizing And Approving (i) The Form Of An Asset Purchase Agreement, (ii) The Incurrence By The Buyer Of The Net TBA Costs And The Digital Conversion Equipment Costs On Behalf Of The Sale Debtors' Estates, (iii) Granting Of A Superpriority Claim To Buyer With Respect To The Net TBA Costs And The Digital Conversion Equipment Costs; (II) Approving The Sale Of*

*Reno Station Assets Free And Clear Of Liens, Claims And Encumbrances To The Successful Bidder; And (III) Approving Procedures To Determine Cure Amounts Related To The Assumption And Assignment Of Certain Executory Contracts And Leases* [Docket No. 347] (the "**Initial Reno Sale Motion**").  In the Initial Reno Sale Motion, the Trustee sought to sell most, but not all, of the tangible and intangible assets and property (collectively, the "**Reno Assets**") of the Sale Debtor and Reno License, LLC (collectively, the "**Reno Debtors**")

19. On October 29, 2008, following a hearing, the Court entered an Order approving the Initial Reno Sale Motion [Docket No. 483] (the "**Initial Reno Sale Order**"), which authorized and approved the transfer and assignment of the Reno Assets by the Reno Debtors to Entravision Communications Corporation ("**Entravision**").  The Reno Assets that the Reno Debtors were authorized to transfer and assign to Entravision did not include the Remaining Reno Assets.  At all times following the entry of the Initial Reno Sale Order, the Remaining Reno Assets were, and continue to be, owned by Pappas Telecasting Nevada.

<u>**The Multiple Station Sale and the Multiple Station Sale Motion**</u>

20. After entry of the Initial Reno Sale Order, the Debtors sought to sell their remaining stations and related assets.  To that end, on October 27,2008, the Trustee filed a *Motion For An Order Pursuant To Sections 105, 363, And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001, 6004, 6006 And 9014 (A) Establishing Bidding Procedures In Connection With The Sale Of Substantially All Of The Debtors' Assets, (B) Scheduling Date And Time To Hold The Auction For The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Interests, (C) Scheduling The Date And Time For The Hearing To Consider (1) The Sale Of The Assets And (2) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Relating To The Assets, And (D) Approving The*

*Form And Manner Of Notice Of The Auction And The Sale Approval Hearing* (the "**Multiple Station Bidding Procedures Motion**") (Docket No. 478).

21. On November 14, 2008, the Court entered an order (the **"Multiple Station Bidding Procedures Order")** (Docket No. 563) granting the Multiple Station Bidding Procedures Motion.

22. On November 26,2008, in furtherance of the Multiple Station Bidding Procedures Order, the Trustee filed a *Motion For An Order Pursuant To Sections 105, 363, And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001, 6004, 6006 And 9014 Approving (1) The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests, (2) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (3) Certain Related Relief* (the "**Multiple Station Sale Motion**") (Docket No. 612), pursuant to which the Trustee sought authority of this Court, among other things, to sell, free and clear of liens, claims, encumbrances and other interests, all or substantially all of the Debtors' assets used or useful in connection with the operation of the following television stations, including, without limitation, all applicable licenses, permits and authorizations issued by or pending before the FCC that are necessary or useful for the business or operation of the Debtors' television stations identified below (the "**Television Stations**") or the conduct of such television stations (such assets, collectively, the "**Multiple Station Assets**"):[3]

*[Remainder of page intentionally left blank]*

---

[3]     The Multiple Station Assets do not include the Remaining Reno Assets.

| Television Station | Facility ID# | Community of License | Debtor Owning Television Station |
|---|---|---|---|
| KMPH-TV | 51488 | Visalia, CA | Pappas Telecasting Incorporated |
| KFRE-TV | 59013 | Sanger, CA | Pappas Telecasting of Central California, a California limited partnership |
| KTNC and KUNO | 21533 8378 | Concord, CA Fort Bragg, CA | Pappas Telecasting of Concord, a California limited partnership |
| KCWK | 84238 | Walla Walla, WA | CASA of Washington, LLC |
| KAZH | 70492 | Baytown, TX | Pappas Telecasting of Houston, L.P. |
| KDBC | 33764 | El Paso, TX | Pappas Telecasting of El Paso-Juarez, L.P. |
| KPTM | 51491 | Omaha, NE | Pappas Telecasting of the Midlands, L.P. |
| KPTH-TV | 77451 | Sioux City, IA | Pappas Telecasting of Sioux City, L.P. |
| WCWG-TV | 35385 | Lexington, NC | WCWG of the Triad, LLC |

23. In accordance with the Multiple Station Bidding Procedures Order, on December 12, 2008 the Trustee conducted an auction for the sale of the Multiple Station Assets. At the conclusion of the auction, the Trustee selected New World, the nominee of the Pre-Petition Agent, as the winning bidder. New World's bid is evidenced by that certain Asset Purchase Agreement (together with all documents and agreements ancillary thereto and executed in connection therewith, the "**Multiple Station APA**"), dated as of December 12, 2008, among New World and the Debtors party thereto pursuant to which, among other things, New World agreed to acquire, and the Debtors agreed to sell, subject to the approval of the Bankruptcy Court

and in consideration of a credit bid by New World in the amount of $260,000,000 (the "**Fortress $260,000,000 Credit Bid**"), all of the Debtors' right, title, privilege and interest in, to and under the "Acquired Assets" (as defined in the Multiple Station APA). The Acquired Assets do not include the Remaining Reno Assets.

24. On January 13,2009, following a hearing before the Court to consider the relief sought pursuant to the Multiple Station Sale Motion, the Court entered its *Order Granting Trustee's Motion for an Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 Approving (1) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (3) Certain Related Relief* (Docket No. 820) (the "**Multiple Station Sale Approval Order**") pursuant to which the Court, among other things, (i) authorized and approved the Multiple Station APA in all respects and the Debtors' execution and delivery of the Multiple Station APA to New World, (ii) authorized and directed the Debtors to consummate the transactions contemplated by the Multiple Station APA, and (iii) authorized and directed the Debtors to assume certain executory contracts and unexpired leases and assign such executory contracts and unexpired leases to New World, subject to, at the time of and effective upon the Closing (as defined in the Multiple Station APA), free and clear of any and all Interests (as defined in the Multiple Station APA).

## The Remaining Reno Assets and the Reno Lease

25. Subsequently, in an effort to maximize value for the Debtors' bankruptcy estates, the Trustee agreed with New World to enter into a lease agreement (the "**Reno Lease**") with New World in respect of all tangible assets and property of Pappas Telecasting Nevada that were not

transferred and assigned to Entravision. In furtherance of that agreement, on May 7, 2009, the Trustee filed a *Motion for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004 Authorizing and Approving the Lease of Certain Equipment to New World TV Group, LLC* [Docket No. 1106] (the "**Reno Lease Motion**"), pursuant to which the Trustee sought this Court's approval of, and authority to enter into, the Reno Lease.

26. On May 26, 2009, following a hearing on the Reno Lease Motion, the Court entered an order [Docket No. 1171] approving, and authorizing the Trustee to enter into, the Reno Lease.

## Marketing of the Debtors' Television Station Assets

27. Prior to the Petition Date, in January 2008, the Debtors retained the investment firm Moelis & Company ("**Moelis**") to assist in valuing and marketing all of the television stations licensed to the Debtors (including the Sale Debtor) and offering them for sale in the open market. The assets and property comprising the Television Stations with respect to which the Debtors requested Moelis' assistance in valuing and marketing included, without limitation, the Remaining Reno Assets.

28. Moelis initially conducted extensive due diligence on the Debtors and interviews with the Debtors' senior management, and with that information worked with the Debtors to prepare confidential information memoranda and offered the Television Stations to potentially interested parties in the marketplace. At the direction of the Debtors, Moelis contacted more than 110 potential strategic financial buyers that it thought would be reasonably interested in acquiring the Debtors' assets. Those parties were selected because of the significant strategic fit and/or relevant investment experience in the sector. Moelis and the Debtors established a data room for

due diligence and held site visits for interested parties.  The process yielded initial indications of value for some of the Debtors' Television Stations.

29. Beginning in May 2008, Moelis re-initiated contact with those parties that it previously had identified as potential bidders and established contact with those parties that had expressed new interest in the Television Stations as a consequence of the Debtors' chapter 11 filing.  The deadline for submitting initial indications of interest initially was established to be July 2008; however, Moelis continued to engage in discussions with additional parties while the newly appointed Trustee was brought up to speed on the portfolio of stations and the status of the sale process.  After preparing updated financial information for all of the Debtors' Television Stations, Moelis and the Trustee engaged in discussions with parties that had expressed an indication of interest in one or more stations.  Subsequently, data room access was provided to interested parties to assist in their diligence efforts.  The data room contained significant financial information, contracts and documents pertaining to the Debtors' operations and financial performance, which instantly could be accessed by potential bidders through the internet.

30. As noted, Moelis' marketing of the assets and property that comprised the Television Stations licensed to the Debtors included, without limitation, the Remaining Reno Assets.  As a result of Moelis' extensive marketing efforts, and for reasons more fully set forth in the Certification of Anish M. Aswani annexed hereto **Exhibit A**, it is the Chapter 11 Trustee's business judgment that Moelis has exhausted the realm of potential purchasers of the Remaining Reno Assets in its marketing efforts leading up to the filing of the Multiple Station Sale Motion, and, after the additional marketing that the Trustee intends to conduct as set forth herein, the Court should enter the Remaining Reno Assets Sale Approval Order authorizing, ratifying and

approving the execution and delivery by the Trustee, on behalf of the Sale Debtor, of the Reno

APA (as defined herein) and determining that the terms and conditions set forth therein for the

purchase by New World of the Remaining Reno Assets constitute the highest and best offer for

the Remaining Reno Assets.

**Assets to be Sold**

31. Pappas Telecasting Nevada owns certain residual assets that were not sold to or

purchased by Entravision when Entravision purchased substantially all of the assets of the Sale

Debtor pursuant to an order of the Bankruptcy Court entered on October 29, 2008.  Those

residual assets (as described more particularly on **Exhibit B** annexed hereto, the "**Remaining**

**Reno Assets**") include, without limitation, antennae, satellite dishes, computer monitors,

cameras, printers, motor vehicles, computer, user stations, software, wireless receivers and

transmitters, tripods, teleprompters, servers, amplifiers, equipment racks, control panels, chairs,

desks, tables, workstations and other personal property.

**The Reno APA**

32. The Trustee, acting on behalf of Pappas Telecasting Nevada, after consulting with his

professional advisers and in the exercise of his reasonable business judgment, proposes to

transfer, assign and sell to New World, the nominee of the Pre-Petition Agent, and New World

has agreed to purchase and acquire from Pappas Telecasting Nevada, the Remaining Reno Assets

subject to the terms and conditions of that certain Asset Purchase Agreement, dated as of August

13, 2009 (the "**Reno APA**"), between Pappas Telecasting Nevada and New World, a copy of

which is annexed hereto as **Exhibit C**, and the entry by this Court of an order authorizing and

approving, among other things, the execution, delivery and performance by the Trustee, on

behalf of Pappas Telecasting Nevada, of the Reno APA.

33. Certain of the principal terms of the Reno APA are set forth below:[4]

- **Purchase Price**: The purchase price for the Remaining Reno Assets shall be $2,500,000 (the "**Purchase Price**"), which shall be in the form of a credit bid (the "**New World Reno Credit Bid**") that shall be offset and credited against the Fortress Claim.

- **Acquired Assets**: All of the "Acquired Assets" (as defined in the Reno APA), as more particularly described on Exhibit B annexed hereto and on Schedule 2 annexed to the Reno APA.

- **Excluded Assets**: Includes the rights of the Sale Debtor under the Reno APA and all consideration payable or deliverable to the Sale Debtor thereunder; any asset set forth on Schedule 3 annexed to the Reno APA; and any Remaining Reno Asset not set forth on Schedule 2 annexed to the Reno APA.

- **Excluded Liabilities**: New World shall not assume or be liable for any Claims, Liens, Encumbrances or Interests or any other liabilities and obligations of the Sale Debtor, or with respect to the Acquired Assets, of any nature whatsoever, whether presently in existence o arising hereafter.

- **Closing Conditions**: Conditions necessary to close this transaction require the entry of the Remaining Reno Assets Sale Approval Order that has not been stayed, modified, reversed or amended and the satisfaction of the other customary conditions under the Reno APA.

- **Closing Date**: The closing shall occur concurrently with the closing of the transactions contemplated by the Multiple Station APA.

## Credit Bid by New World

34. The Remaining Reno Assets are subject to a valid, duly perfected, first-priority, non-avoidable lien held by the Pre-Petition Agent (for the benefit of the Pre-Petition Lenders) as security for the Fortress Claim, which, after taking into account the Debtors' satisfaction of the Fortress Expenses, is in the total unpaid amount of $329,073,933.03. After taking into account the Fortress $260,000,000 Credit Bid for the Acquired Assets and unapplied funds held by the Pre-Petition Agent, the Pre-Petition Agent holds a substantial deficiency claim of more than $54

---

[4] The summary of the terms and conditions set forth in the Reno APA is for descriptive purposes only. To the extent that there is any inconsistency between the description of the Reno APA in this Motion and the actual terms of the Reno APA itself, the terms and conditions of the Reno APA shall govern. In addition, capitalized terms used in this paragraph 33 shall have the respective meanings ascribed to them in the Reno APA.

14

million that is secured by, among other things, the Remaining Reno Assets, and that, pursuant to the Financing Order, is deemed to be an allowed claim. As noted above, New World will acquire the Remaining Reno Assets in consideration of the Purchase Price, which shall be in the form of a credit bid that shall be offset and credited against the Fortress Claim. The proposed Reno Remaining Assets Bidding Procedures Order expressly provides, among other things, that, for all purposes of the Bidding Procedures, the Auction, and the Sale Approval Hearing, the Fortress Claim shall be deemed allowed, and the Pre-Petition Agent, or its nominee, shall be permitted to submit a credit bid pursuant to section 363(k) of the Bankruptcy Code for the Remaining Reno Assets. The Proposed Reno Remaining Assets Sale Approval Order expressly provides that the New World Reno Credit Bid in the amount of the Purchase Price was authorized, valid and proper in all respects pursuant to the provisions of the Bidding Procedures Order and section 363(k) of the Bankruptcy Code.

## RELIEF REQUESTED

35. By this Motion, the Trustee respectfully requests entry of the Remaining Reno Assets Sale Approval Order, in the form accompanying this Motion, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014, (a) authorizing Pappas Telecasting Nevada to sell the Remaining Reno Assets to New World, or its designee, free and clear of all Interests, (b) authorizing, ratifying and approving the execution and delivery by the Trustee, on behalf of Pappas Telecasting Nevada, of the Reno APA, and the performance by Pappas Telecasting Nevada (and the Trustee, on behalf of Pappas Telecasting Nevada) of its duties and obligations thereunder and (c) granting certain related relief.

**BASIS FOR RELIEF**

A.    **The Sale of the Remaining Reno Assets to New World, or a Party Submitting a Higher or Better Bid, Is Authorized by Bankruptcy Code § 363(b)**.

36. Bankruptcy Code section 363(b)(1) provides that "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

37. Assets of a debtor may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so. See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F. 2d 1063, 1070 (2d Cir. 1983); see also In re Abbott Dairies of Pa., Inc., 788 F. 2d 143, 145-47 (3d Cir. 1986) (implicitly adopting articulated business justification test of Lionel Corp. and requiring showing of good faith); In re Del. & Hudson Ry. Co., 124 B. R. 169, 175-76 (D. Del. 1991) (concluding that Third Circuit adopted "sound business purpose" after Abbotts Dairies decision); Titusville Country Club v. PennBank (In re Titusville County Club), 128 B. R. 396, 399 (Bankr. W. D. Pa. 1991); In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B. R. 15, 19 (Bankr. E. D. Pa. 1987).

38. The Trustee has proposed the sale of the Remaining Reno Assets after thorough consideration of all potential alternatives and the Debtors' business prospects and has concluded that the sale of the Remaining Reno Assets in accordance with the procedures set forth in the Bidding Procedures Order is the best method to maximize recoveries to the Debtors' estates and to stop the deterioration of the assets.  Maximization of asset value and preventing business deterioration are sound business purposes, warranting authorization of the proposed sale.  As this

Court is aware, the Debtors cannot sustain a stand-alone operational reorganization due to, among other things, the magnitude of the Debtors' secured debt.

39. The sale of the Remaining Reno Assets is subject to competing bids in accordance with the procedures prescribed by the Bidding Procedures Order, thereby potentially enhancing the Trustee's ability to receive the highest and best value for the Remaining Reno Assets. Consequently, the fairness and reasonableness of the consideration to be received by the Trustee is demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

40. As explained above, the Trustee, through his investment banker, Moelis, has extensively marketed the Remaining Reno Assets. As result of Moelis's marketing efforts, the Trustee believes that the Remaining Reno Assets have been thoroughly and sufficiently shopped to all potential parties having an interest therein.

41. Based on the foregoing, the Sale of the Remaining Reno Assets is justified by sound business reasons and is in the best interests of the Debtors and their estates.

**B.     The Sale of the Remaining Reno Assets Free and Clear of Interests Is Authorized Under Bankruptcy Code § 363(f).**

42. The Chapter 11 Trustee requests authorization to sell the Remaining Reno Assets free and clear of Interests pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) authorizes a trustee to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

(a) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

43. The term "any interest," as used in section 363(f), is not defined in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor, JV, 209 F.3d 252, 259 (3d Cir. 2000). In Folger Adam, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The court observed that, while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." Id. at 258 (citing 3 COLLIER ON BANKRUPTCY 363.06[1]).

44. As determined by the Fourth Circuit in In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in Folger Adam, the scope of section 363(f) is not limited to in rem interests. Thus, the Third Circuit in Folger Adam stated that Leckie held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." Folger Adam, 209 F.3d at 258.

45. Applicable case law provides that a sale of a debtor's assets free and clear of all liens, claims, encumbrances and interests is permissible under section 363(f) as long as the liens, claims, encumbrances and interests attach to the net proceeds of the sale. Folger Adam, 209 F. 3d at 259 ("The holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale."); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

46. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any one of the five conditions enumerated therein will suffice to warrant the sale of the Remaining Reno Assets free and clear of all Interests, except with respect to the Interests, if any, that expressly are being assumed (the "**Assumed Liabilities**") by the Successful Bidder. See Elliot, 94 B.R. at 345.

47. The Trustee submits that each Interest that is not an Assumed Liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses that the Trustee may possess with respect thereto. Accordingly, the Trustee requests authority to sell, transfer and convey the Remaining Reno Assets to New World, or its designee (or to the Successful Bidder, if other than New World, or its designee), free and clear of all Interests (except for the Permitted Encumbrances (as defined in the Reno APA) and the Permitted Exceptions (as defined in the Reno APA)), with such Interests to attach to the proceeds of the Sale, with the same validity (or invalidity), priority and perfection as existed immediately prior to the Sale.

48. It is the understanding of the Chapter 11 Trustee that certain parties may assert liens on the Remaining Reno Assets. The Chapter 11 Trustee will work with these parties to obtain their consent to the Sale and, at a minimum, the Chapter 11 Trustee foresees the Sale will satisfy the second element of § 363(f). See Hargrave v. Township of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D. N.J. 1994) (by not objecting to the sale motion, secured creditor deemed to consent under section 363(f)(2); Pelican Homestead and Savings Ass'n v. Wooten (In re Gabel), 61 B.R. 661, 667 (Bankr. W.D. La. 1985).

49. Regardless of whether such consent is obtained, however, section 363(f)(5) allows a debtor to sell property free and clear of liens when a legal or equitable proceeding exists that will force the lienholder to accept less than full money satisfaction for its interest. In re James, 203 B.R. 449, 453 (W.D. Mo. 1997).

50. The Trustee is informed and believe that the Pre-Petition Agent will consent to the Sale of its collateral (which will satisfy 11 U.S.C. § 365(f)(2)). The Trustee has obtained lien searches to determine the universe of potential parties who hold Interests in or against the Remaining Reno Assets. The Trustee has served such purported lienholders with notice of this Motion, and will serve such parties with notice of any Order approving the relief requested by this Motion.

51. Accordingly the Chapter 11 Trustee submits that he be authorized sell the Remaining Reno Assets free and clear of all Interests (other than the Permitted Encumbrances and the Permitted Exceptions) pursuant to Bankruptcy Code § 363(f), and any potential Interest holders should be compelled to look exclusively to the proceeds of the Sale for satisfaction of their respective Interests.

**C.      The Pre-Petition Agent Is Entitled to Credit Bid.**

52. As set forth in the Bidding Procedures Order, for all purposes relating to the Bidding Procedures, the Auction, and the Reno Sale Approval Hearing, the Fortress Claim shall be deemed allowed, and the Pre-Petition Agent, or its nominee, New World, (a) shall be permitted to submit a credit bid pursuant to section 363(k) of the Bankruptcy Code for the Remaining Reno Assets, (b) shall not be required to post any Deposit in order to qualify to credit bid in such fashion, and (c) shall be deemed to be a Qualified Bidder, and its credit bid shall be deemed to be a Qualified Bid.

53.     The Pre-Petition Agent's right to credit bid up to the full, unpaid amount of the

Fortress Claim in connection with the bidding on the Remaining Reno Assets is consistent with

Bankruptcy Code § 363(k), which provides as follows:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k).

54.     Under section 363(k), a secured creditor is entitled to bid an amount up to its

entire claim; the "offset" (*i.e.*, credit) is not limited to the value of the collateral. <u>See</u>, <u>e.g.</u>, <u>In

re Submicron Systems Corp.</u>, 432 F.3d 448, 459 (3d Cir. 2006) ("It is well settled among district

and bankruptcy courts that creditors can bid the full face value of their secured claims under §

363(k)"); <u>In re Suncruz Casinos, LLC</u>, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003) ("The plain

language of [section 363(k)] makes clear that the secured creditor may credit bid its *entire claim*,

including any unsecured deficiency portion thereof.") (emphasis in original); <u>In re Morgan

House Gen. P'Ship</u>, 1997 U.S. Dist. LEXIS 1306 at *1 (E.D. Pa. 1997);  <u>In re Realty Invs., Ltd.

V</u>, 72 B.R. 143, 146 (Bankr. C.D. Cal. 1987); <u>Criimi Mae Servs. Ltd. P'ship v. WDH Howell,

LLC (In re WDH Howell, LLC)</u>, 298 B.R. 527, 532, n.8 (D. N.J. 2003).

55.     Thus, the right to credit bid is not affected by any prior valuation of an allowed

claim under section 506(a) of the Bankruptcy Code.  <u>In re Submicron Systems Corp.</u>, 432 F.3d at

461 ("§ 363 speaks to the full face value of a secured creditor's claim, not to the portion of that

claim that is actually collateralized as described in § 506."); <u>In re Morgan House Gen. P'ship</u>,

1997 U.S. Dist. LEXIS 1306 at *5  (holding that creditors may bid "to the extent of their claim"

under §  363(k)); <u>In re Midway Invs., Ltd.</u>, 187 B.R. 382, 391 n.12 (Bankr. S.D. Fla. 1995) ("[A]

secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof") (citing legislative history).

56.     Nor is a section 506(a) valuation required before a sale pursuant to section 363(b) of the Bankruptcy Code can be approved.  In re Submicron Systems Corp., 432 F.3d at 461 ("*Section 363* attempts to *avoid* the complexities and inefficiencies of valuing collateral altogether by substituting the theoretically preferable mechanism of a free market sale to set the price.  The provision is premised on the notion that the market's reaction to a sale best reflects the economic realities of assets' worth.  Naturally, then, courts are not required first to determine the assets' worth before approving such a market sale.") (emphasis in original).

57. As discussed above, pursuant to the Financing Order, the Pre-Petition Agent holds a claim in the unpaid amount of $329,073,933.03, as of the Petition Date, that is deemed allowed and is secured by a valid, duly perfected, first-priority, non-avoidable lien on substantially all of the assets of the Debtors.  Accordingly, at the Auction (if one is conducted), the Pre-Petition Agent has the right to bid up to the entire unpaid amount of the Fortress Claim for the Remaining Reno Assets.

**D.     New World, or the Successful Bidder, if Other than New World, is Entitled to the Full Protection of Bankruptcy Code § 363(m).**

58. 11 U.S.C. § 363(m) states:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

59. While the Bankruptcy Code does not define "good faith", the Third Circuit in Abbotts Dairies, has held that:

> [t]he requirement that a Buyer act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a buyers good faith status at a judicial sale involves fraud, collusion between the buyer or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F. 2d at 147.

60. The Trustee submits, and intends to make an appropriate showing at the Sale Approval Hearing to demonstrate, that the Reno APA is the result of a negotiated, arm's length transaction in which New World acted in good faith at all relevant times. The Trustee is prepared to make a similar showing in the event that the Successful Bidder is a party other than New World. The Trustee thus requests that the Court make a finding at the Reno Sale Approval Hearing that New World, or the Successful Bidder, if other than New World, has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code.

## WAIVER OF BANKRUPTCY RULE 6004(h)

61. Due to the necessity to facilitate the orderly and, more importantly, timely sale of the Remaining Reno Assets, the Chapter 11 Trustee requests that the Court lift the stay provided by Bankruptcy Rule 6004(h), which provides that an order authorizing the sale of property is stayed for ten (10) days after the entry of such order, unless the Court orders otherwise. Given the sufficiency of notice to all parties in interest, the Trustee requests that the Court relieve it of the stay provided by Rule 6004(h).

## NOTICE PROCEDURES

62. Pursuant to the Bidding Procedures Order, if entered, the Trustee will cause (x) a conformed copy of the Bidding Procedures Order, (y) the Bidding Procedures, and (z) a notice of the Auction, the Bidding Procedures and the Reno Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B to be sent timely by first-class mail, postage prepaid, to: (i) the United States Trustee, (ii) counsel to the Committee, (iii) all creditors

23

and equity security holders identified in the list of creditors and equity security holders heretofore filed herein with the Court by the Pappas Telecasting of Nevada, L.P. and Reno License, LLC debtors; (iv) any party asserting a lien a against all or any portion of the Remaining Reno Assets, (v) all parties, or their counsel, who have, in writing, expressed an interest in or submitted written offers to the Debtors, Moelis or the Trustee for all or any portion of the Remaining Reno Assets, (vi) the Internal Revenue Service, (vii) the FCC, (viii) all federal, state and local regulatory and taxing authorities that have a known interest in the relief requested in this Motion, (ix) all parties who have requested notice pursuant to Bankruptcy Rule 2002, (x) the Attorney General's Office for the State of Nevada, (xi) the United States Securities and Exchange Commission, (xii) the United States Attorney's Office for the States of Nevada and Delaware, respectively, (xiii) counsel to the Pre-Petition Agent, and (xiv) counsel to certain of the Pre-Petition Lenders (all such parties, collectively, the "**Notice Parties**").  In light of the nature of the circumstances and the relief requested herein, the Trustee submits that such notice is reasonably calculated to provide timely and adequate notice to the Debtors' creditors, those parties most interest in the Chapter 11 Cases, and those parties potentially interested in bidding on the Remaining Reno Assets of relevant information concerning the Auction, the Bidding Procedures, this Motion and the Sale Approval Hearing.

63. The Trustee submits that, under the circumstances, no further notice is necessary, and that such notice both satisfies the requirements of Rule 2002 and is adequate and reasonable notice of the Sale under applicable Third Circuit law.

## NO PRIOR REQUEST

64. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court (a) enter the Remaining Reno Assets Sale Approval Order, approving, among other things, the sale of the Remaining Reno Assets to New World, or its designee (or the Successful Bidder, if other than New World), free and clear of all Interests, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, and (b) grant the Trustee such other and further relief as is just and proper.

DATED:  August 17, 2009                    Respectfully submitted,

**McCARTER & ENGLISH, LLP**
Charles A. Stanziale, Jr.
Jeffrey T. Testa
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070

Counsel to Chapter 11 Trustee, E. Roger Williams

-and-

GREENBERG TRAURIG LLP

By:   /s/  Dennis A. Meloro
Victoria W. Counihan (Bar No. 3488)
Dennis A. Meloro (Bar No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile:  (302) 661-7360
E-mail: counihanv@gtlaw.com
           melorod@gtlaw.com

Co-Counsel to Chapter 11 Trustee, E. Roger Williams