**EXHIBIT C**

**Reno APA**

ASSET PURCHASE AGREEMENT

By and Between

Pappas Telecasting of Nevada, L.P.
(As Seller)

and

New World TV Group, LLC
(As Buyer)

Dated as of August 13, 2009

# TABLE OF CONTENTS

ARTICLE 1     DEFINITIONS......................................................................................... 1

    Section 1.1    Certain Terms Defined....................................................... 1

ARTICLE 2     PURCHASE AND SALE OF THE ACQUIRED ASSETS ................................ 6

    Section 2.1    Agreement to Purchase and Sell ............................................ 6
    Section 2.2    Excluded Assets................................................................ 7
    Section 2.3    Excluded Liabilities .......................................................... 7

ARTICLE 3     CONSIDERATION ................................................................................ 7

    Section 3.1    Purchase Price.................................................................. 7
    Section 3.2    Allocation of Purchase Price................................................ 8

ARTICLE 4     REPRESENTATIONS AND WARRANTIES OF SELLER............................ 8

    Section 4.1    Corporate Organization..................................................... 8
    Section 4.2    Authorization of Agreement ............................................... 8
    Section 4.3    Conflicts; Consents of Third Parties ..................................... 8
    Section 4.4    Title to Acquired Assets..................................................... 9
    Section 4.5    Reno Assets...................................................................... 9
    Section 4.6    Conduct of Business in Ordinary Course................................ 9
    Section 4.7    Litigation....................................................................... 9
    Section 4.8    Tax Returns; Taxes .......................................................... 9
    Section 4.9    Warranties Are Exclusive; Remedies for Breach ................... 10

ARTICLE 5     REPRESENTATIONS AND WARRANTIES OF BUYER............................ 10

    Section 5.1    Corporate Organization................................................... 10
    Section 5.2    Authorization and Validity ............................................... 10
    Section 5.3    No Conflict or Violation .................................................. 11
    Section 5.4    Consents and Approvals ................................................... 11
    Section 5.5    Litigation...................................................................... 11

ARTICLE 6     COVENANTS AND OTHER AGREEMENTS ............................................ 11

    Section 6.1    Pre-Closing Covenants of Seller........................................ 11
    Section 6.2    Pre-Closing Covenants of Buyer ....................................... 12
    Section 6.3    Other Covenants of Seller and Buyer .................................. 13

ARTICLE 7     TAXES AND RECORDS....................................................................... 13

    Section 7.1    Taxes Related to Purchase of Acquired Assets...................... 13
    Section 7.2    Cooperation on Tax Matters and Retention of Records......................... 14

Section 7.3    Waiver of Bulk Sales Laws ................................................................ 14

ARTICLE 8      BANKRUPTCY COURT MATTERS ................................................ 14

Section 8.1    Sale Approval Order .................................................................... 14
Section 8.2    Competing Transaction ................................................................ 15

ARTICLE 9      CONDITIONS PRECEDENT TO PERFORMANCE BY THE PARTIES ...... 15

Section 9.1    Conditions Precedent to Performance by Seller ................................ 15
Section 9.2    Conditions Precedent to the Performance by Buyer ........................... 16

ARTICLE 10     CLOSING AND DELIVERIES ...................................................... 17

Section 10.1   Closing ..................................................................................... 17
Section 10.2   Seller's Deliveries ...................................................................... 17
Section 10.3   Buyer's Deliveries ...................................................................... 17

ARTICLE 11     TERMINATION ........................................................................ 17

Section 11.1   Conditions of Termination ........................................................... 17
Section 11.2   Effect of Termination .................................................................. 18

ARTICLE 12     MISCELLANEOUS .................................................................... 18

Section 12.1   Survival .................................................................................... 18
Section 12.2   Further Assurances ..................................................................... 18
Section 12.3   Successors and Assigns ................................................................ 19
Section 12.4   Governing Law; Jurisdiction ......................................................... 19
Section 12.5   Expenses ................................................................................... 19
Section 12.6   Broker's and Finder's Fees ........................................................... 19
Section 12.7   Severability ............................................................................... 19
Section 12.8   Notices ..................................................................................... 20
Section 12.9   Amendments; Waivers .................................................................. 21
Section 12.10  Entire Agreement ....................................................................... 22
Section 12.11  Seller Disclosures ....................................................................... 22
Section 12.12  Headings ................................................................................... 22
Section 12.13  Counterparts .............................................................................. 22
Section 12.14  Construction .............................................................................. 22
Section 12.15  References to the Chapter 11 Trustee .............................................. 22

## EXHIBITS

Exhibit A     —     Form of Sale Approval Order

Exhibit B     —     Bill of Sale and Assignment

Exhibit C     —     Form of Bidding Procedures Order

## SCHEDULES

Schedule 1     —     Reno Assets

Schedule 2     —     Acquired Assets

Schedule 3     —     Excluded Assets

Schedule 4.7     —     Litigation

Schedule 4.8     —     Taxes

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of August 13, 2009 (the "Execution Date"), is entered into by and between Pappas Telecasting of Nevada, L.P., a Delaware limited partnership ("Seller"), and New World TV Group, LLC, a Delaware limited liability company (together with its Assignee, if any, "Buyer"). For the purposes hereof, Buyer and Seller are collectively referred to herein as the "Parties."

## RECITALS

WHEREAS, Seller owns certain property as set forth on Schedule 1 attached hereto (as amended from time to time pursuant to the terms hereof, collectively, the "Reno Assets");

WHEREAS, on May 10, 2008 (the "Petition Date") Seller and certain of its affiliates (Seller and such affiliates, collectively, the "Debtors") each filed a voluntary petition for relief commencing cases (collectively, the "Bankruptcy Case") under Chapter 11 of Title 11 of the United States Code (as now in effect or hereafter amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on August 14, 2008, the Office of the United States Trustee for the District of Delaware appointed E. Roger Williams the chapter 11 trustee (the "Chapter 11 Trustee") of Seller and certain of Seller's affiliates, and, on August 18, 2008, the Bankruptcy Court approved the appointment of the Chapter 11 Trustee;

WHEREAS, the Chapter 11 Trustee is authorized to enter into this Agreement on behalf of Seller and to take whatever steps are necessary to effectuate the transactions contemplated hereby;

WHEREAS, upon the terms and subject to the conditions set forth herein and as authorized under sections 105 and 363 of the Bankruptcy Code and other applicable Laws, Buyer desires to purchase and assume from Seller, and Seller desires to sell and assign to Buyer, the Acquired Assets (as described more fully herein), in exchange for the payment to Seller of the Purchase Price; and

WHEREAS, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated only pursuant to a Sale Approval Order to be entered in the Bankruptcy Case, the form of which is annexed hereto as Exhibit A.

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Seller and Buyer hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

Section 1.1    Certain Terms Defined. As used in this Agreement, the following terms have the following meanings:

"Acquired Assets" has the meaning set forth in Section 2.1.

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or use the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" has the meaning set forth in the Preamble.

"Ancillary Agreement" means any other agreement, document or instrument that Seller or Buyer, as applicable, enter into in connection with the consummation of the transactions contemplated hereby.

"Appointment Date" means August 18, 2008.

"Assignee" has the meaning set forth in Section 12.3(a).

"Bankruptcy Case" has the meaning set forth in the Recitals.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Bankruptcy Case.

"Bidding Procedures Motion" means a motion to be filed by Seller with the Bankruptcy Court, seeking entry of the Bidding Procedures Order, which motion shall be reasonably acceptable in form and substance to Buyer.

"Bidding Procedures Order" means an order, substantially similar in form and substance to the form of Exhibit C annexed hereto, to be issued by the Bankruptcy Court.

"Bill of Sale and Assignment" means the Bill of Sale and Assignment in substantially the form annexed hereto as Exhibit B from Seller to Buyer conveying title to all of the Acquired Assets.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by Law or other governmental action to close.

"Buyer" has the meaning set forth in the Preamble.

"Chapter 11 Trustee" has the meaning set forth in the Recitals.

"Claim" has the meaning ascribed by Bankruptcy Code §101(5), including, without limitation, all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations, and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"Closing" has the meaning set forth in Section 10.1.

"Closing Date" has the meaning set forth in Section 10.1.

"Competing Bid" has the meaning set forth in Section 8.2.

"Debtors" has the meaning set forth in the Recitals.

"DIP Credit Agreement" means that certain Credit Agreement, dated as of September 10, 2008, among the Companies party thereto, as Borrower, and Pappas Telecasting Incorporated, as Administrative Borrower, Fortress Credit Corp., as Administrative Agent, Fortress Credit Corp., as Facility Agent, and the Lenders party thereto and any extensions, amendments or replacements thereof.

"Encumbrances" means, to the extent not considered a Lien, any security interest, lien, collateral assignment, right of setoff, debt, obligation, liability, pledge, levy, charge, escrow, encumbrance, option, right of first refusal, transfer restriction, rights limited to Seller personally, conditional sale contract, title retention contract, mortgage, lease, deed of trust, hypothecation, indenture, security agreement, easement, license, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement, or any other agreement, arrangement, contract, commitment, understanding or obligation of any kind whatsoever, whether written or oral.

"Equipment Lease" means that certain Equipment Lease between the chapter 11 estate of Seller, as lessor, and Buyer, as lessee, in respect of the Reno Assets.

"Excluded Assets" has the meaning set forth in Section 2.2.

"Execution Date" has the meaning set forth in the Preamble.

"Expedited Hearing Motion" means such motion or motions to be filed by Seller with the Bankruptcy Court, concurrently with the filing of the Bidding Procedures Motion and the Sale Approval Motion, as shall be necessary to obtain the entry of the Expedited Hearing Order, which motion(s) shall be reasonably acceptable in form and substance to Buyer.

"Expedited Hearing Order" means the order or orders to be entered by the Bankruptcy Court, upon consideration of the Expedited Hearing Motion, fixing August 26, 2009 as the hearing date for the Bidding Procedures Motion and fixing a date no later than September 14, 2009 as the hearing date for the Sale Approval Motion.

"Final DIP Order" means that certain Final Order Authorizing the Debtors, Acting by and through the Trustee, (A) To Obtain First-Priority Secured Postpetition Financing, and (B) To Use

Cash Collateral of Secured Lenders and Providing Related Adequate Protection entered by the Bankruptcy Court on September 10, 2008.

"Government" means any agency, division, subdivision or governmental or regulatory authority or any adjudicatory body thereof, of the United States, or any state thereof.

"Governmental Authority" means any federal, state, or local court, tribunal, governmental department, agency, board, commission, regulatory or supervisory authority, or other governmental body, subdivision or instrumentality.

"Interest" means "interest" as that term is used in Bankruptcy Code section 363(f).

"Laws" means all federal, state, local or foreign laws, statutes, common law, rules, codes, regulations, restrictions, ordinances, orders, decrees, approvals, directives, judgments, rulings, injunctions, writs and awards of, or issued, promulgated, enforced or entered by, any and all Governmental Authorities, or court of competent jurisdiction, or other requirement or rule of law.

"Lenders" means "Lenders" as defined in the DIP Credit Agreement.

"Lien" has the meaning given to that term in the Bankruptcy Code section 101(37).

"Material Adverse Effect" means a state of facts, event, change or effect with respect to the Acquired Assets that results in a material adverse effect on the value of the Acquired Assets, taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes or conditions affecting the television industry generally; (B) changes in economic, regulatory or political conditions generally; (C) the fact that a Person filed as a debtor pursuant to the Bankruptcy Code; or (D) any action of Seller pursuant to any order of the Bankruptcy Court entered prior to the date hereof, including, without limitation, the transactions contemplated by this Agreement or any of the Ancillary Agreements or the announcement thereof; provided, however, that to the extent that any facts, events, changes, effects caused by events or changes or developments relating to matters set forth in clauses (A) and (B) affect the Acquired Assets in a disproportionate manner when compared to the effect of the same on other Persons engaged in the industry in which Seller operates generally, then such facts and circumstances set forth in clauses (A) and (B) shall not be excluded in the determination of whether a Material Adverse Effect is or is reasonably expected to occur.

"Obligations" means the "Pre-Petition Secured Bank Claim" of the Lenders as defined in paragraph 25(e) of the Final DIP Order in the aggregate unpaid amount of $329,073,933.03 as of the Petition Date.

"Orders" means the Sale Approval Order and the Bidding Procedures Order.

"Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of the business of Seller consistent with past practice through the date hereof, subject to any duties and restrictions imposed on Seller under the Bankruptcy Code.

"Parties" has the meaning set forth in the Preamble.

"Permit" means any certificate of occupancy, permit, authorization or license used, useable, or useful in the use or enjoyment or benefit of the Acquired Assets.

"Permitted Encumbrances" mean:

(a)    Liens imposed by Law for Taxes that are not yet due or are being contested in good faith;

(b)    carriers', warehousemen's, mechanics', materialmen's, repairmen's and other like Liens imposed by Law, arising in the Ordinary Course of Business and securing obligations that (i) are not overdue by more than ninety (90) days or are being contested in good faith and (ii) do not in the aggregate exceed $25,000;

(c)    pledges made in the Ordinary Course of Business in compliance with workers' compensation, unemployment insurance and other social security laws or regulations;

(d)    judgment liens in respect of judgments that, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect on Seller or the Acquired Assets; and

(e)    Liens of a collecting bank arising in the Ordinary Course of Business under Section 4-208 of the Uniform Commercial Code in effect in the relevant jurisdiction, provided, that the term "Permitted Encumbrances" shall not include any Lien securing indebtedness.

"Person" means any individual, corporation, partnership, limited liability company, firm, joint venture, association, joint-stock company, trust, unincorporated organization or Governmental Authority or other entity.

"Petition Date" has the meaning set forth in the Recitals.

"Purchase Price" has the meaning set forth in Section 3.1.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, lenders, investment bankers or representatives of any such Person.

"Reno Assets" has the meaning set forth in the Recitals.

"Sale Approval Hearing" means the hearing to be held before the Bankruptcy Court in respect of the Sale Approval Motion, currently scheduled for September 9, 2009.

"Sale Approval Motion" means that certain Chapter 11 Trustee's Motion for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 Approving the Sale of the Remaining Reno Assets to New World TV Group, LLC Free and Clear of Liens, Claims, Encumbrances and Other Interests to be filed by Seller

with the Bankruptcy Court, seeking entry of the Sale Approval Order, which motion shall be reasonably acceptable in form and substance to Buyer.

"Sale Approval Order" means an order, substantially similar in form and substance to the form of Exhibit A annexed hereto, to be issued by the Bankruptcy Court authorizing, to the maximum extent permitted by Sections 105 and 363 of the Bankruptcy Code and other applicable Laws, the sale, transfer, assignment, conveyance and delivery of the Acquired Assets to Buyer (or its Assignee) free and clear of all Liens, Claims, Interests and Encumbrances, other than Permitted Encumbrances, which Sale Approval Order shall be reasonably satisfactory, in form and substance, to Buyer and Seller.

"Seller" has the meaning set forth in the Preamble.

"Seller's Knowledge" means the actual knowledge of the Chapter 11 Trustee gained in the ordinary course of his duties without additional inquiry.

"Tax" or "Taxes" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any Government, whether payable by reason of contract, assumption, transferee liability, operation of Law or Treasury Regulation section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under state, local or foreign Law), which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, workmen's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Tax Code) and other assessments or obligations of the same or a similar nature, whether arising before, on or after the Closing Date.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"Transaction Taxes" has the meaning set forth in Section 7.1.

## ARTICLE 2
## PURCHASE AND SALE OF THE ACQUIRED ASSETS

Section 2.1    Agreement to Purchase and Sell.  At the Closing, and upon the terms and conditions herein, and subject to the approval of the Bankruptcy Court pursuant to the Sale Approval Order, Seller shall sell, transfer, convey, assign and deliver to Buyer, and Buyer shall purchase, acquire, assume and accept from Seller, free and clear of all Liens, Claims, Interests and Encumbrances, other than any Permitted Encumbrances, to the fullest extent permitted by section 363 of the Bankruptcy Code and other applicable Law, all right, title, privilege and interest of Seller in, to and under those Reno Assets set forth on Schedule 2 attached hereto (collectively, the "Acquired Assets");

provided, however, that (i) the Acquired Assets shall not include any of the Excluded Assets, (ii) Buyer shall have the right at any time prior to the Closing Date, upon delivery of written notice to Seller at least five (5) days prior to the Closing Date, to include in the Acquired Assets any asset of Seller set forth on Schedule 1 whereupon such asset shall become and be deemed an Acquired Asset, and Schedule 2 shall be amended to reflect the inclusion of such asset as an Acquired Asset, (iii) Buyer shall have the right, upon delivery of written notice to Seller at least one (1) day prior to the Closing Date, to exclude from the Acquired Assets any asset whereupon such asset shall become and be deemed an Excluded Asset, and Schedule 2 and Schedule 3 shall be amended, as appropriate, to reflect the inclusion or exclusion of such asset, as the case may be, from the Acquired Assets; and (iv) Buyer shall incur no liability, and Seller shall have no recourse against Buyer or any of its Affiliates, or any of their respective directors, officers, managers, shareholders, partners, members, employees, advisors, attorneys and agents, for any and all damages, losses, claims, liabilities and related costs and expenses, including attorneys' fees and disbursements, awarded against or incurred by Seller, or any of them, arising out of or relating to the exercise by Buyer of its right under clause (ii) of this proviso. **SUBJECT TO THE PROVISIONS OF ARTICLE 4 OF THIS AGREEMENT AND EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH HEREIN, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE CONDITION OF THE ACQUIRED ASSETS AT CLOSING AND BUYER TAKES SUCH ACQUIRED ASSETS ON AN AS-IS / WHERE-IS BASIS.**

Section 2.2    Excluded Assets.  Notwithstanding anything to the contrary in this Agreement, nothing herein shall be deemed to sell, transfer, assign or convey the Excluded Assets to Buyer, and Seller shall retain all right, title and interest to, in and under, and all obligations with respect to, the Excluded Assets.  For all purposes of and under this Agreement, the term "Excluded Assets" includes:

(a)    the rights of Seller under this Agreement and all consideration payable or deliverable to Seller under this Agreement;

(b)    any Reno Asset set forth on Schedule 3 (as such schedule may be amended from time to time pursuant to the terms hereof); and

(c)    any Reno Asset not set forth on Schedule 2 (as such schedule may be amended from time to time pursuant to the terms hereof).

Section 2.3    Excluded Liabilities.  Buyer shall not assume or be liable for any Claims, Liens, Encumbrances or Interests or any other liabilities and obligations of Seller, or with respect to the Acquired Assets, of any nature whatsoever, whether presently in existence or arising hereafter.

### ARTICLE 3
### CONSIDERATION

Section 3.1    Purchase Price.  The purchase price ("Purchase Price") for the Acquired Assets shall be $2,500,000, which shall be credited against the Obligations; provided, however, that in the event Buyer and Seller elect to exclude any asset from the Acquired Assets, the

Purchase Price may be adjusted downward by the amount agreed by the Buyer and Seller to reflect the exclusion of such asset from the Acquired Assets.

Section 3.2    Allocation of Purchase Price.  The Purchase Price shall be allocated among the Acquired Assets in accordance with the instructions of Buyer.  For all Tax purposes, Buyer and Seller shall report the transactions contemplated in this Agreement in a manner consistent with such allocation, and no Party will take any position inconsistent therewith in any Tax Return or in any refund claim.

# ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Buyer as of the date hereof and as of the Closing Date:

Section 4.1    Corporate Organization.  Seller is duly organized, validly existing and in good standing under the Laws of the State of Delaware and has the requisite partnership power and authority to own, lease and operate its properties and to carry on its businesses as now conducted.

Section 4.2    Authorization of Agreement.  Subject to entry of the Sale Approval Order and authorization as is required by the Bankruptcy Court:

(a)    Seller has all requisite power and authority to execute and deliver this Agreement and each Ancillary Agreement to which Seller is a party and to perform its obligations hereunder and thereunder;

(b)    the execution and delivery of this Agreement and each Ancillary Agreement to which Seller is a party, the performance of Seller's obligations hereunder and thereunder, and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite partnership action on the part of Seller; and

(c)    this Agreement and each Ancillary Agreement to which Seller is a party has been duly and validly executed and delivered by Seller, and (assuming the due authorization, execution and delivery by the other Party hereto) this Agreement and each Ancillary Agreement to which Seller is a party constitutes legal, valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms, except as may be limited by bankruptcy or other Laws affecting creditors' rights and by equitable principles.

Section 4.3    Conflicts; Consents of Third Parties.  The execution, delivery and performance by Seller of this Agreement and each Ancillary Agreement, the consummation of the transactions contemplated hereby and thereby, or compliance by Seller with any of the provisions hereof do not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under, any provisions of:

(i)    Seller's organizational documents;

(ii)     subject to entry of the Sale Approval Order, any contract, agreement, license or Permit to which Seller is a party or by which any of the Acquired Assets is bound;

(iii)     subject to entry of the Sale Approval Order, any Order of any Governmental Authority applicable to Seller or the Acquired Assets as of the date hereof; or

(iv)     subject to entry of the Sale Approval Order, any applicable Law, other than, in the case of clauses (i), (ii) and (iii), such conflicts, violations, defaults, terminations or cancellations that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(b)     If the Sale Approval Order is entered, no consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required on the part of Seller in connection with the execution and delivery of this Agreement or any other agreement, document or instrument contemplated hereby or thereby to which it is a party, the compliance by Seller with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby, or the assignment or conveyance of the Acquired Assets.

Section 4.4     Title to Acquired Assets.  Subject to the entry of the Sale Approval Order, upon Closing Buyer will be vested, to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code and other applicable Law, with good title to the Acquired Assets free and clear of all Liens, Claims, Interests and Encumbrances, other than any Permitted Encumbrances.

Section 4.5     Reno Assets.  To Seller's Knowledge, the Reno Assets include all tangible assets of Seller.

Section 4.6     Conduct of Business in Ordinary Course.  Except pursuant to the Equipment Lease, from the Appointment Date through the date of this Agreement, other than the commencement of the Bankruptcy Case and acts related thereto, Seller has operated and maintained the Acquired Assets in the Ordinary Course of Business.

Section 4.7     Litigation.  Except as set forth on Schedule 4.7 and except for the commencement of the Bankruptcy Case, to Seller's Knowledge, from the Appointment Date through August 13, 2009, there was no material litigation, action, claim, suit, proceeding, investigation, examination, hearing, arbitration, inquiry or subpoena pending or threatened against Seller or any property or asset of Seller or which could give rise to a Material Adverse Effect.  Except for commencement of the Bankruptcy Case, to Seller's Knowledge, from the Appointment Date through August 13, 2009, Seller was not subject to any judgment, decree, injunction, rule or order of any court, arbitration panel or other Governmental Authority that relates to the Acquired Assets.

Section 4.8     Tax Returns; Taxes.  Except as such payment or any enforcement action is stayed as a result of the Bankruptcy Case:

(a)     To Seller's Knowledge, from the Appointment Date through August 13, 2009, income Tax Returns required to have been filed by Seller were duly filed;

(b)     To Seller's Knowledge, from the Appointment Date through August 13, 2009, other than as set forth on Schedule 4.8, (i) no federal or state income Tax Return audits were pending with respect to Seller and (ii) Seller had not received written notice from any Governmental Authority of future federal or state income Tax Return audits;

(c)     To Seller's Knowledge, from the Appointment Date through August 13, 2009, there were no material liens with respect to Taxes (other than Permitted Encumbrances) upon any of the Acquired Assets, other than Liens for Taxes not yet due and payable; and

(d)     To Seller's Knowledge, from the Appointment Date through August 13, 2009, Seller had not (i) waived any statute of limitations in respect of any Tax Returns that have not been filed as of the Execution Date or (ii) agreed to any extension of time with respect to the assessment of Taxes for which such Taxes have not been paid as of the Execution Date.

Section 4.9     Warranties Are Exclusive; Remedies for Breach. EXCEPT AS EXPRESSLY SET FORTH IN THIS ARTICLE 4, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, IN RESPECT OF ANY OF ITS ASSETS (INCLUDING THE ACQUIRED ASSETS), LIABILITIES OR OPERATIONS, INCLUDING, WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, OR NON INFRINGEMENT, AND ANY SUCH OTHER REPRESENTATIONS OR WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE ACQUIRED ASSETS ON AN "AS IS, WHERE IS" BASIS. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, EACH PARTY'S SOLE REMEDY IN THE EVENT OF A BREACH OF ANY REPRESENTATION OF ANY OTHER PARTY HERETO IS TERMINATION OF THIS AGREEMENT IN ACCORDANCE WITH ARTICLE 11 OF THIS AGREEMENT.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows:

Section 5.1     Corporate Organization. Buyer is a Delaware limited liability company, duly organized, validly existing and in good standing under the Laws of the State of Delaware and has all requisite power and authority to own its properties and assets and to conduct its businesses as now conducted.

Section 5.2     Authorization and Validity. Buyer has, or on the Closing Date will have, all requisite power and authority to enter into this Agreement and any Ancillary Agreement to which Buyer is or will become a party and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and any Ancillary Agreement to which Buyer is or will become a party and the performance of Buyer's obligations hereunder and thereunder have been, or on the Closing Date will be, duly authorized by all necessary action by the Manager of Buyer, and no other corporate proceedings on the part of Buyer are necessary to authorize such execution, delivery and performance. This Agreement and each Ancillary Agreement to which

Buyer is or will become a party have been, or on the Closing Date will be, duly executed by Buyer and constitute, or will constitute, when executed and delivered, Buyer's valid and binding obligations, enforceable against it in accordance with its terms, except as may be limited by bankruptcy or other Laws affecting creditors' rights and by equitable principles.

Section 5.3    No Conflict or Violation.  The execution, delivery and performance by Buyer of this Agreement and any Ancillary Agreement to which Buyer is or will become a party do not and will not (i) violate or conflict with any provision of the organizational documents of Buyer, (ii) violate any provision of Law, or any order, judgment or decree of any court or Government applicable to Buyer or (iii) violate or result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is party or by which Buyer is bound.

Section 5.4    Consents and Approvals.  Except for the Sale Approval Order, no consent, waiver, authorization or approval of any Person and no declaration to or filing or registration with any Government is required in connection with the execution and delivery by Buyer of this Agreement and each Ancillary Agreement to which Buyer is or will become a party or the performance by Buyer of its obligations hereunder or thereunder.

Section 5.5    Litigation.  There is no action, suit, proceeding or claim which is pending or, to Buyer's knowledge, threatened in any court or by or before any Governmental Authority which would affect Buyer's ability to perform its obligations under this Agreement.

## ARTICLE 6
## COVENANTS AND OTHER AGREEMENTS

Section 6.1    Pre-Closing Covenants of Seller.  Seller covenants to Buyer that, during the period from the Execution Date through and including the Closing Date or the earlier termination of this Agreement:

(a)    Cooperation.  Seller shall use commercially reasonable efforts to obtain, and assist Buyer in obtaining, all consents required for the sale and assignment of the Acquired Assets.

(b)    Access to Records and Properties.  Buyer shall be entitled, and Seller shall permit Buyer, to conduct an investigation of the condition (financial or otherwise), businesses, assets, properties or operations of Seller related to the Acquired Assets consistent with the transactions contemplated herein.  Seller shall (i) provide Buyer appropriate access at reasonable times and upon reasonable notice to the facilities, offices and personnel of Seller and to the books and records of Seller related to the Acquired Assets, including access to perform field examinations and inspections of inventory, facilities and equipment; (ii) furnish Buyer with such financial and operating data and other information with respect to the condition (financial or otherwise), businesses, assets, properties or operations of Seller as Buyer shall reasonably request; and (iii) permit Buyer to make such reasonable inspections and copies thereof as Buyer may require; provided, however, that Buyer shall use commercially reasonable efforts to prevent any such inspection from unreasonably interfering with the duties of any employee of Seller.

(c)     Reno Assets.  In the event that Seller, from time to time, identifies any property of Seller that would, but for its exclusion from Schedule 1 as of the date hereof, be a Reno Asset, Schedule 1 shall be deemed amended to include such property and such property shall be deemed to be a Reno Asset for all purposes hereunder, and Seller shall, at Buyer's request, use reasonable efforts to obtain an order of the Bankruptcy Court providing for the sale and assignment to Buyer of such property, and Buyer shall bear no expense or pay any additional Purchase Price with respect thereto.

(d)     Operation of Business.  From the Execution Date through the Closing Date, and other than as set forth in the Equipment Lease or as a direct consequence of Seller's actions in compliance therewith, Seller shall use commercially reasonable efforts, except as otherwise required, authorized or restricted pursuant to an order of the Bankruptcy Court, to maintain the Acquired Assets in the Ordinary Course of Business.  Without limiting the generality of the foregoing, and except (A) as otherwise expressly provided in or contemplated by this Agreement, (B) required, authorized or restricted pursuant to an order of the Bankruptcy Court, or (C) as a direct consequence of Seller's actions in compliance with its obligations under the Equipment Lease, on or prior to the Closing Date, Seller may not, without the prior written consent of Buyer:

(i)     remove or permit to be removed from any building, facility, or real property any Acquired Asset (other than in the Ordinary Course of Business);

(ii)     sell, lease or otherwise dispose of, mortgage, hypothecate or otherwise encumber any Acquired Asset (other than in the Ordinary Course of Business); and

(iii)     agree, whether in writing or otherwise, to do any of the foregoing.

(e)     Notice of Certain Events.  Seller shall promptly notify Buyer of, and furnish Buyer with any information it may reasonably request with respect to the occurrence of, any event or condition or the existence of any fact that would reasonably be expected to cause any of the conditions to Seller's obligations to consummate the transactions contemplated by this Agreement or by any Ancillary Agreement not to be fulfilled.  Without limiting the foregoing, Seller shall, promptly on receipt, deliver to Buyer copies of all notices, reports, demands, claims, appraisals, and similar information supplied by any Person asserting a Lien or by any Governmental Authority in respect of any of the Acquired Assets, or their ownership or operation.

(f)     Required Orders.  Within two (2) Business Days after the Execution Date, Buyer shall file the Bidding Procedures Motion, the Sale Approval Motion and the Expedited Hearing Motion with the Bankruptcy Court and shall diligently prosecute such motions in good faith for the purpose of seeking entry of the respective orders contemplated by such motions in accordance with the time schedule contemplated by this Agreement.

Section 6.2     Pre-Closing Covenants of Buyer.  Buyer covenants to Seller that, during the period from the date of this Agreement through and including the Closing Date or the earlier termination of this Agreement:

(a)     Cooperation.  Buyer shall take, or cause to be taken, all actions and do, or cause to be done, all things necessary or proper, consistent with applicable Law, to consummate and make effective as soon as possible the transactions contemplated hereby.

(b)     Required Orders.  Buyer shall take such actions as may be reasonably requested by Seller to assist Seller in obtaining the Bankruptcy Court's entry of the Expedited Hearing Order, the Bidding Procedures Order, the Sale Approval Order and any other order of the Bankruptcy Court reasonably necessary to consummate the transactions contemplated by this Agreement.

(c)     Notice of Certain Events.  Buyer promptly shall notify Seller of, and furnish Seller with, any information that Seller reasonably may request with respect to, the occurrence of any event or condition or the existence of any fact that reasonably would be expected to cause any of the conditions to Buyer's obligations to consummate the transactions contemplated by this Agreement or by any Ancillary Agreement not to be fulfilled.

Section 6.3     Other Covenants of Seller and Buyer.

(a)     Disclosure Schedules and Supplements.  Seller, on the one hand, shall notify Buyer of, and Buyer on the other hand, shall notify Seller of, and shall supplement or amend the disclosure schedules (the "Schedules") to this Agreement with respect to, any matter that (i) arises after the Execution Date and that, if existing or occurring at or prior to such delivery of the Schedule, would have been required to be set forth or described in the Schedule to this Agreement or (ii) makes it necessary to correct any information in the Schedule to this Agreement or in any representation and warranty of Seller or Buyer, as applicable, that has been rendered inaccurate thereby.  Each such notification and supplementation, to the extent known, shall be made no later than two (2) Business Days after discovery thereof and no later than three (3) days before the date set for the Closing by the Parties; provided, however, that no such supplement or amendment to the Schedule to this Agreement shall be deemed to cure any inaccuracy of any representation or warranty made in this Agreement.  Notwithstanding anything to the contrary in this Section 6.3 or in any other Section of this Agreement, the Schedules to the Agreement shall be amended as of the Closing to properly reflect any property that has been (x) included as part of the Acquired Assets in accordance with clause (ii) of the proviso of Section 2.1, or (y) excluded from the Acquired Assets in accordance with clause (iii) of the proviso of Section 2.1.

## ARTICLE 7
## TAXES AND RECORDS

Section 7.1     Taxes Related to Purchase of Acquired Assets.  All Taxes, including, without limitation, all state and local Taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "Transaction Taxes") that are imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, shall be borne by Buyer.  Buyer and Seller shall cooperate to (a) determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement, (b) provide all requisite exemption certificates and (c) prepare and file any and all required Tax Returns for or

with respect to such Transaction Taxes with any and all appropriate Government taxing authorities.

Section 7.2    Cooperation on Tax Matters and Retention of Records.

(a)    Buyer and Seller shall furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any Government relating to Tax matters.

(b)    Buyer shall retain possession of, and preserve unchanged, all accounting, business, financial and Tax records and information, including, but not limited to, any emails, (i) relating to the Acquired Assets that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets before the Closing Date, for a period of at least five (5) years from the Closing Date. Buyer shall give Seller written notice and a reasonable opportunity to retain any such records in the event that Buyer determines to destroy or dispose of them after such period. In addition, from and after the Closing Date, Buyer shall provide access to Seller and its Related Persons to the books, records, documents and other information relating to the Acquired Assets as Seller may reasonably deem necessary to (A) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, Tax audit, Tax protest, suit, proceeding or answer or (B) administer or complete the Bankruptcy Case, other than, in any case, with respect to or in support of any "Investigation" or "Challenge," each as defined in the Final DIP Order. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets; provided, however, that such access will be provided subject to advance notice and in a manner that does not interfere with Buyer's use of the Acquired Assets.

Section 7.3    Waiver of Bulk Sales Laws. To the greatest extent permitted by applicable Law, Buyer and Seller hereby waive compliance by Buyer and Seller with the terms of any bulk sales or similar Laws in any applicable jurisdiction in respect of the transactions contemplated by this Agreement. Buyer shall indemnify Seller from and hold Seller harmless from and against any liabilities, damages, costs and expenses (including, without limitation, attorneys' fees) resulting from or arising out of (i) the Parties' failure to comply with any such bulk sales Laws in respect of the transactions contemplated by this Agreement or (ii) any action brought or levy made as a result thereof. The Sale Approval Order shall exempt Seller and Buyer from compliance with any such Laws.

## ARTICLE 8
## BANKRUPTCY COURT MATTERS

Section 8.1    Sale Approval Order. Seller agrees to diligently prosecute the Expedited Hearing Motion, the Bidding Procedures Motion and the Sale Approval Motion and seek entry of the Expedited Hearing Order, the Bidding Procedures Order and the Sale Approval Order by the

Bankruptcy Court. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Expedited Hearing Order, the Bidding Procedures Order and the Sale Approval Order, demonstrating that Buyer is a "good faith" purchaser under section 363(m), or any other section, of the Bankruptcy Code, and demonstrating the Purchase Price was not controlled by an agreement in violation of Section 363(n) or any other section of the Bankruptcy Code. In the event that the entry of the Sale Approval Order shall be appealed, Seller and Buyer shall use their respective reasonable efforts to defend such appeal; provided, that Seller and Buyer shall be obligated to consummate the transactions contemplated by this Agreement notwithstanding such appeal provided that no stay pending appeal then is in effect.

Section 8.2  Competing Transaction. This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids (each, a "Competing Bid"). From the date hereof (and any prior time) and until the completion of the auction contemplated hereby or as otherwise directed by the Bankruptcy Court, Seller is permitted to cause its representatives and Affiliates to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Buyer and its Affiliates, agents and representatives) in connection with any sale or other disposition of the Acquired Assets. In addition, Seller shall have the responsibility and obligation to respond to any inquiries or offers to purchase all or any part of the Acquired Assets and perform any and all other acts related thereto that are required under the Bankruptcy Code or other applicable Law, including supplying information relating to the Reno Assets to prospective buyers.

## ARTICLE 9
## CONDITIONS PRECEDENT TO PERFORMANCE BY THE PARTIES

Section 9.1  Conditions Precedent to Performance by Seller. The obligation of Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of the following conditions, any one or more of which (other than the condition contained in Sections 9.1(c)) may be waived by Seller, in its sole and absolute discretion:

(a)  Representations and Warranties of Buyer. The representations and warranties of Buyer made in Article 5 of this Agreement, in each case, shall be true and correct as of the date of this Agreement and as of the Closing Date as though made by Buyer as of the Closing Date, except to the extent representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct on and as of such earlier date.

(b)  Performance of the Obligations of Buyer. Buyer shall have performed all obligations required under this Agreement or any Ancillary Agreement to which it is party that are to be performed by it on or before the Closing Date (except with respect to the obligation to pay the Purchase Price, which shall be paid in accordance with the terms of this Agreement).

(c)  Bankruptcy Court Approval. The Sale Approval Order shall have been entered and shall not be subject to a stay.

(d)     [Intentionally Omitted.]

(e)     No Violation of Orders. No preliminary or permanent injunction or other order of any court or Government that declares this Agreement invalid or unenforceable in any material respect or that prevents the consummation of the transactions contemplated hereby shall be in effect.

(f)     Closing Deliveries. Buyer shall have made the deliveries contemplated under Section 10.3.

For avoidance of doubt, there shall be no conditions precedent to Seller's obligation to consummate the transactions contemplated by this Agreement, except for those conditions precedent specifically set forth in this Section 9.1.

Section 9.2     Conditions Precedent to the Performance by Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of the following conditions, any one or more of which (other than the condition contained in Sections 9.2(c)) may be waived by Buyer, in its sole and absolute discretion:

(a)     Representations and Warranties of Seller. The representations and warranties of Seller made in Article 4 of this Agreement shall be true and correct as of the Execution Date and as of the Closing Date as though made by Seller as of the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct on and as of such earlier date.

(b)     Performance of the Obligations of Seller. Seller shall have performed all obligations required under this Agreement or any Ancillary Agreement to which it is a party that are to be performed by them on or before the Closing Date.

(c)     Bankruptcy Court Approval. The Sale Approval Order shall have been entered and shall not be subject to a stay.

(d)     [Intentionally Omitted.]

(e)     No Violation of Orders. No preliminary or permanent injunction or other order of any court or Government that declares this Agreement invalid in any material respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

(f)     No Suit or Proceeding. No suit or other proceeding shall be pending before any court or Governmental Authority seeking to restrain or prohibit or declare illegal the transactions contemplated by this Agreement or seeking damages in respect thereof.

(g)     Closing Deliveries. Seller shall have made the deliveries contemplated under Section 10.2.

For avoidance of doubt, there shall be no conditions precedent to Buyer's obligation to consummate the transactions contemplated by this Agreement, except for those conditions precedent specifically set forth in this Section 9.2.

## ARTICLE 10
## CLOSING AND DELIVERIES

Section 10.1    Closing. The consummation of the transactions contemplated hereby (the "Closing") shall take place at the offices of Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 concurrently with the closing of the transactions contemplated by that certain Asset Purchase Agreement, dated as of December 12, 2008, by and among the Selling Entities and the License Holders (each, as defined therein), on the one hand, and Buyer, on the other hand (the "Closing Date"). If the Equipment Lease would otherwise have terminated by its terms prior to the Closing Date, the Parties shall take all necessary actions, subject to Bankruptcy Court approval, if applicable, to extend the termination date of the Equipment Lease until the Closing Date. All proceedings to be taken and all documents to be executed and delivered by all Parties at the Closing shall be deemed to have been taken and executed simultaneously and no proceedings shall be deemed to have been taken nor documents executed or delivered until all have been taken, executed and delivered.

Section 10.2    Seller's Deliveries. At the Closing,

(a)    the sale, transfer, assignment, conveyance and delivery by Seller of the Acquired Assets to Buyer shall be effected by the execution and delivery by Seller of (i) the Bill of Sale and Assignment, (ii) a certificate executed by Seller, in the form prescribed under Treasury Regulation Section 1.1445-2(b), that such Seller is not a foreign person within the meaning of Section 1445(f)(3) of the Tax Code, (iii) Seller's disclosure schedules to this Agreement; (iv) a certificate of an authorized officer of Seller certifying as to the matters set forth in Section 9.2(a) and Section 9.2(b); and (v) additional bills of sale, endorsements, assignments and other instruments of transfer and conveyance reasonably satisfactory in form and substance to counsel for Buyer.

Section 10.3    Buyer's Deliveries. At the Closing,

(a)    Buyer shall credit the Purchase Price against the Obligations; and

(b)    Buyer shall execute and deliver to Seller such other instruments of transfer and conveyance reasonably satisfactory in form and substance to counsel for Seller.

## ARTICLE 11
## TERMINATION

Section 11.1    Conditions of Termination. This Agreement may be terminated only in accordance with this Section 11.1. This Agreement may be terminated at any time before the Closing as follows:

(a)    By mutual written consent of Seller and Buyer;

(b) By Seller, by written notice to Buyer, if Seller has previously provided Buyer with notice of any inaccuracy of any representation or warranty of Buyer contained in Article 5, which inaccuracy would reasonably be expected to result in, individually or in the aggregate with the results of other inaccuracies, the conditions set forth in Section 9.1 not being satisfied, or notice of a failure to perform any covenant of Buyer contained in this Agreement or any Ancillary Agreement to which Buyer is party, and Buyer has failed, within ten (10) Business Days after such notice, to remedy such inaccuracy or perform such covenant or provide reasonably adequate assurance to Seller of Buyer's ability to remedy such inaccuracy or perform such covenant; provided, however, that Seller shall not have the right to terminate this Agreement under this Section 11.1(b) if Seller is then in breach of this Agreement;

(c) By Buyer at any time prior to the conclusion of the Auction (as defined in the Bidding Procedures Order);

(d) By Buyer, if the Bankruptcy Court enters an order approving the sale of any portion of the Acquired Assets to any Person other than Buyer without the consent of Buyer and the Lenders;

(e) By Buyer, by written notice to Seller, if Buyer has previously provided Seller with notice of any inaccuracy of any representation or warranty of Seller contained in Article 4, which inaccuracy would reasonably be expected to result in, individually or in the aggregate with the results of other inaccuracies, the conditions set forth in Section 9.2 not being satisfied, or notice of a failure to perform any covenant of Seller contained in this Agreement or any Ancillary Agreement to which Seller is a party, and Seller has failed, within ten (10) Business Days after such notice, to remedy such inaccuracy or perform such covenant or provide reasonably adequate assurance to Buyer of Seller's ability to remedy such inaccuracy or perform such covenant; provided, however, that Buyer shall not have the right to terminate this Agreement under this Section 11.1(f) if Buyer is then in breach of this Agreement; or

(f) Automatically, if the Bankruptcy Court enters an order approving the sale of all of the Acquired Assets to any Person other than the Buyer and such transaction is consummated.

Section 11.2  Effect of Termination.  In the event of termination pursuant to Section 11.1, this Agreement shall become null and void and have no effect (other than those provisions of Article 11 and Article 12 that expressly survive termination), and neither Party shall have any liability to the other.

## ARTICLE 12
## MISCELLANEOUS

Section 12.1  Survival.  No representations, warranties, covenants and agreements of Seller and Buyer made in this Agreement shall survive the Closing Date except where, and only to the extent that, the terms of any such covenant or agreement expressly provide for obligations extending after the Closing.

Section 12.2  Further Assurances.  At the request and the sole expense of the requesting Party, Buyer or Seller, as applicable, shall execute and deliver, or cause to be executed and

delivered, such documents as Buyer or Seller, as applicable, or their respective counsel may reasonably request to effectuate the purposes of this Agreement and the Ancillary Agreements.

Section 12.3    Successors and Assigns.

(a)    Buyer shall have the right to assign to a designee or designees of Buyer (each, an "Assignee") any of its rights or obligations (including the right to acquire any of the Acquired Assets) so long as such Assignee (or collectively if more than one) satisfies every representation and warranty set forth in Article 5 and all of the pre-closing covenants set forth in Section 6.2, and may require any such Assignee to pay all or a portion of the Purchase Price. In the event of any assignment pursuant to this Section 12.3(a), Buyer shall not be relieved of any liability or obligation hereunder.

(b)    Seller shall not assign this Agreement or any of its rights or obligations hereunder. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the Parties hereto, including, without limitation, the Chapter 11 Trustee, any trustee appointed in any subsequent chapter 7 case and Seller, if the Bankruptcy Case is dismissed.

Section 12.4    Governing Law; Jurisdiction.  This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of Delaware (without giving effect to the principles of conflicts of laws thereof), except to the extent that the Laws of such State are superseded by the Bankruptcy Code or other applicable federal Law.  For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.  After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, any state or federal court having competent jurisdiction in Wilmington, Delaware.

Section 12.5    Expenses.  Except as otherwise provided in this Agreement, each of the Parties shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, costs or expenses, whether or not the transactions contemplated hereby are consummated.

Section 12.6    Broker's and Finder's Fees.  Each of the Parties represents and warrants that it has not engaged any broker or finder in connection with any of the transactions contemplated by this Agreement and, insofar as such Party knows, no broker or other Person is entitled to any commission or finder's fee in connection with any of such transactions.

Section 12.7    Severability.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions

contemplated hereby in substantially the same manner as originally set forth at the later of (i) the date of this Agreement and (ii) the date this Agreement was last amended.

Section 12.8   Notices.

(a)   All notices, requests, demands, consents and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the Party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service addressed to the Party to whom notice is to be given, if served via Federal Express or similar overnight courier or Express Mail service; or (iv) on the fifth day after mailing, if mailed to the Party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the Party as follows:

(b)   If to Seller:

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Facsimile No.:  (973) 624-7070
Attention:     Charles A. Stanziale, Jr.
               Jeffrey T. Testa
               Curtis A. Johnson
               Counsel to Chapter 11 Trustee


and

E. Roger Williams
Roger Wilco Productions LLC
114 Ferris Hill Road
New Caanan, CT  06840

Facsimile No.:  (203) 972-3776
Attention:     Chapter 11 Trustee

and

Loughlin Meghji & Company
220 West 42nd Street, 9th Floor
New York, NY 10036
Facsimile No.:  (212) 725-9322
Attention:     Mohsin Y. Meghji
               Kevin Shea

(c)     If to Buyer:

New World TV Group, LLC
c/o Fortress Credit Corp
1345 Avenue of the Americas, 46th Floor
New York, NY 10105
Facsimile No.: (212) 798-6070
Attention:     Constantine M. Dakolias

With a copy to (which shall not constitute notice):

Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Facsimile No.: (212) 593-5955
Attention:     Adam Harris
               James Bentley

With an additional copy (which shall not constitute notice) to:

Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Facsimile No.: (212) 506-1800
Attention:     Richard F. Casher
               Jeffrey Gleit
               As counsel to agent to the Lenders

and

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Facsimile No.: (310) 407-9090
Attention:     David Fidler
               Ronn S. Davids
               As counsel to certain of the Lenders

(d)     Any Party may change its address or facsimile number for the purpose of this Section 12.8 by giving the other Parties written notice of its new address in the manner set forth above.

Section 12.9     Amendments; Waivers. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by Buyer and Seller, or in the case of a waiver, by the Party waiving compliance. Any waiver by any Party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of

any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 12.10  Entire Agreement.  This Agreement and the Ancillary Agreements contain the entire understanding between the Parties with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions.  All Schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.  Notwithstanding the foregoing, the Parties are bound by all orders of the Bankruptcy Court, including, without limitation, the Orders.

Section 12.11  Seller Disclosures.  Seller shall be entitled to disclose this Agreement and all information provided by Buyer in connection herewith to the Bankruptcy Court, the United States Trustee, parties in interest in the Bankruptcy Case and other Persons bidding on the Reno Assets.

Section 12.12  Headings.  The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

Section 12.13  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.  Each Party hereto agrees that the delivery of this Agreement by facsimile or other electronic transmission will be deemed to be an original of this Agreement so transmitted.

Section 12.14  Construction.  Any reference to any Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.  The word "including" means "including, without limitation."  Any reference to the singular in this Agreement shall also include the plural and *vice versa*.

Section 12.15  References to the Chapter 11 Trustee.  For the avoidance of doubt, whether or not explicitly set forth in any particular provision of this Agreement or any Ancillary Agreement, each undertaking, covenant and agreement of Seller under this Agreement or any Ancillary Agreement shall be binding on, and shall be deemed an undertaking, covenant and agreement of, the Chapter 11 Trustee on behalf of Seller to the same extent as if references herein and therein to Seller were references to the Chapter 11 Trustee acting on behalf of Seller.

*[Signatures on following pages.]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

**BUYER:**               NEW WORLD TV GROUP, LLC

By:  New World TV Manager LLC
     Its Manager

By:  Fortress Credit Corp, its sole member

By:  _____
     Name:  Constantine M. Dakolias
     Title:    President

**SELLER:**                                PAPPAS TELECASTING OF NEVADA, L.P.,
                                           a Delaware limited partnership

                                      By: _____
                                           Name:   E. Roger Williams
                                           Title:   Chapter 11 Trustee

**EXHIBIT A**

**Form of Sale Approval Order**

[Attached hereto]

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PAPPAS TELECASTING INCORPORATED, et al.,[1] Debtors. | Case No. 08-10916 (PJW) |
| | (Jointly Administered) |
| | Relates To Docket No. 612 |

**ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 9014 APPROVING THE SALE OF THE REMAINING RENO ASSETS TO NEW WORLD TV GROUP, LLC, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

Upon the motion dated _____, 2009 [Docket No. ___] (the "**Sale Approval Motion**"),[2] of E. Roger Williams, the trustee (the "**Trustee**") of the above-captioned debtors (collectively, the "**Debtors**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (the "**Sale Approval Order**" or this "**Order**") pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): approving (1) the sale by Pappas Telecasting of Nevada, L.P. ("**Pappas Telecasting Nevada**" or the "**Sale Debtor**") of the Remaining Reno Assets to New World TV Group, LLC free and clear of all liens, claims,

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Pappas Telecasting Incorporated (2213), Pappas Telecasting of Central California, a California Limited Partnership (3051); Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903); Pappas Telecasting of Sioux City, L.P. (2089); Pappas Telecasting of Concord, a California Limited Partnership (2459); Pappas Telecasting of Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez, L.P. (2202); Pappas Telecasting of Nevada, L.P. (8024); Pappas Telecasting of Siouxland, LLC (2069); CASA of Washington, LLC (7196); KMPH (TV) License, LLC (None); KFRE (TV) License, LLC (None); Concord License, LLC (None); KTNC License, LLC (None); KPTM (TV) License, LLC (None); WCWG License, LLC (None); KPTH License, LLC (None); KAZH License, LLC (None); KDBC License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

[2] All capitalized terms used herein, unless otherwise defined herein, shall have the respective meanings assigned to such terms in the Sale Approval Motion.

encumbrances and interests of any kind, and (2) certain related relief; and the Court having jurisdiction to consider the Sale Approval Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that proper and adequate notice of the Sale Approval Motion has been given and that no other or further notice is necessary; and a hearing in respect of the Sale Approval Motion having been held before the Court on _____, 2009 (the **"Sale Approval Hearing"**); and the Court having reviewed and considered the Sale Approval Motion and the exhibits thereto, all pleadings relating to the Sale Approval Motion, and the arguments of counsel made, and the evidence proffered and/or adduced, at the Sale Approval Hearing; and it further appearing that the legal and factual bases set forth in the Sale Approval Motion establish just cause for the relief granted herein; and it further appearing that the relief sought in the Sale Approval Motion is in the best interests of the Debtors and their estates; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

### Jurisdiction and Final Order

A.     The Court has jurisdiction over the Sale Approval Motion pursuant to 28 U.S.C. §§ 1334 and 157(a).  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.     The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, and Rules 2002, 6004, and 9014 of the Bankruptcy Rules.  The proposed sale constitutes a sale of property of the Debtors' estates outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

1824364v3
8/14/2009 11:20 AM

C.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

## Chapter 11 Case Background

D.    On May 10, 2008 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.  Until the appointment of the Trustee, the Debtors continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

E.    Pursuant to an order of this Court entered on May 13, 2008 [Docket No. 43], the Debtors' chapter 11 cases (the "**Chapter 11 Cases**") were procedurally consolidated and are being jointly administered.

F.    On May 20, 2008, the Office of the United States Trustee for the District of Delaware (the "**United States Trustee**") filed a notice [Docket No. 90] appointing an official committee of unsecured creditors (the "**Committee**") in the Chapter 11 Cases.

G.    On August 5, 2008, this Court entered an order [Docket No. 258] directing the United States Trustee to appoint a trustee in the Chapter 11 Cases.  On August 14, 2008, the United States Trustee filed a notice [Docket No. 281] with this Court appointing E. Roger Williams as trustee of the Debtors' chapter 11 estates.  On August 18, 2008, this Court entered an order [Docket No. 288] approving the appointment of the Trustee.

## Background Specific to the Sale Approval Motion

H.    On _____, 2009, the Trustee filed a motion [Docket No. _____] (the "**Bidding Procedures Motion**") seeking the entry of an order establishing, among other things, the bidding procedures to govern the sale of the Remaining Reno Assets that are the subject of the Sale Approval Motion.  On _____, 2009, following a hearing before the Court to consider the

Bidding Procedures Motion, the Court entered an order [Docket No. 563] (the "**Bidding Procedures Order**") (a) approving the form of the bidding procedures annexed to the Bidding Procedures Order as Exhibit A (the "**Bidding Procedures**"), (b) fixing _____, 2009 at 2:00 p.m. (prevailing Eastern Time) as the date and time for the Sale Approval Hearing, (c) directing the Trustee to file the Sale Approval Motion no later than _____, 2009, (d) approving the form of notice of (i) the auction (the "**Auction**") conducted to implement the asset sale contemplated by the Bidding Procedures Motion, (ii) the Bidding Procedures and (iii) the Sale Approval Hearing, (e) fixing _____, 2009 at 4:00 p.m. (prevailing Eastern Time) as the deadline (the "**Bid Deadline**") for submitting bids for the Remaining Reno Assets, (f) fixing _____, 2009, commencing at 11:00 a.m. (prevailing Eastern Time) as the date and time for the Auction, (g) fixing _____, 2009, at 4:00 p.m. (prevailing Eastern Time) as the deadline (the "**Sale Approval Motion Objection Deadline**") for serving and filing objections to the Sale Approval Motion, (h) providing certain other relief.

I.        [The Trustee conducted the Auction on _____, 2009 in accordance with the Bidding Procedures Order. At the conclusion of the Auction, the Trustee selected the Qualified Bid submitted by New World TV Group, LLC (together with its successors, assigns and designees, the "**Successful Bidder**"), the nominee of the Pre-Petition Agent, as the Successful Bid. The Successful Bid is evidenced by that certain Asset Purchase Agreement (together with all documents and agreements ancillary thereto and executed in connection therewith, the "**Reno APA**"), dated as of _____, 2009, executed by the Successful Bidder and Pappas Telecasting Nevada, a copy of which is annexed hereto as **Exhibit A**. The Reno APA embodies, among other things, a credit bid (the "**Credit Bid**") by the Successful Bidder, as nominee of the Pre-

Petition Agent, for the Remaining Reno Assets (as defined in the Reno APA) in the amount of

$_____ (the "**Successful Bid Amount**").  [Only include if the Auction is conducted.]

J.      [On _____, 2009, in accordance with the Bidding Procedures Order, the

Trustee filed with the Court a notice (the "**Notice of Auction Results**") (Docket No. \_\_\_\_) that,

among other things, identified the Successful Bidder and the Successful Bid Amount.  Also, on

December 15, 2008, in accordance with the Bidding Procedures Order, the Trustee caused the

Notice of Auction Results to be posted on the website of the Debtors' claims agent, Administar

Services Group, LLC, www.administarllc.com.]  [Only include if the Auction is conducted.]

## Pre-Petition Agent's Credit Bid

K.      The Bidding Procedures Order provides that the Remaining Reno Assets are

subject to a valid, duly perfected, first-priority, non-avoidable lien held by the Pre-Petition Agent

(for the benefit of the Pre-Petition Lenders) as security for the Fortress Claim, which, as of the

Petition Date, is in the unpaid amount of $329,073,933.03 (the "**Fortress Claim Amount**").[3]

The Bidding Procedures Order further provides, among other things, that, for all purposes

relating to the Bidding Procedures, the Auction and the Sale Approval Hearing, the Fortress

Claim shall be deemed allowed, and the Pre-Petition Agent, or its nominee, shall be permitted to

submit a credit bid pursuant to section 363(k) of the Bankruptcy Code for the Remaining Reno

Assets.

L.      The Credit Bid was properly authorized and valid in all respects pursuant to the

provisions of the Pre-Petition Loan Documents, the Bidding Procedures Order and section

363(k) of the Bankruptcy Code.

## Notice

---

[3] The Pre-Petition Agent is holding the sum of $15,000,000 that was paid to the Pre-Petition Agent prior to the Petition Date by certain of the Debtors; that sum has not yet been applied against the Fortress Claim.

1824364v3
8/14/2009 11:20 AM

M.     Proper and timely notice of the Bidding Procedures Order, the Auction, the

Bidding Procedures, the Sale Approval Motion, the Sale Approval Motion Objection Deadline

and the Sale Approval Hearing was provided to all parties entitled thereto in the manner and

otherwise in accordance with the Bidding Procedures Order, the Bankruptcy Rules and the

Bankruptcy Code, as evidenced by the notices, affidavits and/or certificates of service and

publication filed with this Court.  Such notice constitutes good and sufficient notice of the

Bidding Procedures Order, the Auction, the Bidding Procedures, the Sale Approval Motion, the

Sale Motion Objection Deadline and the Sale Approval Hearing in view of all relevant

circumstances, and no other or further notice of such matters is or shall be required.

N.     The Trustee has afforded a reasonable and sufficient opportunity to object or be

heard with respect to the relief requested in the Sale Approval Motion to all interested persons

and entities by causing (w) a conformed copy of the Bidding Procedures Order, (x) the Bidding

Procedures, (y) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing

in substantially the form attached to the Bidding Procedures Order as Exhibit B, and (z) a copy

of the Sale Approval Motion (including the exhibits thereto) to be sent by first-class mail,

postage prepaid, to, (i) the United States Trustee, (ii) counsel to the Committee, (iii) all creditors

and equity security holders identified in the list of creditors and equity security holders

heretofore filed herein with the Court by the Debtors, (iv) any party asserting a lien a against all

or any portion of the Assets, (v) all parties, or their counsel, who have, in writing, expressed an

interest in or submitted written offers to the Debtors, Moelis or the Trustee for all or any portion

of the Debtors' assets, (vi) the Internal Revenue Service, (vii) the FCC, (viii) all federal, state

and local regulatory and taxing authorities that have a known interest in the relief requested in

the Sale Approval Motion, (ix) all parties who have requested notice in the Chapter 11 Cases

pursuant to Bankruptcy Rule 2002, (x) the Attorney General's Office for the State of Nevada, (xi) the United States Securities and Exchange Commission, (xii) the United States Attorney's Office for the States of Nevada and Delaware, respectively, (xiii) counsel to the Pre-Petition Agent, and (xiv) counsel to certain of the Pre-Petition Lenders (all such parties, collectively, the **"Notice Parties"**). In light of the circumstances, the foregoing notice to the Notice Parties was reasonably calculated to provide timely, adequate and sufficient notice to the Debtors' major creditor constituencies, those parties most interested in the Chapter 11 Cases, and those parties that potentially were interested in bidding on the Remaining Reno Assets of relevant information concerning the Auction, the Bidding Procedures and the Sale Approval Hearing.

O.     The Trustee caused notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B to be published in [Insert Name of Publication] on or before seven (7) days prior to the Bid Deadline, as authorized in the Bidding Procedures Order.

## Power and Authority of Trustee to Execute the Reno APA and Consummate the Sale

P.     The Reno APA was executed on behalf of the Sale Debtor by the Trustee. The Trustee is duly authorized, on behalf of the Sale Debtor, to execute the Reno APA and take and perform any and all acts and actions that are necessary to effectuate and consummate the transactions contemplated therein.

Q.     Subject to the entry of this Sale Approval Order, (1) the Trustee has full requisite power and authority (a) to execute the Reno APA and all other documents contemplated thereby, and (b) to consummate the transactions contemplated by the Reno APA on behalf of the Sale Debtor, and (2) the Reno APA, and all of the transactions and documents contemplated thereby, have been duly and validly authorized by all necessary action on the part of the Sale Debtor. No

1824364v3
8/14/2009 11:20 AM

further consents or approvals, other than those expressly provided for under the Reno APA, are required for the Trustee to consummate the transactions contemplated by the Reno APA.

**Trustee's Business Judgment and Justification for the Sale to the Successful Bidder**

R.    The sale of the Remaining Reno Assets to the Successful Bidder in accordance with the terms and conditions set forth in the Reno APA reflects the sound exercise of the Trustee's business judgment consistent with his fiduciary duties.

S.    Approval of the Reno APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their estates, and parties in interest in the Chapter 11 Cases. The Trustee has demonstrated both (i) good and sufficient business purpose and justification and (ii) compelling circumstances for consummating the transactions contemplated by the Reno APA outside of a plan of reorganization have been established, in that, among other things:

1.    The Trustee, in the sound exercise of his business judgment, has determined that (i) a stand-alone business plan is not feasible, and (ii) unless the sale of the Remaining Reno Assets to the Successful Bidder is concluded expeditiously as provided for in the Remaining Reno Assets Sale Motion and the Reno APA, the value of the Remaining Reno Assets may decline, and the Debtors, their estates and their creditors ultimately may realize less value for the Remaining Reno Assets.

2.    As demonstrated by the evidence presented in support of the Sale Approval Motion at the Sale Approval Hearing, the Trustee himself and through his retained professionals diligently and in good faith marketed the Remaining Reno Assets to secure the highest and best offer therefor. In addition, on _____, 2009, the Trustee caused to be mailed (a) a conformed copy of the Bidding Procedures Order, (b) the Bidding Procedures, and (c) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B, and on _____, 2009, the Trustee caused to be mailed a copy of the Sale Approval Motion (including the exhibits thereto), in each case to, among other parties, all parties who have delivered to the Debtors written expressions of interest in acquiring, or offers to acquire, all or a portion of the Debtors' assets. The Trustee also caused a notice substantially in the form of Exhibit B to the Bidding Procedures Order to be published in [Insert Name of Publication].

3.    The sale of the Remaining Reno Assets at this time to the Successful Bidder pursuant to sections 105, 363(b), 363(f) and 363(k) of the Bankruptcy Code is the

only viable alternative to preserve the value of the Remaining Reno Assets and maximize the Debtors' estates for the benefit of all constituencies.

4.    No Qualified Bid for the entirety of the Remaining Reno Assets, other than the Successful Bid embodied in the Reno APA, was submitted by the Bid Deadline (as defined in the Bidding Procedures Order) or otherwise at or before the Auction.

### The Reno APA Constitutes the Highest and Best Offer for the Remaining Reno Assets

T.    [The Trustee conducted an auction process in accordance with, and has otherwise complied in all material respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make an initial offer and, thereafter, a higher or otherwise better offer to purchase the Remaining Reno Assets or any portion thereof. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.] [Include only if Auction conducted]

U.    The terms and conditions of the Reno APA (i) are fair and reasonable, (ii) represent the highest and best offer for the Remaining Reno Assets, (iii) will provide a greater recovery for the Debtors' estates than would be provided by any other practical, available alternative, and (iv) constitute reasonably equivalent value and fair consideration under applicable fraudulent transfer and fraudulent conveyance laws of the United States, any state, territory, possession, or the District of Columbia.

V.    Approval of the Sale Approval Motion and the Reno APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, and their estates.

### Good Faith and Non-Collusive Sale

W.    The Reno APA was negotiated, proposed and entered into by the Sale Debtor and the Successful Bidder without collusion, in good faith, and from arm's length bargaining positions. In all respects, the Successful Bidder has acted in good faith in purchasing the

Remaining Reno Assets and, as such, is entitled to the full benefit and protection afforded by section 363(m) of the Bankruptcy Code.

X. Neither the Trustee nor the Successful Bidder has engaged in any conduct, whether by commission or omission, that would cause or permit the Reno APA and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

### Transfer and Assignment of the Remaining Reno Assets Free and Clear of Liens, Claims, Interests and Encumbrances

Y. The transfer and assignment of the Remaining Reno Assets by the Sale Debtor to the Successful Bidder pursuant to the Reno APA are or will be legal, valid and effective transfers and assignments to the Successful Bidder of, and except as expressly provided in the Reno APA, shall vest the Successful Bidder with, all right, title, privilege and interest of the Sale Debtor and the Trustee in and to the Remaining Reno Assets, free and clear of all Liens, Claims, Interests and Encumbrances (each term as defined in the Reno APA, and collectively, the "**Interests**"), other than Permitted Encumbrances (as defined in the Reno APA) and Permitted Exceptions (as defined in the Reno APA) pursuant to, and to the fullest extent permitted by, the provisions of section 363 of the Bankruptcy Code.

Z. The Trustee, acting on behalf of the Sale Debtor, may sell the Remaining Reno Assets free and clear of all Interests (other than as specifically set forth in the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object, or who withdrew their objections, to the Sale or the Remaining Reno Assets Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of encumbrances who did object and did not withdraw their objections fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

1824364v3
8/14/2009 11:20 AM

AA.     Except as provided in the Reno APA or this Sale Approval Order with respect to Permitted Encumbrances and Permitted Exceptions, consummation of the transactions contemplated by the Reno APA does not and will not subject the Successful Bidder to any Interests, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person or entity by reason of such transfer and assignment under the laws of the United States, any state, territory or possession applicable to such transactions.

BB.     The Successful Bidder would not have entered into the Reno APA and would not have agreed to consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Remaining Reno Assets to the Successful Bidder were not free and clear of all Interests (other than as expressly set forth in the Reno APA), or if the Successful Bidder would, or in the future could, be liable for any encumbrances (other than as specifically set forth in the Reno APA.

### Miscellaneous

CC.     The Successful Bidder is not a successor to the Sale Debtor or their estates with respect to the business and operations currently or formerly conducted by the Sale Debtor or otherwise. Without limiting the generality of the foregoing, the transactions contemplated by the Reno APA do not constitute a consolidation, merger or de facto merger of the Successful Bidder and the Sale Debtor.

DD.     The relief requested in the Sale Approval Motion is in the best interests of the Debtors, their estates, and parties in interest.

EE.     For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to one or more individuals a policy

1824364v3
8/14/2009 11:20 AM

prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The findings of fact and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2.     The relief requested in the Sale Approval Motion is granted as set forth herein, and the transactions contemplated under the Reno APA are hereby approved.

3.     All objections, if any, to the Sale Approval Motion or the relief requested therein that have not been withdrawn, waived or settled, as announced to the Court at the Sale Approval Hearing or by stipulation filed with the Court, and all reservations of rights set forth therein, are hereby overruled on the merits.

### Authorization to Execute, and Approval of, the Reno APA

4.     The terms and conditions of the Reno APA are authorized and approved in all respects pursuant to sections 105(a), 363(b), 363(f), 363(k), and 363(m) of the Bankruptcy Code.

5.     The form and substance of the Reno APA hereby are approved in all respects. Pursuant to section 363(b) of the Bankruptcy Code, the execution of the Reno APA by the Trustee, acting on behalf of the Sale Debtor, hereby is ratified and approved, and the Trustee is authorized and directed to deliver the executed Reno APA to the Successful Bidder. The Trustee hereby is authorized, directed and empowered to (i) cause the Sale Debtor to execute and deliver to the Successful Bidder all other agreements and documents ancillary to and contemplated by

1824364v3
8/14/2009 11:20 AM

the Reno APA, including, without limitation, bills of sale, title documents and any other documents or instruments that reasonably may be necessary or desirable to implement the Reno APA and implement and consummate the transactions contemplated thereby, (ii) perform, and cause the Sale Debtor to perform, all of his and its duties and obligations set forth in the Reno APA, and (iii) take all further actions as reasonably may be requested by the Successful Bidder for the purpose of assigning, transferring, granting, conveying and conferring to the Successful Bidder or reducing to Successful Bidder's possession any or all of the Remaining Reno Assets, or as may be necessary or appropriate to the performance of the Sale Debtor's and/or the Trustee's obligations as contemplated by the Reno APA.

## Transfer of the Remaining Reno Assets

6.      Except as provided in the Reno APA, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, effective upon the consummation of the transactions contemplated by the Reno APA, the Remaining Reno Assets shall be transferred and assigned to the Successful Bidder, and the Successful Bidder shall take title to and possession of the Remaining Reno Assets, free and clear of any and all Interests, other than the Permitted Encumbrances and Permitted Exceptions, with all such Interests to attach to the net proceeds, if any, of the Sale in the order of their priority, with the same validity, force and effect as they had against the Remaining Reno Assets as of the Petition Date, all subject to the rights, claims, defenses and objections, if any, of the Debtors with respect to such Interests. The transfer of the Remaining Reno Assets to the Successful Bidder pursuant to the this Order and the Reno APA constitutes a legal, valid and effective transfer of the Remaining Reno Assets and shall vest the Successful Bidder with all right, title, and interest of the Trustee and the Sale Debtor in and to all Remaining Reno Assets free and clear of all Interests (other than Permitted Encumbrances and Permitted Exceptions).

1824364v3
8/14/2009 11:20 AM

7.      Except as expressly permitted or otherwise specifically provided by the Reno APA or this Sale Approval Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests (other than Permitted Encumbrances and Permitted Exceptions) against or in the Debtors or the Remaining Reno Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Sale Debtor, the Remaining Reno Assets, the operation of the Debtors' or the Sale Debtor's business prior to the Closing Date (as defined in the Reno APA), as applicable, or the transfer of the Remaining Reno Assets to the Successful Bidder, hereby are forever barred, estopped, and permanently enjoined from asserting against the Successful Bidder and its successors, assigns and designees, their property, or the Remaining Reno Assets, such persons' or entities' respective Interests.

8.      All persons and entities, including, without limitation, the Debtors and their non-Debtor affiliates, that have custody, possession and/or control of some or all of the Remaining Reno Assets on the Closing Date are directed to surrender custody, possession and control of such Remaining Reno Assets to the Successful Bidder or its designee at the Closing (as defined in the Reno APA). Nothing in this Order or in the Reno APA shall be construed to transfer to the Successful Bidder title to assets that are not owned by the Sale Debtor.

## Satisfaction, Termination and Release of Interests in the Remaining Reno Assets

9.      If any person or entity that holds an Interest in or against the Remaining Reno Assets (or any portion thereof) that is evidenced by a financing statement, mortgage, mechanic's liens, *lis pendens*, or other document or instrument filed or recorded in a governmental office established for filing and recording such documents shall not have delivered to the Trustee or the

1824364v3
8/14/2009 11:20 AM

Successful Bidder prior to the Closing, in proper form for filing or recording (as the case may be) and executed and witnessed by the appropriate parties, termination statements, instruments of satisfaction, or releases of such Interests that such person or entity holds with respect to the Remaining Reno Assets, then (i) each of the Sale Debtor, the Trustee, on behalf of the Sale Debtor, and the Successful Bidder hereby is authorized to execute and file or record such statements, instruments, releases and other documents in lieu and on behalf of such person or entity and on behalf of the Successful Bidder, and, alternatively, (ii) the Successful Bidder hereby is authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the satisfaction, termination and release of all Interests against or in the Remaining Reno Assets other than the Permitted Liens and the Permitted Exceptions.

10. This Order is and shall be (i) effective as a determination that, effective on the Closing Date, (a) all Interests (other than the Permitted Encumbrances and the Permitted Exceptions) affecting the Remaining Reno Assets prior to the Closing Date, unconditionally have been released, discharged and terminated, and (b) the transfer and assignment of the Remaining Reno Assets has been effected, and (ii) binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Remaining Reno Assets.

1824364v3
8/14/2009 11:20 AM

Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing or recording any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Reno APA, including, without limitation, a certified copy of this Order.

11. Other than as expressly set forth in the Reno APA, (i) the Successful Bidder shall not have any liability or responsibility for any obligation of or claim against the Trustee or the Debtors related to the Remaining Reno Assets arising prior to the Closing Date, (ii) under no circumstances shall the Successful Bidder be deemed a successor of or to the Debtors or the Sale Debtor, or their respective business and operations, for purposes of any Interest against or in the Trustee or the Debtors or the Remaining Reno Assets, (iii) the Successful Bidder shall not be liable for any claims against the Debtors or the Trustee or any of their predecessors or affiliates, and the Successful Bidder shall not have any successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or the Sale Debtor or any obligations of the Debtors, the Sale Debtor or the Trustee arising prior to the Closing Date, and (iv) following the Closing Date, no holder of an Interest against or in the Debtors or the Remaining Reno Assets shall interfere with the Successful Bidder's title to, or use and enjoyment of, the Remaining Reno Assets based on or related to such Interest or any actions that the Debtors or the Trustee may take in the Chapter 11 Cases.

## **Further Assurances**

12. The Sale Debtor, and the Trustee, on behalf of the Sale Debtor, hereby are authorized to take all such actions and execute and deliver to the Successful Bidder such other

1824364v3
8/14/2009 11:20 AM

and further agreements and documents as shall be necessary to consummate and give effect to the Reno APA and the transactions contemplated thereby without further order of the Court.

## Retained Jurisdiction

13.    The Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Reno APA, any amendments thereto authorized by this Order, any waivers and consents thereunder, and each of the agreements, documents and instruments ancillary thereto and executed in connection therewith, (ii) to compel delivery of the Remaining Reno Assets to the Successful Bidder, (iii) to resolve any disputes, controversies or claims arising out of or relating to the Reno APA, and (iv) to interpret, implement and enforce the provisions of this Order.

## Sections 363(m) and 363(n)

14.    The Successful Bidder is a good faith purchaser of the Remaining Reno Assets. Accordingly, in the absence of a stay pending appeal, the Successful Bidder shall be entitled to the protections of Section 363(m) of the Bankruptcy Code with respect to the transactions contemplated by the Reno APA if this Order or any authorization contained herein is reversed or modified on appeal.

15.    The transactions provided for in the Reno APA may not be avoided under section 363(n) of the Bankruptcy Code.

## Additional Provisions

16.    The consideration, including, without limitation, the Credit Bid, provided by the Successful Bidder for the Remaining Reno Assets under the Reno APA is fair and reasonable.

1824364v3
8/14/2009 11:20 AM

17. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Reno APA and the provisions of this Order.

18. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Reno APA or give rise to any claim against the Remaining Reno Assets, the Debtors, the Trustee or the Successful Bidder.

19. The Successful Bid Amount shall be applied and credited against the Fortress Claim Amount upon the occurrence of the Closing.

20. The terms and provisions of the Reno APA, together with the terms and provisions of this Order, shall be binding in all respects upon the Trustee, the Debtors, their estates, their creditors and equity interest holders, any holders of Interests in the Remaining Reno Assets, the Successful Bidder and the respective affiliates, successors and assigns of the foregoing entities and persons, any affected third parties, persons and entities asserting a claim against or interest in the Debtors' estates or any of the Remaining Reno Assets, and any trustee hereafter appointed in the Chapter 11 Cases or upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. This Order and the Reno APA shall inure to the benefit of the Debtors, their estates, their creditors, the Successful Bidder and their respective successors and assigns.

21. The failure specifically to include in this Order any particular provisions of the Reno APA, or any document or agreement ancillary thereto, shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Reno APA and the transactions contemplated thereby be authorized and approved in their entirety and performed in accordance with their terms.

1824364v3
8/14/2009 11:20 AM

22.     The Reno APA and any related agreements, documents or other instruments, including, without limitation, all bills of sale and assignments, may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; *provided, however*, that any such modification, amendment or supplement shall have no materially adverse effect on the Debtors' estates or their creditors, and *provided further* that the Trustee shall provide prior notice of any such modification, amendment or supplement, as soon as practicable prior to the execution thereof, by electronic transmission or telecopier, to (i) counsel for the Committee and (ii) any other creditor or party in interest whose interests are uniquely and directly affected thereby.

23.     Nothing contained in any subsequent order of the Court, or in any plan of reorganization or any order of this Court confirming such plan in the Chapter 11 Cases, shall conflict with or impair the provisions of the Reno APA or this Order.

24.     The 10-day stay imposed pursuant to Bankruptcy Rules 6004(h) shall not be in effect, and this Order shall be effective and enforceable immediately upon entry. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk such appeal being foreclosed as moot in the event that the parties elect to close the transactions contemplated by the Reno APA prior to this Order becoming a final order.


Dated: Wilmington, Delaware
       _____, 2009

                                   _____
                                   The Honorable Peter J. Walsh
                                   United States Bankruptcy Judge

# EXHIBIT A

## Copy of Reno APA

1824364v3
8/14/2009 11:20 AM

# EXHIBIT B

## Bill of Sale and Assignment

[Attached hereto]

# BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT ("Bill of Sale and Assignment") is made, executed and delivered as of _____, 2009 by and between Pappas Telecasting of Nevada, L.P., a Delaware limited partnership ("Seller"), and New World TV Group, LLC, a Delaware limited liability company (together with its Assignee, if any, "Buyer").

## W I T N E S S E T H:

WHEREAS, Seller and Buyer entered into that certain Asset Purchase Agreement, dated as of August 13, 2009 (the "Asset Purchase Agreement"), pursuant to which Seller agreed to sell, assign, transfer, convey and deliver to Buyer, and Buyer agreed to purchase and accept from Seller, the Acquired Assets;

WHEREAS, capitalized terms used but not defined herein shall have the meanings as ascribed to such terms in the Asset Purchase Agreement; and

WHEREAS, the parties desire to carry out the intent and purpose of the Asset Purchase Agreement by Seller's execution and delivery to Buyer of this instrument evidencing the vesting in Buyer of the Acquired Assets, subject to the provisions of the Asset Purchase Agreement.

NOW, THEREFORE, in consideration of the premises and other valuable consideration paid by Buyer to Seller, at or before the execution and delivery hereof, the receipt and sufficiency of which by Seller is hereby acknowledged, Seller, as of the date hereof by this Bill of Sale and Assignment executed and delivered pursuant to Section 2.1 of the Asset Purchase Agreement, hereby does convey, grant, bargain, sell, transfer, set over, assign, alien, remise, release, deliver and confirm unto Buyer, its successors and assigns forever, all of Seller's right, title and interest in and to the Acquired Assets, as set forth in Section 2.1 of the Asset Purchase Agreement.

TO HAVE AND TO HOLD all of the Acquired Assets unto Buyer, its successors and assigns to its and their own use forever, subject to the provisions of the Asset Purchase Agreement.

Section 1.    Without limitation of any of the obligations, covenants or duties of Seller set forth in the Asset Purchase Agreement, Seller hereby covenants that, from time to time after the delivery of this instrument, at Buyer's request and without further consideration, Seller will do, execute, acknowledge and deliver, or will cause to be done, executed, acknowledged and delivered, all further acts, deeds, conveyances, transfers, assignments, powers of attorney and assurances as reasonably may be required more effectively to convey, transfer to and vest in Buyer any of the Acquired Assets, as set forth in Section 2.1 of the Asset Purchase Agreement.

Section 2.    This Bill of Sale and Assignment is for the sole benefit of the parties hereto and their permitted assigns under Section 12.3 of the Asset Purchase Agreement and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Bill of Sale and Assignment.

Section 3.    This Bill of Sale and Assignment shall be binding upon Seller and Buyer and their respective successors and assigns, including, without limitation, any trustee appointed in any case or cases under chapter 7 of the Bankruptcy Code to which the Bankruptcy Case may be converted, effective immediately upon its delivery to Buyer.

Section 4.    Nothing contained in this Bill of Sale and Assignment shall in any way supersede, modify, replace, amend, change, rescind, expand, exceed or enlarge or in any way affect the provisions, including the warranties, covenants, agreements, conditions, or in general, any rights and remedies, and any of the obligations of Seller or Buyer set forth in the Asset Purchase Agreement.

Section 5.    This Bill of Sale and Assignment shall be governed and construed in accordance with the laws of the State of Delaware.

Section 6.    This Bill of Sale and Assignment may not be amended or modified except by an instrument in writing signed by Seller and Buyer.

Section 7.    This Bill of Sale and Assignment may be executed in two or more counterparts, and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. Any signature delivered by facsimile or electronic mail shall be deemed to be an original signature hereunder.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the parties hereto have executed this Bill of Sale and Assignment as of the date first above written.

NEW WORLD TV GROUP, LLC

By: New World TV Manager LLC
Its Manager

By: Fortress Credit Corp, its sole member

By: _____
Name: Constantine M. Dakolias
Title: President

**SELLER:**

PAPPAS TELECASTING OF NEVADA, L.P.,
a Delaware limited partnership

By: _____

Name:   E. Roger Williams
Title:    Chapter 11 Trustee

**EXHIBIT C**

**Form of Bidding Procedures Order**

[Attached hereto]

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PAPPAS TELECASTING | ) Case No. 08-10916 (PJW) |
| INCORPORATED, et al.,[1] | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Ref. Docket No. _____ |
| | ) |

ORDER GRANTING CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002, 4001, 6004 AND 9014 (A) ESTABLISHING BIDDING
PROCEDURES IN CONNECTION WITH THE SALE OF THE REMAINING RENO
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS, (B) SCHEDULING DATE AND TIME TO HOLD THE AUCTION FOR
THE SALE OF THE REMAINING RENO ASSETS, (C) SCHEDULING THE DATE
AND TIME FOR THE HEARING TO CONSIDER THE SALE OF THE REMAINING
RENO ASSETS, AND (D) APPROVING THE FORM AND MANNER OF NOTICE OF
THE AUCTION AND THE SALE APPROVAL HEARING

Upon the motion (the "**Bidding Procedures Motion**") dated August 14, 2009,[2] of the

Chapter 11 Trustee E. Roger Williams (the "**Trustee**" or the "**Seller**") on behalf of the above-

captioned debtors (collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**") under

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (the

"**Bidding Procedures Order**") pursuant to sections 105 and 363 of the Bankruptcy Code and

Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Pappas
Telecasting Incorporated (2213); Pappas Telecasting of Central California, a California Limited Partnership (3051);
Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903); Pappas Telecasting of Sioux
City, L.P. (2089); Pappas Telecasting of Concord, a California Limited Partnership (2459); Pappas Telecasting of
Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez, L.P. (2202); Pappas Telecasting of Nevada, L.P.
(8024); Pappas Telecasting of Siouxland, LLC (2069); CASA of Washington, LLC (7196); KMPH (TV) License,
LLC (None); KFRE (TV) License, LLC (None); Concord License, LLC (None); KTNC License, LLC (None);
KPTM (TV) License, LLC (None); WCWG License, LLC (None); KPTII License, LLC (None); KAZH License,
LLC (None); KDBC License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

[2] All capitalized terms used herein, unless otherwise defined herein, shall have the respective meanings assigned to
such terms in the Bidding Procedures annexed hereto as <u>Exhibit A</u> (the "**Bidding Procedures**").

PHI 316,456,647v2

"**Bankruptcy Rules**"): (A) approving the form of the Bidding Procedures in connection with the sale (the "**Sale**") by Pappas Telecasting of Nevada, L.P. ("**Pappas Telecasting Nevada**" or the "**Sale Debtor**") of the Remaining Reno Assets (as defined herein) free and clear of all liens, claims, encumbrances and interests of any kind to the Successful Bidder, (B) scheduling the date and time to hold an auction (the "**Auction**") to implement the Sale, (C) scheduling the date and time for a hearing (the "**Sale Approval Hearing**") to consider approval of the Sale of the Remaining Reno Assets, free and clear of all liens, claims and encumbrances and interests of any kind, to the Successful Bidder, and (D) approving the form and manner of the notice of the Auction, the Bidding Procedures and the Sale Approval Hearing; and it appearing that due, proper and adequate notice of the Bidding Procedures Motion has been given and that no other or further notice is necessary; and the Court having determined that the relief sought in the Bidding Procedures Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having reviewed the Bidding Procedures Motion and heard the statements and evidence in support of the relief requested therein at a hearing (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Bidding Procedures Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY FOUND AND DETERMINED THAT:**

A.     The Court has jurisdiction to consider the Bidding Procedures Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

PHI 316,456,647v2

B.     A reasonable opportunity to object or be heard with respect to the Bidding Procedures Motion and the relief requested therein has been afforded to all interested persons and entities through service on: (i) the United States Trustee, (ii) counsel to the Committee, (iii) all creditors and equity security holders identified in the list of creditors and equity security holders heretofore filed herein with the Court by Pappas Telecasting of Nevada, LP and Reno License, LLC, debtors; (iv) any party asserting a lien against all or any portion of the Remaining Reno Assets, (v) all parties, or their counsel, who have, in writing, expressed an interest in or submitted written offers to the Debtors, Moelis or the Trustee for the Remaining Reno Assets, (vi) the Internal Revenue Service, (vii) all federal, state and local regulatory and taxing authorities that have a known interest in the relief requested in this Motion, (viii) all parties who have requested notice pursuant to Bankruptcy Rule 2002, (ix) the Attorney General's Office for the State of Nevada, (x) the United States Attorney's Office for the Districts of Delaware and Nevada, respectively, (xi) counsel to the Pre-Petition Agent, and (xii) counsel to certain of the Pre-Petition Lenders (collectively, the **"Notice Parties"**).

C.     Proper, timely, adequate and sufficient notice of the Bidding Procedures Motion has been provided in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the local rules of this Court (the **"Local Rules"**).  No further or other notice of the Bidding Procedures Motion or the relief set forth herein or the entry of this Bidding Procedures Order is necessary under the circumstances.

D.     The proposed Bidding Procedures are fair, reasonable and appropriate, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and represent the best method for maximizing the value to the Debtors' estates of the Remaining

PHI 316,456,647v2

Reno Assets. The use of the Auction represents the best method for maximizing the value of the Remaining Reno Assets.

E. The form and scope of the Notice of Auction and Sale Approval Hearing are reasonable and appropriate and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F. The Seller, and the Debtors prior to the Seller, undertook a lengthy and extensive marketing effort beginning in January 2008 that was planned and implemented by Moelis to solicit potential purchasers of the Debtors' assets (including the Remaining Reno Assets) to induce them to submit bids for all or a portion thereof. Moelis contacted more than 110 potential financial and strategic buyers who had significant strategic fit and/or relevant investment experience for the purpose of soliciting their interest in acquiring some or all of the Debtors' assets (including the Remaining Reno Assets), distributed extensive marketing materials and financial information to potential purchasers, and prepared a data room in order to facilitate due diligence efforts of potential purchasers. Moelis's marketing efforts laid the groundwork for (i) the sale of substantially all of the Debtors assets to New World TV Group, LLC ("**New World**") pursuant to an order of this Court entered on January 13, 2009 and (ii) the sale by Pappas Telecasting Nevada of substantially all of its assets (other than the Remaining Reno Assets) pursuant to an order of this Court entered on October 29, 2008.

G. The Trustee, acting on behalf of Pappas Telecasting Nevada, proposes to transfer, assign and sell to New World, the nominee of the Pre-Petition Agent, and New World has agreed to purchase and acquire from Pappas Telecasting Nevada, the Remaining Reno Assets subject to the terms and conditions of that certain Asset Purchase Agreement, dated as of August 13, 2009 (as may be amended from time to time, the "**Reno APA**"), between Pappas Telecasting Nevada

PHI 316,456,647v2

and New World, a copy of which is annexed to the Bidding Procedures Motion as Exhibit D, and the entry by this Court of an order authorizing and approving, among other things, the execution, delivery and performance by the Trustee, on behalf of Pappas Telecasting Nevada, of the Reno APA.

H.  The entry of this Bidding Procedures Order is in the best interests of the Debtors, the Debtors' estates and their creditors.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.  The Bidding Procedures Motion is granted in its entirety.

2.  All objections to the Bidding Procedures Motion for the relief set forth herein, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits.

3.  The findings of fact set forth above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this contested matter pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

4.  The Bidding Procedures set forth in **Exhibit A** annexed hereto are incorporated herein by reference in their entirety, are approved in their entirety and shall be effective and binding on all parties as if such Bidding Procedures were set forth fully in this Bidding Procedures Order. Pursuant to Bankruptcy Rule 6004(f)(1), the Seller is authorized to conduct the Auction in accordance with the provisions of the Bidding Procedures. All proceedings relating to the Sale of the Remaining Reno Assets, including, without limitation (i) the

submission, consideration, qualification and acceptance of Qualified Bids submitted to the Trustee, (ii) the Auction, and (iii) the identification and determination of the Successful Bid, the Back-Up Bid, the Successful Bidder and the Back-Up Bidder, shall be governed by and conducted in accordance with this Bidding Procedures Order and the Bidding Procedures.

5.  Pursuant to Local Rule 6004-1(c)(ii)(B)-(D), (a) each Qualified Bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale; (b) the Auction shall be conducted openly and all creditors will be permitted to attend; and (c) bidding at the Auction will be transcribed or videotaped.

6.  The Sale Approval Hearing shall be held on **September 9, 2009 at 9:30 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Peter J. Walsh, United States Bankruptcy Court, 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. The Sale Approval Hearing may be adjourned or rescheduled, from time to time, without notice to creditors or parties in interest other than by an announcement of the adjourned date at the Sale Approval Hearing or on the Court's calendar on the date scheduled for the Sale Approval Hearing.

7.  Notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached hereto as **Exhibit B** (the "**Notice of Auction and Sale Approval Hearing**") hereby is approved. Pursuant to Bankruptcy Rule 2002, the Seller hereby is authorized and directed (a) to serve (i) a conformed copy of the Bidding Procedures Order, (ii) the Bidding Procedures, and (iii) the Notice of Auction and Sale Approval Hearing, within two (2) days of the entry of this Bidding Procedures Order, *via* first-class U.S. Mail, postage prepaid, upon the Notice Parties, and (b) provide electronic notification of the Auction, the Bidding

6

Procedures, and the Sale Approval Hearing by filing a copy of the Notice of Auction and Sale Approval Hearing with the Bankruptcy Court. Such service and filing shall constitute good and sufficient notice of the Auction, the Bidding Procedures and the Sale Approval Hearing and all proceedings to be held thereon.

8. The Trustee is authorized, in the exercise of his business judgment, but is neither required nor directed, to publish the Notice of Auction and Sale Approval Hearing in *Broadcasting & Cable* and/or *Electronic Media* (or similar industry publication of comparable circulation) on or before seven (7) days prior to the Bid Deadline (as such deadline may be extended).

9. **The Bid Deadline shall be** September 2, 2009 at 4:00 p.m. **(prevailing Eastern Time).** If the Seller receives at least one (1) Qualified Bid, in addition to the Reno APA, for the Remaining Reno Assets by the Bid Deadline, **the Seller shall conduct the Auction in accordance with the Bidding Procedures on September 3, 2009, commencing at 11:00 a.m. (prevailing Eastern Time)** (the "**Auction Date**") at the offices of McCarter & English LLP, 245 Park Avenue, 27th Floor, New York, New York 10167, or at such later date and time and at such alternative location as the Seller may determine or the Bankruptcy Court may direct. If the Seller does not receive at least one (1) Qualified Bid, in addition to the Reno APA, by the Bid Deadline, **the Seller will not conduct the Auction.**

10. No later than midnight on the business day immediately following the Auction Date, the Seller shall file with the Court a notice (the "**Notice of Auction Results**") setting forth the identity of the Successful Bidder and Back-Up Bidder, if any, and the amount of their respective bids for the Remaining Reno Assets. The Seller also shall cause the Notice of

7

Auction Results to be posted on the website of the Debtors' claims agent, Administar Services Group, LLC, having a URL address at www. administarllc.com.

11.    The Seller is authorized and directed to file and serve by first-class mail, postage prepaid, no later than fifteen (15) days before the Sale Approval Hearing, and otherwise in accordance with applicable Bankruptcy Rules, his motion (the **"Sale Motion"**) requesting entry of the Sale Approval Order. Responses or objections, if any, to the relief to be requested in the Sale Motion must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or property, the basis for the objection and the specific grounds therefore, and be filed with the Court and served upon: (i) McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102 Attn: Charles A. Stanziale, Jr. (cstanziale@mccarter.com) and Jeffrey T. Testa (jtesta@mccarter.com), and Greenberg Traurig, LLP, Two Commerce Square, 2001 Market Street, Suite 2700, Philadelphia, Pennsylvania 19103 Attn: Diane Vuocolo (vuocolod@gtlaw.com), counsel to the Trustee, (ii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox # 35, Wilmington, Delaware, 19899 Attn: Jane M. Leamy (jane.m.leamy@usdoj.gov), (iii) Lowenstein Sandler, PC, Attn: Sharon L. Levine (slevine@lowenstein.com), 65 Livingston Avenue, Roseland, New Jersey 07068-1791, counsel to the Committee, (iv) Kasowitz, Benson, Torres & Friedman LLP, Attn: Richard F. Casher (rcasher@kasowitz.com) and Jeffrey R. Gleit (jgleit@kasowitz.com), 1633 Broadway, New York, New York 10019, counsel to Fortress, and (v) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067-6049, Attn: Michael Tuchin (mtuchin@ktbslaw.com) and David A. Fidler (dfidler@ktbslaw.com), counsel to certain of the

PHI 316,456,647v2

Debtors' Pre-Petition Lenders, **so as actually to be received by such persons no later than 4:00 p.m. (prevailing Eastern Time) on September 4, 2009** (the "**Sale Motion Objection Deadline**"). The failure of any party to file and serve its objection or response to the Sale Motion by the Sale Motion Objection Deadline in accordance with the provisions of this paragraph shall be a bar to the assertion, at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, the Sale or the Seller's consummation and performance of the transaction(s) contemplated thereby.

12.     Pursuant to the provisions of the Bankruptcy Court's final order (the "**Financing Order**") in respect of post-petition financing entered on September 10, 2008, the Remaining Reno Assets are subject to a valid, duly perfected, first-priority, non-avoidable lien held by Fortress (for the benefit of the Pre-Petition Lenders) as security for a claim held by Fortress (for the benefit of the Pre-Petition Lenders) against the Debtors in the unpaid amount of $329,073,933.03 (the "**Fortress Claim**"), as of the Petition Date. Fortress previously credit bid a portion ($260,000,000) of the Fortress Claim in connection with the acquisition by Fortress's nominee, New World, of substantially all of the Debtors' assets pursuant to an order of the Bankruptcy Court entered on January 13, 2009. For all purposes of these Bidding Procedures, the Auction, and the Sale Approval Hearing, the Fortress Claim shall be deemed allowed, and Fortress, or its nominee, (a) shall be permitted to submit a credit bid, in the form of the Reno APA, pursuant to section 363(k) of the Bankruptcy Code for the Remaining Reno Assets, (b) shall not be required to post any Deposit in order to qualify to credit bid in such fashion, and (c) shall be deemed to be a Qualified Bidder, and its credit bid shall be deemed to be a Qualified Bid.

9

13.     The Trustee is hereby authorized to take such steps and incur and pay such reasonable expenditures as may be necessary or appropriate to effectuate the terms of this Bidding Procedures Order.

14.     This Court shall retain jurisdiction to hear and determine all matters, claims, rights or disputes arising from the implementation of this Bidding Procedures Order.

15.     Pursuant to Bankruptcy Rule 6004(h), this Bidding Procedures Order shall not be stayed for ten (10) days after the entry hereof and shall be effective and enforceable immediately upon its entry.

Dated: August ___, 2009
        Wilmington, Delaware

_____
Honorable Peter J. Walsh
United States Bankruptcy Judge

10

# EXHIBIT A

## Bidding Procedures

*PHI 316,456,647v2*

# BIDDING PROCEDURES FOR SALE OF REMAINING RENO ASSETS

### *In re Pappas Telecasting Incorporated, et al.*

### Background and Overview

On May 10, 2008 (the "**Petition Date**"), Pappas Telecasting Incorporated and its affiliated debtors (collectively the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), commencing chapter 11 cases (collectively, the "**Cases**") that are jointly administered under the caption *In re Pappas Telecasting Incorporated, et al.*, Case No. 08-10916 (PJW). On May 20, 2008, the Office of the United States Trustee for the District of Delaware (the "**United States Trustee**") appointed the statutory committee of unsecured creditors (the "**Committee**") for the Cases. On August 14, 2008, the United States Trustee appointed E. Roger Williams as trustee (the "**Trustee**" or the "**Seller**") of the Debtors' chapter 11 estates. On August 18, 2008, the Bankruptcy Court entered an order approving the appointment of the Trustee.

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed by the Trustee to facilitate the proposed sale (the "**Sale**") of the Remaining Reno Assets (as defined herein. The Sale will be subject to competitive bidding by Qualified Bidders (as defined herein) as set forth herein at an auction (the "**Auction**") to be conducted by the Trustee in accordance with these Bidding Procedures. The Sale is subject to approval by the Bankruptcy Court in accordance with the provisions of sections 105 and 363 of Bankruptcy Code.

On August 14, 2009, the Seller filed a motion (the "**Bidding Procedures Motion**") for an order pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (A) establishing bidding procedures in connection with the Sale of the Remaining Reno Assets, (B) approving the form and manner of notices of the Auction and the Sale Approval Hearing (as defined herein), and (C) scheduling dates for the Auction and a hearing (the "**Sale Approval Hearing**") to approve the Sale of the Remaining Reno Assets free and clear of all liens, claims, encumbrances and interests of any kind, to the Successful Bidder (as defined herein).

On August __, 2009, as requested in the Bidding Procedures Motion, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") approving the Bidding Procedures set forth herein.

These Bidding Procedures describe the various components of the process (the "**Bidding Process**") that will culminate in the Sale Approval Hearing, including, without limitation, a description of the Remaining Reno Assets available for sale, the form of bids and the manner in which bidders and bids become qualified to participate in the Auction, the coordination of due diligence efforts, the conduct of the Auction, the ultimate selection of the Successful Bidder, and the approval by the Bankruptcy Court of the Sale to the Successful Bidder.

In the event that the Seller and any party in interest disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court shall have jurisdiction to hear and resolve such dispute.

## Assets to be Sold

Pappas Telecasting of Nevada, L.P. (the "**Sale Debtor**") owns certain residual assets that were not sold to or purchased by Entravision Communications Corporation ("Entravision") when Entravision purchased substantially all of the assets of the Sale Debtor pursuant to an order of the Bankruptcy Court entered on October 29, 2008. Those residual assets (collectively, the "**Remaining Reno Assets**") include, without limitation, antennae, satellite dishes, computer monitors, cameras, printers, motor vehicles, computer, user stations, software, wireless receivers and transmitters, tripods, teleprompters, servers, amplifiers, equipment racks, control panels, chairs, desks, tables, and workstations. A detailed description of the Remaining Reno Assets is annexed as **Exhibit A** annexed hereto.

The Remaining Reno Assets are being offered on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature, or description by the Seller, its agents or the Debtors' estates, except as expressly may be set forth in the Reno APA (as defined herein) or the applicable Asset Purchase Agreement (as defined herein), as the case may be, executed by the Successful Bidder and approved by the Bankruptcy Court. Except as otherwise provided in such approved Asset Purchase Agreement, all of the Seller's right, title and interest in and to the Remaining Reno Assets shall be sold free and clear of all liens, claims, interests and encumbrances asserted thereon and therein.

## Asset Purchase Agreement Executed by New World TV Group, LLC and the Sale Debtor

The Trustee, acting on behalf of the Sale Debtor, after consulting with his professional advisers and in the exercise of his reasonable business judgment, has entered into an Asset Purchase Agreement, dated as of August 13, 2009 (as may be amended from time to time, the "**Reno APA**"), with New World TV Group, LLC ("**New World**"), the nominee of Fortress Credit Corp, as agent ("**Fortress**") for the Debtors' pre-petition lenders (the "**Pre-Petition Lenders**"). Pursuant to the Reno APA, the Sale Debtor proposes to transfer and sell to New World, or its designee, and New World, or its designee, has agreed to purchase and acquire from the Sale Debtor, the Remaining Reno Assets in consideration of a purchase price of $2,500,000 (the "**New World Purchase Price**"), which shall be in the form of a credit bid that shall be offset and credited against the unpaid balance of Fortress's claim against the Debtors in the Cases. The Reno APA shall be subject to higher and better offers submitted by Qualified Bidders prior to the Bid Deadline (as defined herein) and shall be subject to competitive bidding at the Auction. A copy of the Reno APA is annexed as Exhibit C to the Sale Motion (as defined herein).

## Notice of Auction, Bidding Procedures and Sale Approval Hearing

No later than two (2) business days following entry of the Bidding Procedures Order, the Trustee shall cause (i) a conformed copy of the Bidding Procedures Order, (ii) the Bidding Procedures, and (iii) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B (the "**Notice of Auction and Sale Approval Hearing**") to be sent by first-class mail, postage prepaid, to (i) the United States Trustee, (ii) counsel to the Committee, (iii) all creditors and equity security holders identified in the list of creditors and equity security holders heretofore filed herein with the Court by the Reno License, LLC and Pappas Telecasting of Nevada, LP

2

debtors, (iv) any party asserting a lien a against all or any portion of the Assets, (v) all parties, or their counsel, who have, in writing, expressed an interest in or submitted written offers to the Debtors, Moelis & Company ("**Moelis**") or the Trustee for all or any portion of the Debtors' assets, or any portion thereof, (vi) the Internal Revenue Service, (vii) the FCC, (viii) all federal, state and local regulatory and taxing authorities that have a known interest in the relief requested in the Bidding Procedures Motion, (ix) all parties who have requested notice in the Cases pursuant to Bankruptcy Rule 2002, (x) the Attorney General's Office for the State of Nevada, (xi) the United States Securities and Exchange Commission, (xii) the United States Attorney's Office for the States of Nevada and Delaware, respectively, (xiii) counsel to Fortress, and (xiv) counsel to certain of the Pre-Petition Lenders (the foregoing parties, collectively, the "**Notice Parties**").

## Marketing of Assets

The Debtors, through the assistance of Moelis, previously conducted an extensive marketing process with respect to all of the Debtors' assets, including the Remaining Reno Assets, which was initiated prior to the Petition Date. Following the Petition Date, Moelis continued to market the Debtors' assets. The Trustee, in the exercise of his business judgment, intends to place an advertisement concerning the Auction in *Broadcasting & Cable* and/or *Electronic Media* (or similar industry publication of comparable circulation) prior to the Bid Deadline, and also will deliver a Notice of Auction and Sale Approval Hearing to any party who previously expressed an interest in the Debtors' assets, or any portion thereof.

## Due Diligence

Any person or entity that wishes to participate in the Bidding Process (a "**Potential Bidder**") and seeks to conduct due diligence with respect to the Remaining Reno Assets will be required to execute a confidentiality agreement in form and substance satisfactory to the Sale Debtor. Upon executing and delivering such an agreement, a Potential Bidder shall be afforded the opportunity to conduct reasonable due diligence through the Bid Deadline. Due diligence inquiries and requests should be directed to Dennis Davis, President, Pappas Telecasting Incorporated, 301 West Main Street, Visalia, California 93291, Telephone: (559) 738-5360, Facsimile: (559) 627-2600, Email: ddavis@kmph.com. Due diligence access may include, at the Seller's discretion, management presentations as may be scheduled by the Seller, access to data rooms, on-site inspections of the Remaining Reno Assets and such other matters as a Potential Bidder may request and as to which the Seller, in his sole discretion, may agree. The Seller may, in its discretion, coordinate diligence efforts so that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

By participating in the Bidding Process, each Qualified Bidder shall be deemed to acknowledge and agree that it has had a sufficient opportunity to inspect and examine the Remaining Reno Assets and conduct due diligence regarding the Remaining Reno Assets prior to submitting its bid, that it has relied solely upon its own, and/or its advisers', independent review, investigation, inspection and/or analysis of any documents, information, data and other materials in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties of the Debtors, Moelis, the Trustee, or their respective

3

representatives, whether express, implied, by operation of law or otherwise, regarding the Remaining Reno Assets, or the completeness of any information provided in connection with the Bidding Process, except as expressly stated in the Asset Purchase Agreement of such Qualified Bidder approved by the Bankruptcy Court.

## Bid Deadline

The "**Bid Deadline**" is **September 2, 2009, at 4:00 p.m. (prevailing Eastern Time)**. A Potential Bidder that desires to make a bid for the Remaining Reno Assets, or any portion thereof, shall deliver a written copy of all materials comprising its bid to the following parties (collectively, the "**Bid Delivery Parties**") **no later than the Bid Deadline**: (i) McCarter & English, LLP, Three Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102 Attn: Charles A. Stanziale, Jr. (cstanziale@mccarter.com) and Jeffrey T. Testa (jtesta@mccarter.com), and Greenberg Traurig, LP, Two Commerce Square, 2001 Market Street, Suite 2700, Philadelphia, PA 19103 Attn: Diane Vuocolo (vuocolod@gtlaw.com), counsel to the Trustee, (ii) the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox # 35, Wilmington, Delaware, 19899 Attn: Jane M. Leamy, (jane.m.leamy@usdoj.gov), (iii) Lowenstein Sandler, PC, Attn: Sharon L. Levine (slevine@lowenstein.com), 65 Livingston Avenue, Roseland, New Jersey 07068-1791, counsel to the Committee, (iv) Kasowitz, Benson, Torres & Friedman LLP, Attn: Richard F. Casher (rcasher@kasowitz.com) and Jeffrey R. Gleit (jgleit@kasowitz.com), 1633 Broadway, New York, New York 10019, counsel to Fortress, and (v) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067-6049, Attn: Michael Tuchin (mtuchin@ktbslaw.com) and David A. Fidler (dfidler@ktbslaw.com), counsel to certain of the Debtors' Pre-Petition Lenders. The Seller, in the exercise of his discretion, may extend the Bid Deadline once or more than once, but is not obligated to do so. If the Seller extends the Bid Deadline, it promptly shall notify all Potential Bidders of which it is aware of such extension. **Any person or entity that does not submit a bid to the Bid Delivery Parties by the Bid Deadline (as extended, if at all) shall not be permitted to participate in the Auction.**

## Submission of Bids; Selection of Qualified Bidders; Determination of Qualified Bids

Any Potential Bidder who wishes to participate in the Auction and bid on the Remaining Reno Assets must demonstrate to the satisfaction of the Trustee that such Potential Bidder is a "**Qualified Bidder.**" A Qualified Bidder is a person who, on or before the Bid Deadline, delivers to the Seller the following:

(i)  an executed confidentiality agreement in form and substance acceptable to the Seller;

(ii)  a Qualified Bid (as defined herein); and

(iii)  sufficient and adequate financial information, credit-quality support and such other information as the Seller reasonably may request that demonstrate, to the satisfaction of the Seller, the financial capability of the Potential Bidder to consummate in a timely manner the purchase of the Remaining Reno Assets if such Potential Bidder were to be selected as a Successful Bidder.

4

As used herein, the term "**Qualified Bid**" shall mean a written bid for the Remaining Reno Assets, which bid:

(i) is accompanied by a cash deposit (the "**Deposit**") in an amount equal to the greater of (a) ten percent (10%) of the proposed purchase price for the Remaining Reno Assets and (b) $100,000, which deposit shall be paid *via* certified check or *via* wire transfer to the Seller;

(ii) is accompanied by an executed asset purchase agreement ("**Asset Purchase Agreement**") that

    (a) provides for a purchase price in an amount that is not less than the New World Purchase Price and is payable, in full, in cash at closing;

    (b) is substantially similar in form and substance (other than with respect to provisions concerning the purchase price, the credit bid method of payment, and the Deposit) to the form of the Reno APA, and, in the reasonable business judgment of the Seller, contains provisions that are not materially more burdensome or conditional than the terms of the Reno APA;

    (c) waives all conditions to closing of the Asset Purchase Agreement (including financing, due diligence and other conditions to performance by the bidder), other than customary conditions relating to approval of the Asset Purchase Agreement by the Bankruptcy Court, and the passage of ten (10) days following entry by the Bankruptcy Court of the Sale Approval Order (as defined herein) without a stay pending appeal or injunction being issued prohibiting performance of the parties thereto; and

    (d) contains no provision for a break-up fee, a termination fee, expense reimbursement or similar type of payment.

(iii) is accompanied by a blacklined copy of the Reno APA showing all changes made to the Reno APA that are reflected in such Asset Purchase Agreement;

(iv) contains a written statement identifying the persons or entities that hold the controlling equity interests in the Potential Bidder (or in the Potential Bidder's acquiring entity, if other than the Potential Bidder) and evidence that the board of directors (or comparable governing body) for the Potential Bidder, or such acquiring entity, fully has authorized and approved the execution and delivery to the Seller of such Asset Purchase Agreement, the Potential Bidder's participation in the Bidding Process (including the Potential Bidder's participation in competitive bidding at the Auction), and the consummation of the transactions contemplated by such Asset Purchase Agreement; and

(v) is delivered to the Bid Delivery Parties on or before the Bid Deadline.

*PHI 316,456,736v2*

As soon as practicable after a Potential Bidder has delivered a bid to the Seller in respect of the Remaining Reno Assets, the Seller, in consultation with his advisers, shall determine whether such Potential Bidder timely has satisfied the requirements set forth herein in order for it to be deemed a Qualified Bidder and its bid to be deemed to be a Qualified Bid. Promptly after making such determination, the Seller shall advise respective counsel to Fortress and the Pre-Petition Lenders and such Potential Bidder in writing (which may take the form of an electronic communication) of such determination. Only Potential Bidders that are deemed Qualified Bidders may bid and participate at the Auction.

### Credit Bid

Pursuant to the provisions of the Bankruptcy Court's final order (the "**Financing Order**") in respect of post-petition financing entered on September 10, 2008, the Remaining Reno Assets are subject to a valid, duly perfected, first-priority, non-avoidable lien held by Fortress (for the benefit of the Pre-Petition Lenders) as security for a claim held by Fortress (for the benefit of the Pre-Petition Lenders) against the Debtors in the unpaid amount of $329,073,933.03 (the "**Fortress Claim**"), as of the Petition Date. Fortress previously credit bid a portion ($260,000,000) of the Fortress Claim in connection with the acquisition by Fortress's nominee, New World, of substantially all of the Debtors' assets pursuant to an order of the Bankruptcy Court dated January 13, 2009. For all purposes of these Bidding Procedures, the Auction, and the Sale Approval Hearing, the Fortress Claim shall be deemed allowed, and Fortress, or its nominee, (a) shall be permitted to submit a credit bid, in the form of the Reno APA, pursuant to section 363(k) of the Bankruptcy Code for the Remaining Reno Assets, (b) shall not be required to post any Deposit in order to qualify to credit bid in such fashion, and (c) shall be deemed to be a Qualified Bidder, and its credit bid shall be deemed to be a Qualified Bid.

### The Auction

If the Seller receives at least one (1) Qualified Bid, in addition to the Reno APA, by the Bid Deadline, **the Seller shall conduct the Auction on September 3, 2009, commencing at 11:00 a.m. (prevailing Eastern Time)** (the "**Auction Date**") at the offices of McCarter & English LLP, 245 Park Avenue, 27th Floor, New York, New York 10167, or at such later date and time and at such alternative location as the Seller may determine or the Bankruptcy Court may direct. If the Seller does not receive at least one (1) Qualified Bid, in addition to the Reno APA, by the Bid Deadline, **the Seller will not conduct the Auction**.

The Seller, in the exercise of his business judgment, based, in part, on the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction and such other information as may be relevant, will conduct the Auction in the manner that he determines will best promote the goals of the Bidding Process and will achieve the maximum value for the Remaining Reno Assets. Only Qualified Bidders who have submitted by the Bid Deadline a Qualified Bid will be eligible to participate in the Auction. At the Auction, Qualified Bidders will be permitted to increase their Qualified Bids (such increased Qualified Bid, a "**Qualified Overbid**") in increments that shall be announced prior to the commencement of the Auction. Prior to the commencement of the Auction, the Seller will inform the Qualified Bidders participating in the Auction of the manner in which the Auction will be conducted. After the

6

conclusion of the Auction, the Seller intends, after consultation with his advisors, to announce the Successful Bidder and the Successful Bid.

## Selection of Successful Bid(s)

At the conclusion of the Auction, the Seller, after consultation with his advisers, shall select (a) the Qualified Bid or Qualified Overbid that he determines to be the highest and best offer for the Remaining Reno Assets (such offer, the "**Successful Bid**") and (b) the Qualified Bidder making such bid (the "**Successful Bidder**"). In making his determination of the highest and best offer, the Seller may consider factors other than the purchase price, including, without limitation, the non-financial terms in the Reno APA and the Asset Purchase Agreement(s), factors affecting the speed and degree of certainty with which a Qualified Bidder likely will be able to consummate the Sale, and the liabilities being assumed and assigned to each Qualified Bidder under the Reno APA or its Asset Purchase Agreement, as the case may be. In similar fashion, the Seller, after consultation with his advisers, also shall identify the Qualified Bidder (the "**Back-Up Bidder**") who submitted the next highest and best offer for the Assets (the "**Back-Up Bid**").

No later than midnight on the business day immediately following the Auction Date, the Seller shall file with the Bankruptcy Court a notice (the "**Notice of Auction Results**") setting forth the identity of the Successful Bidder and Back-Up Bidder and the amount of their respective bids for the Remaining Reno Assets. The Seller also shall cause the Notice of Auction Results to be posted on the website of the Debtors' claims agent, Administar Services Group, LLC, www.administar.llc.com. Neither the Seller's announcement of the Successful Bidder in the Notice of Auction Results nor the Seller's presentation of the Successful Bidder to the Bankruptcy Court for approval constitutes the Seller's acceptance of the Successful Bid. The Seller shall have accepted the Successful Bid only when the Bankruptcy Court has entered the Sale Approval Order (as defined herein).

## The Sale Approval Hearing

The Sale Approval Hearing presently is scheduled to be held before the Honorable Peter J. Walsh, of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor Wilmington, Delaware, 19801, Courtroom 6 at **9:30 a.m. (prevailing Eastern Time) on September 9, 2009**. At the Sale Approval Hearing, the Seller will seek entry of an order (the "**Sale Approval Order**"), among other things, authorizing and approving (a) the sale of the Remaining Reno Assets, free and clear of all liens, claims, encumbrances and interests of any kind, to the Successful Bidder or Back-Up Bidder, as determined by the Seller in accordance with the Bidding Procedures. The Sale Approval Hearing may be adjourned or rescheduled, from time to time, without notice to creditors or parties in interest other than by an announcement of the adjourned date at the Sale Approval Hearing or on the Court's calendar on the date scheduled for the Sale Approval Hearing.

## Sale Motion and Objections

The Seller shall file and serve by first-class mail, postage prepaid, no later than fifteen (15) days before the Sale Approval Hearing, and otherwise in accordance with applicable

7

Bankruptcy Rules, its motion (the "**Sale Motion**") requesting entry of the Sale Approval Order. Responses or objections, if any, to the relief to be requested in the Sale Motion must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or property, the basis for the objection and the specific grounds therefore, and be served upon: (i) McCarter & English, LLP, Three Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102 Attn: Charles A. Stanziale, Jr. (cstanziale@mccarter.com) and Jeffrey T. Testa (jtesta@mccarter.com), and Greenberg Traurig, LP, Two Commerce Square, 2001 Market Street, Suite 2700, Philadelphia, PA 19103 Attn: Diane Vuocolo (vuocolod@gtlaw.com), counsel to the Trustee, (ii) the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox # 35, Wilmington, Delaware, 19899 Attn: Jane M. Leamy (jane.m.leamy@usdoj.gov), (iii) Lowenstein Sandler, PC, Attn: Sharon L. Levine (slevine@lowenstein.com), 65 Livingston Avenue, Roseland, New Jersey 07068-1791, counsel to the Committee, (iv) Kasowitz, Benson, Torres & Friedman LLP, Attn: Richard F. Casher (rcasher@kasowitz.com) and Jeffrey R. Gleit (jgleit@kasowitz.com), 1633 Broadway, New York, New York 10019, counsel to Fortress, and (v) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067-6049, Attn: Michael Tuchin (mtuchin@ktbslaw.com) and David A. Fidler (dfidler@ktbslaw.com), counsel to certain of the Debtors' Pre-Petition Lenders, so as actually to be received **no later than 4:00 p.m. (prevailing Eastern Time) on September 4, 2009** (the "**Sale Objection Deadline**"). The failure of any party in interest to file its objection or response to the Sale Motion by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, the Sale or the Seller's consummation and performance of the transaction(s) contemplated thereby.

### Return of Good Faith Deposit

Within fifteen (15) days after the selection of the Successful Bid and the entry of the Sale Approval Order, the Seller shall return the respective Deposits of the Qualified Bidders who were not selected as the Successful Bidder.

### Failure to Consummate Sale

In addition to any other remedies available to the Seller, following the entry of the Sale Approval Order, if the Successful Bidder fails timely to consummate the Sale contemplated by the Reno APA or the Asset Purchase Agreement, as the case may be, executed by such Successful Bidder because of a breach or failure to perform by such Successful Bidder, (i) the Successful Bidder shall forfeit its Deposit without regard to the Debtors' actual damages occasioned by such failure, such Deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages, and, notwithstanding the foregoing, the Trustee, the Debtors and the Debtors' bankruptcy estates shall reserve and retain all available rights and remedies, whether legal or equitable, against such Successful Bidder, and (ii) the Back-Up Bidder shall be deemed to be the Successful Bidder, and the Seller may consummate the transaction contemplated by the Back-Up Bid without further order of the Bankruptcy Court.

8

## Reservation of Rights

The Seller shall have the right to amend these Bidding Procedures or impose such other terms and conditions for the Bidding Process as the Seller, in the exercise of its business judgment, determines are necessary for him to fulfill his fiduciary duties, provided that such modifications are not inconsistent with any Bankruptcy Court order, the Bankruptcy Code, the Bankruptcy Rules and applicable law. Without limiting the generality of the foregoing, the Seller, in the exercise of his business judgment, may reject at any time before entry of a Sale Approval Order any bid that the Seller deems (i) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court, or the Bidding Procedures, (ii) contrary to the best interests of the Debtors, their estates and their creditors, and (iii) otherwise inadequate or insufficient.

## Damages for Controlling the Sale Price by Agreement Among Potential Bidders

All Potential Bidders are advised that, under section 363(n) of the Bankruptcy Code and applicable law, the Trustee may avoid a Sale if the sale price was controlled by an undisclosed agreement among Potential Bidders, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition, the Trustee may recover punitive damages against any such party that entered into such an agreement in willful disregard of section 363(n).

9

# EXHIBIT A

## Description of Remaining Reno Assets

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEUV | 837 | PRINTER, HP LASERJET 8000N | Chgo | 8/31/2000 | VALCOM | |
| PTNEUV | 1015 | AOC 19" Mon Isc-LCD | ADC | 6/30/2000 | ADC | NM |
| PTNEUV | 1016 | AOC 19" Mon Isc-LCD | ADC | 6/30/2000 | ADC | NM |
| PTNEUV | 957 | 1999 DODGE CARAVAN | El Paso | 12/31/2005 | | |
| PTNEUV | 1433 | Computer | El Paso | 9/30/2005 | Campos | |
| PTNEUV | 962 | Dell All In One Inkjet 962 | El Paso | 6/30/2006 | Dell | |
| PTNEUV | 1194 | Switch, Layer 3, Power Connect 6024, 24 Port | El Paso | 9/30/2000 | Dell | |
| PTNEUV | 1515 | Firewall | El Paso | 12/31/2005 | Sonicwall | |
| PTNEUV | 1628 | Mobile, News, Toyota RAV4 | El Paso | 12/31/2006 | Toyota | |
| PTNEUV | 882 | VPN, SONICWALL PRO100 | El Paso | 1/27/2004 | VALCOM | |
| PTNEUV | 1445 | Monitor, LCD, 15" | El Paso | 6/30/2006 | Viewsonic | VP920b |
| PTNEUV | 1572 | Antenna | Fresno | 9/30/2007 | Airmax | 200 Outdoor |
| PTNEUV | 1573 | Antenna | Fresno | 9/30/2007 | Airmax | 200 Outdoor |
| PTNEUV | 778 | Antenna | Fresno | 9/30/2007 | Airmax | 200 Outdoor |
| PTNEUV | 778 | SERVER, DELL 4300 | Fresno | 2/4/1999 | DELL | |
| PTNEUV | 1548 | Generator, Onan | Fresno | 3/31/2006 | Onan | |
| PTNEUV | 1046 | Camera, 1/2" HD CCD XDCAM HD Camcorder 1080/59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEUV | 1047 | Camera, 1/2" HD CCD XDCAM HD Camcorder 1080/59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEUV | 1848 | Camera, 1/2" HD CCD XDCAM HD Camcorder 1080/59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEUV | 1849 | Camera, 1/2" HD CCD XDCAM HD Camcorder 1080/59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEUV | 731 | 1999 Winnebago MPU | Fresno | 9/21/1998 | | |
| PTNEUV | 933 | 2005 Honda Pilot | Fresno | 3/31/2005 | | |
| | 934 | 2005 Honda Pilot | Fresno | 12/31/2005 | | |
| | | News Toyota Rav 4 | Fresno | 3/31/2005 | | |
| PTNEUV | 1540 | QTV MidCue Pro News, Support Multiple Newsroom System, Real time Updating, On Air | Fresno HD News | 9/30/2006 | DAB3-14 | |
| PTNEUV | 1523 | Paichbay | Fresno HD News | 9/30/2006 | B&H | |
| PTNEUV | 1383 | | Fresno HD News | 9/30/2006 | Altar Effects 7.0/Photo | |
| PTNEUV | 1533 | Adobe Altar Effects 7.0 Pro 5, Adobe Photo Shop 9.0 | Fresno HD News | 6/30/2006 | Adobe | |
| PTNEUV | 88 | Kestona Bridge & Layer 2 Switch | Fresno HD News | 9/30/2006 | | |
| PTNEUV | 1559 | Adobe Creative Suite 2 Premium | Fresno HD News | 6/30/2007 | Adobe | |
| PTNEUV | 1170 | Octel User Station | Fresno HD News | 9/30/2006 | | |
| PTNEUV | 1171 | Octel User Station | Fresno HD News | 9/30/2006 | | |
| PTNEUV | 1440 | Charger, 4 position | Fresno HD News | 9/30/2006 | | |
| PTNEUV | 1017 | AOC 19" Mon Isc-LCD | Fresno HD News | 6/20/2006 | ADC | NM |
| PTNEUV | 1018 | AOC 19" Mon Isc-LCD | Fresno HD News | 6/20/2006 | ADC | NM |
| PTNEUV | 1222 | Software, Editing | Apple, Adobe | 9/30/2006 | Apple, Adobe | Final Cut Studio, Altar E |
| PTNEUV | 1594 | Lights | Fresno HD News | 6/30/2007 | | NA |
| PTNEUV | 1167 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1523 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1169 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1170 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1171 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1173 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1174 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1175 | Octel User Station | Fresno HD News | 9/30/2005 | Black Box | KV1713A |
| PTNEUV | 1180 | Servdswitch, Octopus 16 | Fresno HD News | 9/30/2005 | Black Box | KV1702A |
| PTNEUV | 1413 | Octel User Station | Fresno HD News | 9/30/2006 | Campos | |
| PTNEUV | 1413 | Computer | Fresno HD News | 9/30/2005 | Campos | |
| PTNEUV | 1416 | Computer | Fresno HD News | 9/30/2005 | Campos | |
| PTNEUV | 1417 | Computer | Fresno HD News | 9/30/2005 | Campos | |
| PTNEUV | 1418 | Computer | Fresno HD News | 9/30/2005 | NLE | |
| PTNEUV | 1419 | Computer | Fresno HD News | 9/30/2005 | KV1713A | |
| PTNEUV | 1420 | Computer | Fresno HD News | 9/30/2005 | NLE | |
| PTNEUV | 1420 | Computer | Fresno HD News | 9/30/2005 | NLE | |
| PTNEUV | 1421 | Computer | Fresno HD News | 9/30/2005 | NLE | |
| PTNEUV | 1421 | Computer | Fresno HD News | 9/30/2005 | NLE | |
| PTNEUV | 1422 | Computer | Fresno HD News | 9/30/2005 | NLE | |

| Company | System | Description | Location | Date in Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEWI | 1503 | Computer, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1532 | Computer, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1424 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1425 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1426 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1809 | Software, Editing | Fresno HD News | 9/20/2007 | Canopus | |
| PTNEWI | 1427 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1428 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1429 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1430 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1431 | Software, Editing | Fresno HD News | 9/20/2006 | Canopus | |
| PTNEWI | 1027 | Software, Closed Captioning | Fresno HD News | 9/20/2007 | Caption Maker | |
| PTNEWI | 1007 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/20/2007 | Cartoni | CARF101 |
| PTNEWI | 1808 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/20/2007 | Cartoni | CARF101 |
| PTNEWI | 1809 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/20/2007 | Cartoni | CARF101 |
| PTNEWI | 1810 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/20/2007 | Cartoni | CARF101 |
| PTNEWI | 1539 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/21/2005 | Clear-Com | PRC-2ID |
| PTNEWI | 1540 | Receiver, Wireless IFB(Block 25) | Fresno HD News | 12/21/2005 | Clear-Com | PRC-2ID |
| PTNEWI | 1542 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/21/2005 | Clear-Com | PRC-2ID |
| PTNEWI | 1541 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/21/2005 | Clear-Com | PRC-2ID |
| PTNEWI | 1109 | Transmitter, Wireless IFB(Block 24) | Fresno HD News | 12/21/2005 | Clear-Com | PTX-2ID |
| PTNEWI | 1538 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 12/31/2005 | Clear-Com | PTX-2ID |
| PTNEWI | 1537 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 12/31/2005 | Clear-Com | PTX-2IE |
| PTNEWI | 1538 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 11/13/2007 | CROUSE-KIMZEY COMPANY | PTX-2IE |
| PTNEWI | 647 | AUDIO MIXER, MACKIE 1202VLZ PRO | Fresno HD News | 11/13/2001 | Clear-Com | |
| PTNEWI | 1591 | Computer, Newsroom System Server | Fresno HD News | 9/20/2007 | Dell | Poweredge 2970 |
| PTNEWI | 1063 | Computer, WSI Weather System, Server | Fresno HD News | 9/20/2007 | Dell | |
| PTNEWI | 1691 | Computer, WSI Weather System, Producer HW Bundle | Fresno HD News | 9/20/2007 | Dell | 690 |
| PTNEWI | 1105 | Computer, WSI Weather System, HD TVII HW Bundle | Fresno HD News | 9/20/2007 | Dell | 690 |
| PTNEWI | 1106 | Computer, WSI Weather System, True View Sky HW Bundle | Fresno HD News | 9/20/2007 | Dell | 690 |
| PTNEWI | 1107 | Monitor, Flat Panel, 24" | Fresno HD News | 9/20/2007 | Dell | |
| PTNEWI | 1808 | Monitor, Flat Panel, 24" | Fresno HD News | 9/20/2007 | Dell | |
| PTNEWI | 1858 | Monitor, Flat Panel, 20" | Fresno HD News | 9/20/2007 | Dell | |
| PTNEWI | 1108 | Receiver-Earth Station, WSI Weather System | Fresno HD News | 9/20/2007 | Dell | |
| PTNEWI | 1581 | Software, Broadcasting, Editing | Fresno HD News | 9/20/2007 | Edius | |
| PTNEWI | 1104 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 4 |
| PTNEWI | 1112 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1114 | HD SDI Reclocking DA | Fresno HD News | 9/20/2002 | Evertz | 7700DA7 |
| PTNEWI | 1115 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1111 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1116 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1113 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1110 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1111 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA7 |
| PTNEWI | 1110 | HD SDI Reclocking DA | Fresno HD News | 9/20/2006 | Evertz | 7700DA-C |
| PTNEWI | 1103 | Multiframe w/ Power Supply | Fresno HD News | 9/20/2002 | Evertz | 7700FC |
| PTNEWI | 1201 | SDI 4 AES Pair Audio Embedder Card to 3 RU Frame | Fresno HD News | 11/20/2002 | Evertz | 7720AE4+3RU |
| PTNEWI | 874 | Encoder, Closed Caption, HD w/ Subtitles | Fresno HD News | 11/20/2002 | Link | V-R83P |
| PTNEWI | 875 | AUDIO D/A, RU-DAID | Fresno HD News | 9/20/2005 | Marshall | V-R44P |
| PTNEWI | 1435 | HD3G21 | Fresno HD News | 9/20/2005 | Marshall | V-R44P |
| PTNEWI | 1177 | SDI | Fresno HD News | 9/20/2005 | Marshall | |
| PTNEWI | 1178 | SDI | Fresno HD News | 9/20/2005 | Marshall | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEVI | 1577 | Newstar | Fresno HD News | 9/30/2007 | NA | NA |
| PTNEVI | 1026 | Audio Board-Channel 4 Bus Mixer | Fresno HD News | 9/30/2006 | AV | NA |
| PTNEVI | 1442 | Dual Channel HD MPEG MultiPort w/ Built-in Up & Down Conversion | Fresno HD News | 9/30/2006 | AV | NM |
| PTNEVI | 1033 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJ-HDP |
| PTNEVI | 1032 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/04/2006 | Panasonic | AJ-HDP |
| PTNEVI | 1031 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/04/2006 | Panasonic | AJ-HDP |
| PTNEVI | 1034 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJ-HDP |
| PTNEVI | 1035 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 3/31/2009 | Panasonic | AJ-HDP |
| PTNEVI | 829 | LIGHT, ARRI/ON BAUER UL-K20 | Fresno HD News | 9/30/2005 | PHOTOMART | |
| PTNEVI | 1423 | Computer | Fresno HD News | 9/30/2005 | LIGHT | |
| PTNEVI | 1434 | Computer | Fresno HD News | 9/30/2005 | Professional Video | |
| PTNEVI | 1433 | Computer | Fresno HD News | 9/30/2005 | Professional Video | |
| PTNEVI | 1089 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1088 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1087 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1090 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1021 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1020 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1002 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1003 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEVI | 1074 | Patchbay, Digital Audio | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1103 | Screwswitch, Octopus 8 | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEVI | | Single Floor Spare | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1194 | Single Floor Spare | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1195 | Single Floor Stand | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1196 | Single Floor Stand | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 935 | Display, 46" | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEVI | 1094 | Display, 46" | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEVI | 1095 | Display, 46" | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEVI | 1525 | Control System | Fresno HD News | 9/30/2006 | Ross Video | GVG-NO-ENPS |
| PTNEVI | 1130 | MD Conversion Frame | Fresno HD News | 9/30/2006 | Ross Video | S256OD3D24-C-8 |
| PTNEVI | 1089 | Multi-Definition Production Switcher | Fresno HD News | 12/31/2006 | | |
| PTNEVI | 1470 | Display, 46" LCD | Fresno HD News | 9/30/2008 | Sachtler | DV 4 II SL MCF |
| PTNEVI | 1197 | Monitor, HD-LCD, 40" | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEVI | 1450 | Monitor, HD-LCD, 40" | Fresno HD News | 9/30/2008 | Sachtler | DV 4 II SL MCF |
| PTNEVI | 1457 | Monitor, HD-LCD, 57" | Fresno HD News | 9/30/2008 | Sachtler | DV 4 II SL MCF |
| PTNEVI | 1464 | Monitor, HD-LCD, 57" | Fresno HD News | 9/30/2008 | Samsung | 460P |
| PTNEVI | 1525 | Tripod | Fresno HD News | 9/30/2008 | Samsung | 1080P |
| PTNEVI | 1474 | Tripod | Fresno HD News | 9/30/2008 | Samsung | 1080P |
| PTNEVI | 1488 | Presentation Monitor, 26" HD LCD TV | Fresno HD News | 9/30/2008 | Samsung | 1080P |
| PTNEVI | 1500 | Presentation Monitor, 26" HD LCD TV | Fresno HD News | 9/30/2007 | Samsung | 1080P |
| PTNEVI | 1435 | Microphone, Earpiece for Weather Tablet | Fresno HD News | 9/30/2007 | Sennheiser | EW112G2 |
| PTNEVI | 1527 | Camera Remote, CCU w/ power up to 150 meters, Sony RM8750 | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEVI | 1058 | Camera Remote, CCU w/ power up to 150 meters, Sony RM8750 | Fresno HD News | 9/30/2006 | Sony | see desc |
| PTNEVI | 1059 | Camera Remote, CCU w/ power up to 150 meters, Sony RM8750 | Fresno HD News | 9/30/2006 | Sony | see desc |
| PTNEVI | 1654 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEVI | 1655 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEVI | 1650 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEVI | 1690 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEVI | 1571 | Prompter, Monitor, Flat Panel | Fresno HD News | 9/30/2006 | Telescript | PRO NEWS 200 |
| PTNEVI | 1571 | Software, Teleprompter | Fresno HD News | 9/30/2006 | Tel | LCD130C |
| PTNEVI | 1379 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |
| PTNEVI | 1378 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |
| PTNEVI | 1390 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 615 | EQUIPMENT RACK, STAYTION | | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 616 | EQUIPMENT RACK, STAYTION | | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 1446 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP930B |
| PTNEV1 | 1447 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP930B |
| PTNEV1 | 1448 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP930B |
| PTNEV1 | 1092 | Software, Vrt Image Effects Pac | Fresno HD News | 9/30/2006 | VizRT | |
| PTNEV1 | 1491 | Software, Vrt Image Effects Pac | Fresno HD News | 9/30/2006 | Vizrt | |
| PTNEV1 | 1494 | Software, Vrt Tile 3D CG Single HD Output Graphics System | Fresno HD News | 9/30/2006 | VizRT | |
| PTNEV1 | 1382 | Audio Board w/Meter Bridge | Fresno HD News | 9/30/2006 | Yamaha | DM 1000 V2 |
| PTNEV1 | 1371 | Intercom w/IFB Wireless | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 817 | KVM Wireless Handheld Microphone System | Fresno HD News | 11/20/2006 | | |
| PTNEV1 | 919 | LCD for Anchor Font | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1381 | Microphones, Wireless | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1495 | Newsit/Anchor Desk, platform and walls | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1706 | Ross Synergy Switch Overdrive News Automation | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 914 | 4 Channel Multiviewer | Fresno HD News | 8/30/2006 | | SVR-PI-PXPAC |
| PTNEV1 | 1640 | Computer | Greensboro | 12/31/2007 | | |
| PTNEV1 | 1432 | HD/SDI | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1520 | VRL Microphone System | Greensboro | 12/31/2006 | | |
| PTNEV1 | 1179 | Mobile Cart | Greensboro | 9/30/2006 | | PTC-2042 |
| PTNEV1 | 1046 | Monitor | Greensboro | | | |
| PTNEV1 | 1046 | Monitor, Child Line Content | Greensboro | | | |
| PTNEV1 | 1041 | Software License from Dell | Greensboro | 12/31/2007 | | |
| PTNEV1 | 972 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 969 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1000 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1001 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1022 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1003 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1004 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1005 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1006 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1007 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1008 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1009 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1010 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1011 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1012 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1013 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1014 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | |
| PTNEV1 | 1613 | UPS, 5000VA | Greensboro | 9/30/2007 | APC | SU5000RST-TF3 |
| PTNEV1 | 1613 | UPS, 5000VA | Greensboro | 9/30/2007 | APC | SU5000RST-TF3 |
| PTNEV1 | 938 | Satellite Receiver | Greensboro | 10/31/2005 | Atlas | |
| PTNEV1 | 1195 | HD/DP Gateway | Greensboro | 9/30/2005 | BlackBox | MRD-1RU |
| PTNEV1 | 1510 | ArcServe Exchange Backup Software | Greensboro | 12/31/2005 | ArcServe/Exchange Agent | |
| PTNEV1 | 1407 | Octel User Station | Greensboro | 9/30/2005 | BlackBox | KV-TSI |
| PTNEV1 | 1408 | Octel User Station | Greensboro | 9/30/2005 | BlackBox | KV1713A |
| PTNEV1 | 1409 | Octel User Station | Greensboro | 9/30/2005 | BlackBox | KV1713A |
| PTNEV1 | 1410 | Octel User Station | Greensboro | 9/30/2005 | BlackBox | KV1713A |
| PTNEV1 | 1411 | Octel User Station | Greensboro | 9/20/2005 | BlackBox | KV1713A |
| PTNEV1 | 1412 | Octel User Station | Greensboro | 9/30/2005 | BlackBox | KV1713A |
| PTNEV1 | 1442 | Octel User Station | Greensboro | 9/20/2005 | BlackBox | KV1710A |
| PTNEV1 | 1455 | Serversiwtch | Greensboro | 9/20/2005 | Camera | |
| PTNEV1 | 1089 | Caware Octopa Tools | Greensboro | 9/30/2006 | CompuSat | Standard 422 |
| PTNEV1 | 1205 | Receiver, Digital CI | Greensboro | | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEVI | 1183 | Server, 1U CompuSat Earth Station Controller | Greensboro | 9/30/2006 | CompuSat | 2,602hz |
| PTNEVI | 770 | 17" MONITOR, ULTRASCAN 1000HS | Greensboro | 2/4/1999 | Dell | |
| PTNEVI | 1578 | Computer Controller | Greensboro | 9/20/2007 | Dell | |
| PTNEVI | 1828 | Computer, Desktop | Greensboro | 9/20/2007 | Dell | Optiplex 320 |
| PTNEVI | 1402 | Monitor | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1403 | Monitor | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1405 | Monitor | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1188 | Monitor, Flat Panel | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1189 | Monitor, Flat Panel | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1454 | Monitor, Flat Panel | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1450 | Monitor, Flat Panel | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1516 | Monitor, Flat Panel | Greensboro | 9/20/2006 | Dell | 200FP |
| PTNEVI | 1185 | Switch, Layer 3, Power Connect 6024, 24 Port | Greensboro | 12/31/2006 | Dell | PowerConnect 6024 |
| PTNEVI | 1629 | Wyse Thin Server | Greensboro | 9/20/2007 | Dell | |
| PTNEVI | 997 | Dell Latitude D610 | Greensboro | 6/10/2005 | Dell | D610 |
| PTNEVI | 677 | 4.5 PATRIOT ANTENNA DISH | Greensboro | 7/8/1998 | EASI | |
| PTNEVI | 677 | 4.5 PATRIOT ANTENNA DISH | Greensboro | 7/8/1998 | EASI | |
| PTNEVI | 681 | RECEIVER, STANDARD 820 | Greensboro | 7/8/1998 | EASI | |
| PTNEVI | 682 | RECEIVER, STANDARD 820 | Greensboro | 7/8/1998 | EASI | |
| PTNEVI | 939 | EASI 4.5 Meter AZ/EL Motorized Antenna | Greensboro | 5G/10/2005 | EASI | |
| PTNEVI | 990 | EASI 4.5 Meter AZ/EL Motorized Antenna | Greensboro | 5G/10/2005 | EASI | |
| PTNEVI | 979 | ANTENNA-POSITIONER-RC2000C | Greensboro | 7/8/1998 | EASI | |
| PTNEVI | 690 | ANTENNA-POSITIONER, RCI 2000 | Greensboro | 7/8/1998 | EASI | |
| PTNEVI | 1139 | Analog Video Distribution Amplifier | Greensboro | 9/20/2005 | Evertz | 7700A0A73RU |
| PTNEVI | 1110 | Analog Video Distribution Amplifier | Greensboro | 9/20/2005 | Evertz | 7700A0A73RU |
| PTNEVI | 1140 | Analog Video Distribution Amplifier | Greensboro | 9/20/2005 | Evertz | 7700A0A73RU |
| PTNEVI | 678 | Card-HD to SD Down Converter & DA | Greensboro | 9/20/2007 | Evertz | 7731DC-HD3RU |
| PTNEVI | 1822 | Card-HD to SD Down Converter & DA | Greensboro | 9/20/2007 | Evertz | 7731DC-HD3RU |
| PTNEVI | 1823 | Card-VistaLINK Frame Controller | Greensboro | 9/30/2007 | Evertz | 7700FC-3RU |
| PTNEVI | 1861 | Desktop Control Panel | Greensboro/GW | | Evertz | 3000DCP |
| PTNEVI | 1800 | Dual Analog Audio Delay | Greensboro | 9/20/2006 | Evertz | 7700DA |
| PTNEVI | 1130 | Dual Analog Audio Delay | Greensboro | 9/20/2006 | Evertz | 7700ADA |
| PTNEVI | 1098 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/20/2006 | Evertz | 7735CD2 |
| PTNEVI | 1009 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/20/2006 | Evertz | 7735CD2 |
| PTNEVI | 1000 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/20/2006 | Evertz | 7735CD2 |
| PTNEVI | 1119 | Frame Controller | Greensboro | 9/20/2006 | Evertz | 7700FC |
| PTNEVI | 1145 | Frame Controller | Greensboro | 9/20/2006 | Evertz | 7700FC |
| PTNEVI | 1156 | Frame Controller | Greensboro | 9/20/2006 | Evertz | 3000FC |
| PTNEVI | 1125 | HD 4 AES Pair Audio Embedder | Greensboro | 9/20/2006 | Evertz | 7727UE |
| PTNEVI | 1148 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7711UC |
| PTNEVI | 1149 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7711UC |
| PTNEVI | 1150 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7711UC |
| PTNEVI | 1205 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7711UC |
| PTNEVI | 1199 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7722DU-4 |
| PTNEVI | 1132 | HD Module Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7721HD4 |
| PTNEVI | 1200 | HD Module Upconverter w/ VBI Embed Audio | Greensboro | 9/20/2006 | Evertz | 7721HD4 |
| PTNEVI | 1126 | HD SDI Audio De-embedder | Greensboro | 9/20/2006 | Evertz | 7721HD4 |
| PTNEVI | 1128 | HD SDI Audio De-embedder | Greensboro | 9/20/2006 | Evertz | 7721HD4 |
| PTNEVI | 1133 | HD SDI Audio De-embedder | Greensboro | 9/20/2006 | Evertz | 7721HD4 |
| PTNEVI | 1134 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEVI | 1135 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEVI | 1136 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEVI | 1137 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEIV1 | 1138 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1139 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1140 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1143 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1144 | HD SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1153 | HD to SD Down Converter & DA | Greensboro | 9/20/2006 | Evertz | 6800HDC |
| PTNEIV1 | 1443 | HD to SD Down Converter & DA | Greensboro | 9/20/2006 | Evertz | 7717SHDC |
| PTNEIV1 | 1444 | HD to SD Down Converter & DA | Greensboro | 9/20/2006 | Evertz | 7713SHDC |
| PTNEIV1 | 1150 | HD/SDI SDI Frame Sync | Greensboro | 9/20/2006 | Evertz | 7744FSE |
| PTNEIV1 | 1151 | HD/SDI SDI Frame Sync | Greensboro | 9/20/2006 | Evertz | 7744FSE |
| PTNEIV1 | 1434 | 4ch HD/SD SDI Card w/ embedded audio & level display | Greensboro | 12/31/2006 | Evertz | NA |
| PTNEIV1 | 1130 | Multiframe w/ Power Supply | Greensboro | 9/20/2005 | Evertz | 7700FR-C |
| PTNEIV1 | 1131 | Multiframe w/ Power Supply | Greensboro | 9/20/2005 | Evertz | 7700FR-C |
| PTNEIV1 | 1146 | Multiframe w/ Power Supply | Greensboro | 9/30/2005 | Evertz | 7700FR-C |
| PTNEIV1 | 1145 | Multiframe, 16 slots | Greensboro | 9/20/2006 | Evertz | 7700FRC |
| PTNEIV1 | 1181 | MVF Frame + Power Supply | Greensboro | 9/20/2006 | Evertz | 3000 Series |
| PTNEIV1 | 1507 | Octal Auto-Detecting HD/SD/Comp, Analog | Greensboro | 9/20/2006 | Evertz | 3000MVP-OVI |
| PTNEIV1 | 1102 | Network Control Panel | Greensboro | 9/20/2006 | Evertz | 5000MVCP2 |
| PTNEIV1 | 1845 | Octal Auto-Detecting HD/SD/Comp Analog | Greensboro | 12/31/2007 | Evertz | NA |
| PTNEIV1 | 1156 | Octal Auto-Detecting HD/SD/Comp, Analog | Greensboro | 9/20/2006 | Evertz | 3000MVP-OVI-HSN |
| PTNEIV1 | 1157 | Octal Auto-Detecting HD/SD/Comp, Analog | Greensboro | 9/20/2006 | Evertz | 3000MVP-OVI-HSN |
| PTNEIV1 | 1155 | Octal Auto-Detecting HD/SD/Comp, Analog | Greensboro | 9/20/2006 | Evertz | 3000MVP-OVI-HSN |
| PTNEIV1 | 1152 | Power Supply | Greensboro | 9/20/2006 | Evertz | STG |
| PTNEIV1 | 1541 | Precision Output Module w/ 72 DVI, SXGA/UXGA, 4xHD-SDI | Greensboro | 12/31/2007 | Evertz | 3000MVP-OVIP4V |
| PTNEIV1 | 1162 | Precision Output Video Input Module | Greensboro | 12/31/2007 | Evertz | 3000MVP-GT-4 |
| PTNEIV1 | 1121 | SD/SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1122 | SD/SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 930 | SD/SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1124 | SD/SDI Reclocking DA | Greensboro | 9/20/2006 | Evertz | 7700DA7 |
| PTNEIV1 | 1163 | Sync, Pulse Generator & PS & GPS | Greensboro | 9/20/2006 | Evertz | 5600MSC |
| PTNEIV1 | 895 | SCANNER, HP 7450C | Greensboro | 9/25/2003 | INSIGHT | HTG |
| PTNEIV1 | 1130 | Video Processor, Multidisplay | Greensboro | 9/20/2007 | Intertel | 3000MVP-3P4-S |
| PTNEIV1 | 1553 | Video Processor, Multidisplay | Greensboro | 9/20/2007 | Intertel | 3000MVP-4P4-S |
| PTNEIV1 | 1556 | Computer,Gateway | Greensboro | 9/20/2007 | Intertel | Intertel |
| PTNEIV1 | 1555 | Computer,Gateway | Greensboro | 9/20/2007 | Intertel | Intertel |
| PTNEIV1 | 1579 | Monitor, TV | Greensboro | 11/4/2002 | JESUS APPLIANCES | JVC |
| PTNEIV1 | 1575 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 9/20/2007 | GM5n | Dol 1000Hi |
| PTNEIV1 | 498 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | NA |
| PTNEIV1 | 499 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | NA |
| PTNEIV1 | 500 | RECEIVER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | NA |
| PTNEIV1 | 501 | RECEIVER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | NA |
| PTNEIV1 | 1198 | Monitor, 17" 750 TVL | Greensboro | 9/20/2006 | JVC | JVC |
| PTNEIV1 | 876 | DVD PLAYER, SAMSUNG | Greensboro | 11/4/2002 | JVC | JVC |
| PTNEIV1 | 1154 | Monitor, 17", HDNTV | Greensboro | 9/20/2006 | Link Elect/IV | JVC |
| PTNEIV1 | 1518 | LCD, 20" | Greensboro | 12/31/2006 | Media Concepts | Multisync V, 4.1 |
| PTNEIV1 | 1471 | Multi-Vendor, Analog | Greensboro | 9/20/2006 | MEDIA CONCEPTS | Multisync V, 4.1 |
| PTNEIV1 | 824 | WAVEFORM/VECTORSCOPE, TEKTRONIX 1759 | Greensboro | 3/9/1999 | Media Concepts | Multisync V, 4.1 |
| PTNEIV1 | 845 | PHOTOSHOP, ADOBE 5.5 | Greensboro | 12/12/2001 | AXONDOG | NA |
| PTNEIV1 | 846 | SCANNER, ACER 320P | Greensboro | 1/21/2001 | AXONDOG | NA |
| PTNEIV1 | 1018 | Computer | Greensboro | 6/30/2008 | NV | NM |
| PTNEIV1 | 1020 | Computer | Greensboro | 6/30/2008 | NV | NM |
| PTNEIV1 | 1021 | Computer | Greensboro | 6/30/2008 | NV | NM |
| PTNEIV1 | 1022 | Computer | Greensboro | 6/30/2008 | NV | NM |
| PTNEIV1 | 1023 | Computer | Greensboro | 6/30/2007 | NV | NM |
| PTNEIV1 | 1024 | Computer | Greensboro | 9/20/2007 | NV | NM |
| PTNEIV1 | 908 | Design & CAD Drawings for Master Control Upgrade | Greensboro | 9/20/2007 | NV | NM |

(6)

| Company | System | Description | Location | Date in Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEIVI | 1221 | Additional Computer System | Greensboro | 9/30/2008 | Nverzion | |
| PTNEIVI | 1194 | Computer System | Greensboro | 9/30/2008 | Nverzion | |
| PTNEIVI | 1593 | Computer, Commercial Playback | Greensboro | 9/30/2008 | Nverzion | E8500 |
| PTNEIVI | 1229 | Ethernet Machine Control 8 ports | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1058 | Ethernet Machine Control 8 Ports | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1007 | Event Scheduler | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1594 | Software, Commercial Playback | Greensboro | 9/30/2007 | Nverzion | |
| PTNEIVI | 1215 | Software, NCONTROL Playlist | Greensboro | 9/30/2007 | Nverzion | |
| PTNEIVI | 1216 | Software, NCONTROL, Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1216 | Software, NCONTROL, Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1213 | Software, NPOINT Segments | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1535 | Software, CSI Translator, Traffic Export Interface | Greensboro | 9/30/2007 | Nverzion | Nconnet, Traffic Export |
| PTNEIVI | 1535 | Software, CSI Translator, Traffic Import Interface | Greensboro | 9/30/2007 | Nverzion | Nconnet, Traffic Import |
| PTNEIVI | 1217 | Software, Traffic Import Interface | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1219 | Software, Traffic Export Interface | Greensboro | 9/30/2010 | Nverzion | |
| PTNEIVI | 1053 | 3 Channel MPEG Multiport | Greensboro | 9/30/2008 | Nverzion | |
| PTNEIVI | 1385 | Content Director | Greensboro | 8/30/2006 | Nverzion | Nconmd |
| PTNEIVI | 1386 | Content Director | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1387 | Content Manager | Greensboro | 9/30/2006 | Nverzion | |
| PTNEIVI | 1390 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1391 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1392 | Content Server | Greensboro | 9/30/2005 | Omnem | |
| PTNEIVI | 1393 | Content Server | Greensboro | 9/30/2005 | Omnem | |
| PTNEIVI | 1394 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1395 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1396 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1051 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Greensboro | 9/30/2006 | Omnem | HIP-1003A |
| PTNEIVI | 1068 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1207 | DVX/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omnem | HIP-1003A |
| PTNEIVI | 1208 | DVX/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omnem | HIP-1003A |
| PTNEIVI | 1209 | DVX/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1050 | HD Ingest MediaPort | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1047 | MediaDirector/2100 | Greensboro | 4/26/2011 | Omnem | |
| PTNEIVI | 1048 | MediaDirector/2100 | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1399 | Content Server | Greensboro | 9/30/2008 | Omnem | |
| PTNEIVI | 1401 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1460 | Content Server | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1049 | MediaDirector/2100 | Greensboro | 9/30/2007 | Omnem | Multi-Rate MPEG |
| PTNEIVI | 1032 | MediaPort, HD Encode, HD-SDI Recoder | Greensboro | 9/30/2007 | Omnem | |
| PTNEIVI | 1052 | MediaSlave w/ 1G,73 SRDD | Greensboro | 9/30/2006 | Omnem | CNS-1001 |
| PTNEIVI | 1513 | Network Switch, 1 GbgE, 48 Ports | Greensboro | 12/31/2006 | Omnem | |
| PTNEIVI | 1543 | Omneon Video | Greensboro | 1/31/2008 | Omnem | Single Seat License |
| PTNEIVI | 1503 | Software, Transfer Tool | Greensboro | 9/30/2007 | Omnem | |
| PTNEIVI | 1049 | Spectrum Video | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1388 | Switch, Network, 1GbgE, 48 Ports | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1389 | Switch, Network, 1GbgE, 48 Ports | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 1384 | System Manager | Greensboro | 9/30/2006 | Omnem | |
| PTNEIVI | 843 | PHOTOSHOP, ADOBE 6.0 | Greensboro | 4/26/2011 | PANA COMPUTERS | A/AD10CEFA |
| PTNEIVI | 842 | PHOTOSHOP, ADOBE 6.0 | Greensboro | 4/26/2011 | Panasonic | A/AD10CEFA |
| PTNEIVI | 1224 | D/A Audio & Video Converter | Greensboro | 9/30/2006 | Panasonic | AJ-SD93S DVCPRO |
| PTNEIVI | 1223 | Digital Video Camera | Greensboro | 9/30/2006 | Panasonic | |
| PTNEIVI | 1470 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2008 | Panasonic | AJ-HDP |
| PTNEIVI | 1477 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2008 | Panasonic | AJ-HDP |
| PTNEIVI | 1428 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors or Component or Composit | Greensboro | 9/30/2006 | Panasonic | AJ-HDP |

(7)

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEVI | 1479 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1480 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1481 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1482 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1483 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1484 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1485 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1486 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1487 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-HDiP |
| PTNEVI | 1830 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2007 | PNY | Option-D1G8HC32OPT |
| PTNEVI | 1070 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1071 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1072 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1073 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1085 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEVI | 1087 | Display, 40" | Greensboro | 9/30/2006 | Samsung | 460P |
| PTNEVI | 1459 | Display, 40" | Greensboro | 9/30/2006 | Samsung | |
| PTNEVI | 1031 | LCD, 32" | Greensboro | 9/30/2006 | Samsung | |
| PTNEVI | 1519 | LCD, 40" | Greensboro | 12/31/2009 | Samsung | 1080p |
| PTNEVI | 1459 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1459 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1459 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1459 | Chips,14, SDRAM DDR 400ns OSI- | Greensboro | 9/30/2007 | Samsung | 1080P |
| PTNEVI | 1488 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1489 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1031 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1519 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1087 | Monitor, HD-LCD, 57" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEVI | 1913 | Raid Backup Storage, News | Greensboro | 12/31/2007 | Seagate | 750GB 6tore |
| PTNEVI | 1544 | Computer, Self-Built w/ ASUS Case | Greensboro | 12/31/2007 | Self-Built/ASUS | N/A |
| PTNEVI | 1545 | Computer, Self-Built w/ ASUS Case | Greensboro | 01/01/1900 | Self-Built/ASUS | N/A |
| PTNEVI | 1472 | Computer | Greensboro | 9/30/2006 | Self-Built/ASUS | N/A |
| PTNEVI | 1487 | Toolcase w/ Tools | Greensboro | 12/31/2007 | | |
| PTNEVI | 1078 | 32 X 1 ROUTER, SIERRA VIDEO SYSTEM | Greensboro | 9/30/2006 | SIERRA VIDEO SYSTEM | |
| PTNEVI | 842 | MAIN FRAME, SIERRA VIDEO SYSTEM | Greensboro | 01/01/1900 | SIERRA VIDEO SYSTEM | |
| PTNEVI | 637 | UPS, Smart, 5000VA | Greensboro | 22/81/1998 | Saco Data Systems | |
| PTNEVI | 1191 | UPS, Smart, 5000VA | Greensboro | 9/30/2006 | Smart | Sc5000RST |
| PTNEVI | 1192 | TC Electronics Audio Processor SDI | Greensboro | 9/30/2006 | Smart | Sc5000RST |
| PTNEVI | 1555 | TC Electronics Audio Processor SDI | Greensboro | 9/30/2006 | TCE | Version D8B |
| PTNEVI | 1451 | HD/SDI | Greensboro | 9/30/2006 | TCE | V-IXP |
| PTNEVI | 617 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | | |
| PTNEVI | 618 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | | |
| PTNEVI | 619 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | | |
| PTNEVI | 820 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | | |
| PTNEVI | 821 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | | |
| PTNEVI | 822 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEVI | 1210 | Configuration | Greensboro | 9/30/2006 | THE WATERFORD GROUP | |
| PTNEVI | 1180 | Configuration Laptop | Greensboro | 9/30/2006 | THE WATERFORD GROUP | |
| PTNEVI | 1181 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |
| PTNEVI | 1182 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEVI | 1202 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEVI | 1203 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEVI | 1211 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |
| PTNEVI | 1212 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |

| Company | System | Description | Location | Date in Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEVI | 1057 | DAC Output card | Greensboro | 9/30/2005 | Utah Scientific | |
| PTNEVI | 1506 | Unit Hub | Greensboro | 12/31/2005 | Utah Scientific | 80283-2 |
| PTNEVI | 1454 | Utah-400 V-64 Frame | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEVI | 1454 | Software | Greensboro | 9/30/2006 | Nvidia | |
| PTNEVI | 1163 | Dual HD/SD Input | Greensboro | 9/30/2006 | Videotek | 1 yr update |
| PTNEVI | 1204 | SDI Input Module, Dual HD/SD | Greensboro | 9/30/2006 | Videotek | VTM-4100 |
| PTNEVI | 1100 | Software, SNMP Alarm Monitoring, Email Notification Configuration Application So | Greensboro | 9/30/2006 | Videotek | VTM-4100 |
| PTNEVI | 1059 | Additional Computer System | Greensboro | 9/30/2006 | Visia/3iK-PRO | |
| PTNEVI | 1077 | Computer, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEVI | 1078 | Computer, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEVI | 1499 | Software, NCONTROL Standard Router Software Package | Greensboro | 9/30/2006 | Vizrt | VHD-PCG-SD/HD Trio Dual |
| PTNEVI | 1079 | Software, SDHD Viz Trio 3D CG Dual Output Graphics System | Greensboro | 9/30/2006 | Vizrt | |
| PTNEVI | 1080 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEVI | 1227 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEVI | 1228 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | |
| PTNEVI | 1400 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | |
| PTNEVI | 1227 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | |
| PTNEVI | 1402 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | |
| PTNEVI | 1229 | Software, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | Vizrt | SVR-Pi-FXPAC |
| PTNEVI | 1230 | ~~Software, Viz Trio 3D-GS-Single HD Output Graphics System~~ | Greensboro | 9/30/2006 | Vizrt | SVR-Pi-FXPAC |
| PTNEVI | 1225 | ~~Viz-Adda Interface~~ | Greensboro | 9/30/2006 | Vizrt | SVR-Pi-FXPAC |
| PTNEVI | 1226 | Viz Trio I/O | Greensboro | 9/30/2006 | Vizrt | SVR-Pi-FXPAC |
| PTNEVI | 922 | Rack, for Studio Computer | Greensboro | 9/30/2006 | Vizrt | |
| PTNEVI | 1441 | 2 TVs | Greensboro | 9/30/2006 | | |
| PTNEVI | 773 | 6' EQUIPMENT RACK (BLACK) | Greensboro | 10/31/2004 | Winstead | |
| PTNEVI | 900 | A/C Server S/W Upgrade | Greensboro | 6/11/1998 | | |
| PTNEVI | 1233 | Chair, Can Can | Greensboro | 7/2/2004 | | |
| PTNEVI | 1234 | Chair, Can Can | Greensboro | 7/2/2005 | | |
| PTNEVI | 1324 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1227 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1238 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1241 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1242 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1243 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1244 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1250 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1251 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1255 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1259 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1231 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1281 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1349 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1241 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1252 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1305 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEVI | 1359 | Chair, Corona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEVI | 1360 | Chair, Corona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEVI | 1361 | Chair, Corona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEVI | 1362 | Chair, Corona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEVI | 1364 | Chair, Corona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEVI | 1265 | Chair, Liberty | Greensboro | 9/30/2005 | | |
| PTNEVI | 1266 | Chair, Liberty | Greensboro | 9/30/2005 | | |
| PTNEVI | 1268 | Chair, Liberty | Greensboro | 9/30/2005 | | |
| PTNEVI | 1270 | Chair, Liberty | Greensboro | 9/30/2005 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1272 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1274 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1276 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1278 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1280 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1282 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1284 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1286 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1288 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1290 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1292 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1294 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1295 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1296 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1297 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1298 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1299 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1300 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1301 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1302 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1303 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1315 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1316 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1317 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1318 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1319 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1320 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1321 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1322 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1323 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1324 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1325 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1326 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1327 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1328 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1329 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1330 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1331 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1332 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1339 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1340 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1341 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1347 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1352 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1353 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1354 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1355 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1356 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1357 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1358 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1365 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1366 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1367 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1232 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1236 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEVI | 1240 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2005 | | |
| PTNEVI | 1254 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2005 | | |
| PTNEVI | 1260 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2005 | | |
| PTNEVI | 1305 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2008 | | |
| PTNEVI | 1188 | Computer, Automation Control for Single Central Point | Greensboro | 9/30/2005 | | |
| PTNEVI | 1245 | Credenza, Filing, QuadroFoglio, Wood | Greensboro | 9/30/2005 | | |
| PTNEVI | 928 | Dell Notebook | Greensboro | 12/31/2004 | | |
| PTNEVI | 1231 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 12/31/2004 | | |
| PTNEVI | 1232 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2005 | | |
| PTNEVI | 1235 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2005 | | |
| PTNEVI | 1238 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2005 | | |
| PTNEVI | 1239 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2005 | | |
| PTNEVI | 1259 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEVI | 1304 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2008 | | |
| PTNEVI | 1345 | Desk, QuadroFoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2009 | | |
| PTNEVI | 1257 | File Cabinet, Metal, 5 Drawer | Greensboro | 9/30/2006 | | |
| PTNEVI | 1258 | File Cabinet, Metal, 5 Drawer | Greensboro | 9/30/2006 | | |
| PTNEVI | | Interd Phone Desk Phones (Lot) | Greensboro | | | |
| PTNEVI | 921 | Interd Phone Desk Phones (Lot) | Greensboro | 9/30/2004 | | |
| PTNEVI | 923 | Monitor | Greensboro | 12/16/2004 | | |
| PTNEVI | 1249 | Monitor | Greensboro | 12/16/2004 | | |
| PTNEVI | 1081 | QuadroFoglio, Round Glass Top Conference Table | Greensboro | 9/30/2005 | | |
| PTNEVI | 1082 | Satellite Receiver, Analog, Standard D308 | Greensboro | 9/30/2006 | | |
| PTNEVI | 1083 | Satellite Receiver, Digital, Standard 422Ci | Greensboro | 9/30/2006 | | |
| PTNEVI | 1333 | Sofa, Sway 7 Seat | Greensboro | 9/30/2008 | | |
| PTNEVI | 1370 | Table Desk, Glass Arced Curved Shape w/ Curved Perforated Metal Modesty Panel | Greensboro | 9/30/2009 | | |
| PTNEVI | 1299 | Table, Conference, Round Glass Top | Greensboro | 9/30/2007 | | |
| PTNEVI | 1348 | Table, Conference, W/In Arced Rectangle Table | Greensboro | 9/30/2009 | | |
| PTNEVI | 1353 | Table, Cortona Occasional Table | Greensboro | 9/30/2009 | | |
| PTNEVI | 1364 | Table, Cortona Occasional Table | Greensboro | 9/30/2009 | | |
| PTNEVI | 1368 | Table, Cortona Occasional Table | Greensboro | 9/30/2009 | | |
| PTNEVI | 1369 | Table, Cortona Occasional Table | Greensboro | 9/30/2009 | | |
| PTNEVI | 1334 | Table, Retrospect, Round, Cocktail | Greensboro | 9/30/2008 | | |
| PTNEVI | 1343 | Table, Vela Round Table 42" | Greensboro | 9/30/2009 | | |
| PTNEVI | 1344 | Table, Vela Round Table 42" | Greensboro | 9/30/2009 | | |
| PTNEVI | 918 | Traffic Computers | Greensboro | 10/8/2004 | | |
| PTNEVI | 924 | Windows and Office Upgrade | Greensboro | 11/12/2004 | | |
| PTNEVI | 1314 | Workstation, QuadroFoglio, Idea | Greensboro | 9/30/2008 | | |
| PTNEVI | 1247 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1275 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1248 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1277 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1265 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1279 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1267 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1269 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1271 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1273 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1281 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1283 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1285 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1287 | Workstations, QuadroFoglio, Idea | Greensboro | 9/30/2005 | | |

( 12 )

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEVI | 1289 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1291 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1207 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1308 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1309 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1310 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1311 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1312 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1313 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2006 | | |
| PTNEVI | 1335 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1336 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1337 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1338 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 1339 | Workstations, Quadrilogis, Idea | Greensboro | 9/30/2005 | | |
| PTNEVI | 906 | Chief Engineer Laptop | San Francisco | 12/22/2004 | | |

# EXHIBIT B

## Form of Notice of Auction and Sale Approval Hearing

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-10916 (PJW) |
| PAPPAS TELECASTING INCORPORATED, et al.,[1] | (Jointly Administered) |
| Debtors. | |

## NOTICE OF AUCTION, BIDDING PROCEDURES AND SALE APPROVAL HEARING IN CONNECTION WITH THE SALE BY PAPPAS TELECASTING OF NEVADA, L.P. OF REMAINING RENO ASSETS

PLEASE TAKE NOTICE THAT on August 14, 2009, E. Roger Williams, the chapter 11 trustee (the "**Trustee**" or the "**Seller**") for the jointly administered debtors Pappas Telecasting Incorporated, *et al*, in the above-captioned cases (the "**Chapter 11 Cases**") under chapter 11 of the United States Bankruptcy Code, filed a motion [Docket No. ___] (the "**Bidding Procedures Motion**")[2] with the United States Bankruptcy Court for the District of Delaware (the "**Court**") for an order pursuant to sections 105 and 363, of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure: (A) approving the form of the bidding procedures (the "**Bidding Procedures**") in connection with the sale (the "**Sale**") by Pappas Telecasting of Nevada, L.P. ("**Pappas Telecasting Nevada**" or the "**Sale Debtor**") of the Remaining Reno Assets free and clear of all liens, claims, encumbrances and interests of any kind to the Successful Bidder, (B) scheduling the date and time to hold an auction (the "**Auction**") to implement the Sale, (C) scheduling the date and time for a hearing (the "**Sale Approval Hearing**") to consider approval of the Sale of the Remaining Reno Assets, free and clear of all liens, claims and encumbrances and interests of any kind, to the Successful Bidder, and (D) approving the form and manner of delivery of this notice.

PLEASE TAKE FURTHER NOTICE THAT in furtherance of the Sale, on or before _____, 2009, the Trustee filed a separate motion [Docket No. ___] (the

---

[1] The jointly administered debtors (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: Pappas Telecasting Incorporated (2213), Pappas Telecasting of Central California, a California Limited Partnership (3051); Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903); Pappas Telecasting of Sioux City, L.P. (2089); Pappas Telecasting of Concord, a California Limited Partnership (2459); Pappas Telecasting of Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez, L.P. (2202); Pappas Telecasting of Nevada, L.P. (8024); Pappas Telecasting of Siouxland, LLC (2069); CASA of Washington, LLC (7196); KMPH (TV) License, LLC (None); KFRE (TV) License, LLC (None); Concord License, LLC (None); KTNC License, LLC (None); KPTM (TV) License, LLC (None); WCWG License, LLC (None); KPTH License, LLC (None); KAZH License, LLC (None); KDBC License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

[2] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in the Bidding Procedures Motion.

PHI 316,456,792v2

"**Sale Motion**") seeking, among other things, entry of an order authorizing Pappas Telecasting Nevada to sell the Remaining Reno Assets to New World TV Group, LLC ("**New World**"), or its designee (or to the successful bidder at the Auction, if an Auction is conducted), free and clear of all liens, claims, encumbrances and interests of any kind.

PLEASE TAKE FURTHER NOTICE THAT on _____ [__], 2009, the Court entered an order [Docket No. __] (the "**Bidding Procedures Order**"), approving the form of the Bidding Procedures and setting certain dates and deadlines relating to the Auction, the Sale and the Sale Approval Hearing, as summarized below.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the Bidding Procedures Order, if the Seller receives at least one (1) Qualified Bid, in addition to the Reno APA, for the Remaining Reno Assets by the Bid Deadline, **the Seller shall conduct the Auction with respect to the Remaining Reno Assets on September 3, 2009, commencing at 11:00 a.m. (prevailing Eastern Time)** at the offices of McCarter & English LLP, 245 Park Avenue, 27th Floor, New York, New York 10167, or at such later date and time and at such alternative location as the Seller may determine or the Bankruptcy Court may direct. If the Seller does not receive at least one (1) Qualified Bid, in addition to the Reno APA, by the Bid Deadline for the Remaining Reno Assets, **the Seller will <u>not</u> conduct the Auction.**

PLEASE TAKE FURTHER NOTICE THAT the **"Bid Deadline" is September 2, 2009, at 4:00 p.m. (prevailing Eastern Time)**. A Potential Bidder that desires to make a bid for the Remaining Reno Assets, or any portion thereof, is required under the Bidding Procedures Order to deliver a written copy of all materials comprising its bid to certain parties identified in the Bidding Procedures Order **no later than the Bid Deadline. Any person or entity that does not submit a bid to the Bid Delivery Parties by the Bid Deadline (as extended, if at all) shall not be permitted to participate in the Auction.**

PLEASE TAKE FURTHER NOTICE THAT the Trustee will seek approval of the Sale Motion at the Sale Approval Hearing. The **Sale Approval Hearing is scheduled to be held before the Honorable** Peter J. Walsh, of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom #2, Wilmington, Delaware, 19801, Courtroom 6 at **9:30 a.m. (prevailing Eastern Time) on September 9, 2009.** The Sale Approval Hearing may be adjourned or rescheduled, from time to time, without notice to creditors or parties in interest other than by an announcement of the adjourned date at the Sale Approval Hearing or on the Court's calendar on the date scheduled for the Sale Approval Hearing.

PLEASE TAKE FURTHER NOTICE TH**AT responses or objections, if any, to the relief to be requested in the Sale Motion must be in writing,** conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or property, the basis for the objection and the specific grounds therefore, and be filed with the Bankruptcy Court and served upon the following parties: (i) McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102 Attn: Charles A. Stanziale, Jr. (cstanziale@mccarter.com) and Jeffrey T. Testa (jtesta@mccarter.com), and Greenberg Traurig, LLP, Two Commerce Square,

2

2001 Market Street, Suite 2700, Philadelphia, Pennsylvania 19103 Attn: Diane Vuocolo (vuocolod@gtlaw.com), counsel to the Trustee, (ii) the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox # 35, Wilmington, Delaware, 19899 Attn: Jane M. Leamy (jane.m.leamy@usdoj.gov), (iii) Lowenstein Sandler, PC, Attn: Sharon L. Levine (slevine@lowenstein.com). 65 Livingston Avenue, Roseland, New Jersey 07068-1791, counsel to the Committee, (iv) Kasowitz, Benson, Torres & Friedman LLP, Attn: Richard F. Casher (rcasher@kasowitz.com) and Jeffrey R. Gleit (jgleit@kasowitz.com), 1633 Broadway, New York, New York 10019, counsel to Fortress, and (v) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067-6049, Attn: Michael Tuchin (mtuchin@ktbslaw.com) and David A. Fidler (dfidler@ktbslaw.com), counsel to certain of the Debtors' Pre-Petition Lenders, so as actually to be received **no later than 4:00 p.m. (prevailing Eastern Time) on September 4, 2009** (the "**Sale Objection Deadline**"). The failure of any party in interest to file and serve its objection or response to the Sale Motion by the Sale Objection Deadline in accordance with the provisions of this paragraph shall be a bar to the assertion, at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, the Sale or the Seller's consummation and performance of the transaction(s) contemplated thereby.

PLEASE TAKE FURTHER NOTICE THAT any person or entity wishing to submit a bid for the Remaining Reno Assets, or object or otherwise respond to the Sale Motion, is urged to review the Bidding Procedures, the Bidding Procedures Order, and the Sale Motion. Copies of the Bidding Procedures Motion and the exhibits thereto, and the Bidding Procedures Order (including the Bidding Procedures annexed as Exhibit A to the Bidding Procedures Order) may be (a) reviewed during regular Court hours at the United States Bankruptcy Court, 824 North Market Street, Wilmington, Delaware 19801, (b) reviewed electronically on www.deb.uscourts.gov, the official website for the Court, (c) reviewed electronically on the Debtors' noticing and claims agent's website at administarllc.com or (d) procured upon written request to counsel for the Trustee, McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102, Attn. Charles A. Stanziale, Jr. (cstanziale@mccarter.com) and Jeffrey T. Testa (jtesta@mccarter.com), Telephone No. 973-662-4444.

Dated: Wilmington, DE
    August __, 2009

McCARTER & ENGLISH, LLP
Charles A. Stanziale, Jr.
Jeffrey T. Testa
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
E-mail: cstanziale@mccarter.com
      jtesta@mccarter.com

Counsel for Trustee, E. Roger Williams

-and-

3

GREENBERG TRAURIG, LLP

By: _____
Victoria W. Counihan (Bar No. 3488)
Dennis A. Meloro (Bar No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
E-mail: counihanv@gtlaw.com
        melorod@gtlaw.com

Co-Counsel for Trustee, E. Roger
Williams

4

**Schedule 1**

**<u>Reno Assets</u>**

[Attached hereto.]

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 837 | PRINTER, HP LASERJET 8000N | Corp | 8/31/2000 | VALCOM | NM |
| PTNEV1 | 1015 | AOC 19" Mon Ito-LCD | El Paso | 6/30/2006 | AOC | NM |
| PTNEV1 | 1016 | AOC 19" Mon Ito-LCD | El Paso | 6/30/2006 | AOC | NM |
| PTNEV1 | 957 | 1999 DODGE CARAVAN | El Paso | 12/31/2005 | BRYAN ROSS | NLE |
| PTNEV1 | 1423 | Computer | El Paso | 9/30/2006 | Canopus | |
| PTNEV1 | 962 | Dell All in One Inkjet 962 | El Paso | 9/30/2005 | Dell | |
| PTNEV1 | 1164 | Switch, Layer 3, Power Connect 6024, 24 Port | El Paso | 9/30/2006 | Dell | PowerConnect 6024 |
| PTNEV1 | 1515 | Firewall | El Paso | 9/30/2006 | Sonicwall | Pro-4100 w/ 2Y CG |
| PTNEV1 | 1547 | Vehicle, News, Toyota RAV4 | El Paso | 12/31/2008 | Toyota | Rav4 |
| PTNEV1 | 882 | VPN, SONICWALL PRO100 | El Paso | 12/31/2008 | VALCOM | |
| PTNEV1 | 1445 | Monitor, LCD, 19" | El Paso | 1/6/2003 | Viewsonic | VP920B |
| PTNEV1 | 1572 | Antenna | Fresno | 9/30/2006 | Airmux | 200 Outdoor |
| PTNEV1 | 1637 | Antenna | Fresno | 9/30/2007 | Airmux | 200 Outdoor |
| PTNEV1 | 1638 | Antenna | Fresno | 9/30/2007 | Airmux | 200 Outdoor |
| PTNEV1 | 778 | Generator, Quinn | Fresno | 3/31/2006 | Quinn | |
| PTNEV1 | 1549 | SERVER, DELL 4300 | Fresno | 2/4/1999 | DELL | |
| PTNEV1 | 1646 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080i59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 1647 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080i59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 1648 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080i59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 1649 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080i59.94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 731 | 1998 Winnebago MPU | Fresno | 9/23/1998 | | |
| PTNEV1 | 933 | 2005 Honda Pilot | Fresno | 3/31/2005 | | |
| PTNEV1 | 934 | 2005 Honda Pilot | Fresno | 3/31/2005 | | |
| PTNEV1 | 1548 | News Toyota Rav 4 | Fresno | 12/31/2008 | | |
| PTNEV1 | 1523 | QTV WinCue Pro News, Support Multiple Newsroom System, Real Time Updating, On Ai | Fresno | | | |
| PTNEV1 | 1383 | Patchbay | Fresno HD News | 9/30/2006 | ADC | DA63-14 |
| PTNEV1 | 1533 | Adobe After Effects 7.0 Pro & Adobe Photo Shop 9.0 | Fresno HD News | 9/30/2006 | Adobe | After Effects 7.0,Photo |
| PTNEV1 | 987 | Adobe Creative Suite 2 Premium | Fresno HD News | 6/30/2006 | Adobe | 2 |
| PTNEV1 | 1566 | Wireless Bridge & Layer 2 Switch | Fresno HD News | 6/30/2006 | AOT | 5.8GHz ISM Band,xmit/rec |
| PTNEV1 | 1449 | Charger, 4 position | Fresno HD News | 9/30/2006 | Anton Bauer | Quad 2702 |
| PTNEV1 | 1017 | AOC 19" Mon Ito-LCD | Fresno HD News | 6/30/2006 | AOC | NM |
| PTNEV1 | 1018 | AOC 19" Mon Ito-LCD | Fresno HD News | 6/30/2006 | AOC | NM |
| PTNEV1 | 1222 | Software, Editing | Fresno HD News | 9/30/2006 | Apple, Adobe | Final Cut Studio, After E |
| PTNEV1 | 1584 | Lights | Fresno HD News | 6/30/2007 | B&H | NA |
| PTNEV1 | 1167 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1168 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1169 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1170 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1171 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1172 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1173 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1174 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1175 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1176 | Octel User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1166 | Serverswitch, Octopus 16 | Fresno HD News | 9/30/2006 | Black Box | KV1702A |
| PTNEV1 | 1413 | Octel User Station | Fresno HD News | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1414 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1415 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1416 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1417 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1418 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1419 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1420 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1421 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1422 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1503 | Computer, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1532 | Computer, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1424 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1425 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1426 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1427 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1428 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1429 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1430 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1431 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1627 | Software, Closed Captioning | Fresno HD News | 9/30/2007 | Caption Maker | 700NLE |
| PTNEV1 | 1607 | Focus System w Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1608 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1609 | Focus System w Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1610 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1539 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2ID |
| PTNEV1 | 1541 | Receiver, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2IE |
| PTNEV1 | 1542 | Receiver, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2IE |
| PTNEV1 | 1540 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2ID |
| PTNEV1 | 1521 | Transmitter, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2ID |
| PTNEV1 | 1536 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2IE |
| PTNEV1 | 1537 | Transmitter, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2ID |
| PTNEV1 | 1538 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2IE |
| PTNEV1 | 847 | AUDIO MIXER, MACKIE 1202/VLZ PRO | Fresno HD News | 11/15/2001 | Clear-Com | PTX-2IE |
| PTNEV1 | 1591 | Computer, Newsroom System Server | Fresno HD News | 6/30/2007 | CROUSE-KIMZEY COMPANY | |
| PTNEV1 | 1663 | Computer, WSI Weather System, HD TVI HW Bundle | Fresno HD News | 9/30/2007 | Dell | Poweredge 2970 |
| PTNEV1 | 1691 | Computer, WSI Weather System, Producer HW Bundle | Fresno HD News | 9/30/2007 | Dell | 690 |
| PTNEV1 | 1692 | Computer, WSI Weather System, True View Sky HW Bundle | Fresno HD News | 9/30/2007 | Dell | 690 |
| PTNEV1 | 1667 | Monitor, Flat Panel, 24" | Fresno HD News | 9/30/2007 | Dell | 690 |
| PTNEV1 | 1668 | Monitor, Flat Panel, 24" | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1666 | Monitor, Flat Panel, 30" | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1619 | Receiver-Earth Station, WSI Weather System | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1581 | Software, Broadcasting, Editing | Fresno HD News | 9/30/2007 | Edius | 4 |
| PTNEV1 | 1104 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1105 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1106 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1107 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1108 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1109 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1110 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1111 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1112 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1113 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1114 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1115 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1116 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1117 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1103 | Multiframe w/ Power Supply | Fresno HD News | 11/20/2002 | Evertz | 7700FR-C |
| PTNEV1 | 1201 | SDI 4 AES Pair Audio Embedder Card for 3 RU Frame | Fresno HD News | 9/30/2006 | Evertz | 7720AE4+3RU |
| PTNEV1 | 1626 | Encoder, Closed Caption, HD w/ Subtitles | Fresno HD News | 11/20/2002 | Link | |
| PTNEV1 | 874 | AUDIO D/A, RDL RU-DA4D | Fresno HD News | 9/30/2006 | MARKERTEK | |
| PTNEV1 | 875 | AUDIO D/A, RDL RU-DA4D | Fresno HD News | 9/30/2006 | MARKERTEK | |
| PTNEV1 | 1438 | HDSDI | Fresno HD News | 9/30/2006 | Marshall | V-R65SP |
| PTNEV1 | 1177 | SDI | Fresno HD News | 9/30/2006 | Marshall | V-R44P |
| PTNEV1 | 1178 | SDI | Fresno HD News | 9/30/2006 | Marshall | V-R44P |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1577 | Newsset | Fresno HD News | 9/30/2007 | NA | NA |
| PTNEV1 | 1028 | Audio Board-Channel 4 Bus Mixer | Fresno HD News | 6/20/2006 | NV | NM |
| PTNEV1 | 1442 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Fresno HD News | 9/30/2006 | Omron | |
| PTNEV1 | 1032 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 1033 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 1034 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 1035 | HDP HD-SD/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 824 | LIGHT, ANTON BAUER UL2-20 | Fresno HD News | 9/30/2006 | Panasonic | |
| PTNEV1 | 1432 | Computer | Fresno HD News | 3/31/2000 | PHOTOMART | |
| PTNEV1 | 1433 | Computer | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEV1 | 1434 | Computer | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEV1 | 1087 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1088 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1089 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1090 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1091 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1092 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1093 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1074 | Patchbay, Digital Audio | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1086 | Serverswitch, Octopus 8 | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1193 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1194 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1195 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1196 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1525 | Control System | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1493 | MD Conversion Frame | Fresno HD News | 12/31/2006 | Ross Video | OVD-MD-ENPS |
| PTNEV1 | 1470 | Multi-Definition Production Switcher | Fresno HD News | 9/30/2006 | Ross Video | S25MD-024-C-B |
| PTNEV1 | 1473 | Tripod | Fresno HD News | 9/30/2006 | Ross Video/ | MD-001C |
| PTNEV1 | 1474 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 1475 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 1476 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 1488 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 935 | Video,Sachtler/VIDEO 14 II w a Sony VCT-14 | Fresno HD News | 3/31/2005 | Sachtler/Video 14 II | |
| PTNEV1 | 1094 | Display, 46" | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1095 | Display, 46" | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1096 | Display, 46" | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1197 | Monitor, 46" LCD | Fresno HD News | 9/30/2006 | Samsung | 460P |
| PTNEV1 | 1456 | Monitor, HD-LCD, 40" | Fresno HD News | 9/30/2006 | Samsung | 1090P |
| PTNEV1 | 1457 | Monitor, HD-LCD, 40" | Fresno HD News | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1464 | Monitor, HD-LCD, 57" | Fresno HD News | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1465 | Monitor, HD-LCD, 57" | Fresno HD News | 9/30/2006 | Samsung | 1090P |
| PTNEV1 | 1498 | Presentation Monitor, 26", HD LCD TV | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1500 | Presentation Monitor, 26", HD LCD TV | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1620 | Microphone, Beltpack for Weather Talent | Fresno HD News | 9/30/2006 | Sennheiser | EW112G2 |
| PTNEV1 | 1657 | Camera Remote, CCU w/ power up to 150 meters, Sony RMB750 | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEV1 | 1658 | Camera Remote, CCU w/ power up to 150 meters, Sony RMB750 | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEV1 | 1659 | Camera Remote, CCU w/ power up to 150 meters, Sony RMB750 | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEV1 | 1654 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEV1 | 1656 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEV1 | 1660 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc |
| PTNEV1 | 1571 | XD Cam Deck | Fresno HD News | 9/30/2007 | Sony | PDVW-30 XDCAM, HD |
| PTNEV1 | 1621 | Prompter, Monitor, Flat Panel | Fresno HD News | 9/30/2007 | Tel | LCD15DC |
| PTNEV1 | 1435 | Software, Teleprompter | Fresno HD News | 9/30/2006 | TelaScript | PRO NEWS 200 |
| PTNEV1 | 1378 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |
| PTNEV1 | 1379 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |
| PTNEV1 | 1380 | Teleprompter, 15" | Fresno HD News | 9/30/2005 | Telescript | PFS150-S |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---------|--------|-------------|----------|-----------------|--------------|-------|
| PTNEV1 | 615 | EQUIPMENT RACK, STANTRON | Fresno HD News | 3/5/1999 | THE WATERFORD GROUP | |
| PTNEV1 | 616 | EQUIPMENT RACK, STANTRON | Fresno HD News | 3/5/1999 | THE WATERFORD GROUP | |
| PTNEV1 | 1446 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP920B |
| PTNEV1 | 1447 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP920B |
| PTNEV1 | 1448 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP920B |
| PTNEV1 | 1082 | Software, Viz Image Effects Pac | Fresno HD News | 9/30/2006 | Vizrt | |
| PTNEV1 | 1491 | Software, Viz Image Effects Pac | Fresno HD News | 9/30/2006 | VizRT | |
| PTNEV1 | 1494 | Software, Viz Trio 3D CG Single HD Output Graphics System | Fresno HD News | 9/30/2006 | Vizrt | SVR-PI-FXPAC |
| PTNEV1 | 1382 | Audio Board w/Meter Bridge | Fresno HD News | 9/30/2006 | VizRT | |
| PTNEV1 | 1371 | Intercom w/IFB Wireless | Fresno HD News | 9/30/2006 | Yamaha | DM 1000 V2 |
| PTNEV1 | 917 | KLVR Wireless Handheld Microphone System | Fresno HD News | 11/3/2004 | | |
| PTNEV1 | 1497 | LCD for Anchor Front | Fresno HD News | 11/3/2004 | | |
| PTNEV1 | 1381 | Microphones, Wireless | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1485 | Newsset(Anchor Desk, platform and walls) | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1706 | Ross Synergy Switch Overdrive News Automation | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 914 | Wil, Microphone System | Fresno HD News | 9/30/2004 | | |
| PTNEV1 | 1582 | 4 Channel Multiviewer | Fresno HD News | 9/30/2007 | | |
| PTNEV1 | 1640 | Computer | Greensboro | 12/31/2007 | | |
| PTNEV1 | 1452 | HDSDI | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1520 | KVM Dual Head KVM with USB, Serial & Audio | Greensboro | 12/31/2006 | | V-470P |
| PTNEV1 | 1179 | Mobile Cart | Greensboro | 9/30/2006 | APC | PTC-2042 |
| PTNEV1 | 1045 | Monitor | Greensboro | 9/30/2006 | | NM |
| PTNEV1 | 1046 | Monitor | Greensboro | 9/30/2006 | | NM |
| PTNEV1 | 1641 | Receiver, CNN Live Content | Greensboro | 12/31/2007 | | |
| PTNEV1 | 972 | Software, License from Dell | Greensboro | 6/30/2008 | | |
| PTNEV1 | 999 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1000 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1001 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1002 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1003 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1004 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1005 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1006 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1007 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1008 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1009 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1010 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1011 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1012 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1013 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1014 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1611 | UPS, 5000VA | Greensboro | 9/30/2007 | APC | SU5000RST-TF3 |
| PTNEV1 | 1612 | UPS, 5000VA | Greensboro | 9/30/2007 | APC | SU5000RST-TF3 |
| PTNEV1 | 938 | ArcServ Exchange Backup Agent Software | Greensboro | 1/31/2005 | ArcServ/Exchange Agent | |
| PTNEV1 | 1185 | Satellite Receiver | Greensboro | 9/30/2006 | Atlas | MRD-1RU |
| PTNEV1 | 1535 | MGCP Gateway | Greensboro | 12/31/2006 | Audiocodes | MP-104 |
| PTNEV1 | 1407 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1408 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1409 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1410 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1411 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1412 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1406 | Serverswitch | Greensboro | 9/30/2006 | BlackBox | KV1701A |
| PTNEV1 | 1069 | Canare Crimp Tools | Greensboro | 9/30/2006 | Canare | |
| PTNEV1 | 1206 | Receiver, Digital CI | Greensboro | 9/30/2006 | CompuSat | Standard 422 |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1183 | Server, 1U CompuSat Earth Station Controller | Greensboro | 9/30/2006 | CompuSat | 2.8Ghz |
| PTNEV1 | 779 | 17" MONITOR, ULTRASCAN 1000HS | Greensboro | 2/4/1999 | DELL | |
| PTNEV1 | 1578 | Computer | Greensboro | 9/30/2007 | Dell | |
| PTNEV1 | 1628 | Computer, Desktop | Greensboro | 9/30/2007 | Dell | Optiplex 320 |
| PTNEV1 | 1402 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1403 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1404 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1405 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1188 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1189 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1190 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1450 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1516 | Monitor, Flat Panel | Greensboro | 12/31/2006 | Dell | 2007FP |
| PTNEV1 | 1165 | Switch, Layer 3, Power Connect 6024, 24 Port | Greensboro | 9/30/2006 | Dell | PowerConnect 6024 |
| PTNEV1 | 1629 | Word Now Server | Greensboro | 9/30/2007 | Dell | UltraSharp 2007FP |
| PTNEV1 | 987 | Dell Latitude D510 | Greensboro | 9/30/2007 | Dell | |
| PTNEV1 | 677 | 4.5 PATRIOT ANTENNA DISH | Greensboro | 8/31/2005 | Dell/D510 | |
| PTNEV1 | 678 | 4.5 PATRIOT ANTENNA DISH | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 681 | RECEIVER, STANDARD 830 | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 682 | RECEIVER, STANDARD 830 | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 939 | EASI 4.5 Meter AZ/EL Motorized Antenna | Greensboro | 5/31/2005 | EASI | |
| PTNEV1 | 940 | EASI 4.5 Meter AZ/EL Motorized Antenna | Greensboro | 5/31/2005 | EASI | |
| PTNEV1 | 679 | ANTENNA POSITIONER, RCI 2000 | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 680 | ANTENNA POSITIONER, RCI 2000 | Greensboro | 7/8/1998 | EASO | |
| PTNEV1 | 1139 | Analog Video Distribution Amplifier | Greensboro | 9/30/2006 | Evertz | 7700ADA73RU |
| PTNEV1 | 1140 | Analog Video Distribution Amplifier | Greensboro | 9/30/2006 | Evertz | 7700ADA73RU |
| PTNEV1 | 1141 | Analog Video Distribution Amplifier | Greensboro | 9/30/2006 | Evertz | 7700ADA73RU |
| PTNEV1 | 1622 | Card-HD to SD Down Converter & DA | Greensboro | 9/30/2007 | Evertz | 7713HDC-3RU |
| PTNEV1 | 1623 | Card-VistaLINK Frame Controller | Greensboro | 9/30/2007 | Evertz | 7700FC-3RU |
| PTNEV1 | 1161 | Desktop Control Panel | Greensboro | 9/30/2006 | Evertz | 3000CP |
| PTNEV1 | 1129 | Dual Analog Audio Dist. | Greensboro | 9/30/2006 | Evertz | 7700ADA |
| PTNEV1 | 1130 | Dual Analog Audio Dist. | Greensboro | 9/30/2006 | Evertz | 7700ADA |
| PTNEV1 | 1098 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/30/2006 | Evertz | 7736CD2 |
| PTNEV1 | 1099 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/30/2006 | Evertz | 7736CD2 |
| PTNEV1 | 1100 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/30/2006 | Evertz | 7736CD2 |
| PTNEV1 | 1119 | Frame Controller | Greensboro | 9/30/2006 | Evertz | 7700FC |
| PTNEV1 | 1145 | Frame Controller | Greensboro | 9/30/2006 | Evertz | 7700FC |
| PTNEV1 | 1156 | Frame Controller | Greensboro | 9/30/2006 | Evertz | 3000FC |
| PTNEV1 | 1125 | HD 4 AES Pair Audio Embedder | Greensboro | 9/30/2006 | Evertz | 7721AE4 |
| PTNEV1 | 1148 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7711UC |
| PTNEV1 | 1149 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7713UC |
| PTNEV1 | 1150 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7736CE2 |
| PTNEV1 | 1199 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7711UC-HD-3RU |
| PTNEV1 | 1200 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7711UC-HD-3RU |
| PTNEV1 | 1128 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1127 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1205 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1118 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1132 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1133 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1134 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1135 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1136 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1137 | HD SDI Reclocking DA | Greensboro | 9/30/2005 | Evertz | 7700DA7 |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1138 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1142 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1143 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1144 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1151 | HD to SD Down Converter & DA | Greensboro | 9/30/2006 | Evertz | 5600MSC |
| PTNEV1 | 1443 | HD to SD Down Converter & DA | Greensboro | 9/30/2006 | Evertz | 7713HDC |
| PTNEV1 | 1444 | HD to SD Down Converter & DA | Greensboro | 9/30/2006 | Evertz | 7713HDC |
| PTNEV1 | 1147 | HD/SD SDI Frame Sync | Greensboro | 9/30/2006 | Evertz | 7746FSE |
| PTNEV1 | 1504 | IF-C515D1G SDI Card w/ embedded audio & level display | Greensboro | 12/31/2006 | Evertz | |
| PTNEV1 | 1120 | Multiframe w/ Power Supply | Greensboro | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1131 | Multiframe w/ Power Supply | Greensboro | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1146 | Multiframe w/ Power Supply | Greensboro | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1024 | Multiframe, 15 slots | Greensboro | 9/30/2007 | Evertz | 7700FRC |
| PTNEV1 | 1155 | MVP Frame + Power Supply | Greensboro | 9/30/2006 | Evertz | 3000 Series |
| PTNEV1 | 1102 | Network Control Panel | Greensboro | 9/30/2006 | Evertz | 9000NCP2 |
| PTNEV1 | 1645 | Octal Auto-Detecting HD/SD/Comp Analog | Greensboro | 12/31/2007 | Evertz | NA |
| PTNEV1 | 1157 | Octal Auto-detecting HD/SD/Comp. Analog | Greensboro | 9/30/2006 | Evertz | 3000MVP-OV-HSN |
| PTNEV1 | 1158 | Octal Auto-detecting HD/SD/Comp. Analog | Greensboro | 9/30/2006 | Evertz | 3000MVP-OV-HSN |
| PTNEV1 | 1507 | Octal Auto-detecting HD/SD/Comp. Analog | Greensboro | 12/31/2006 | Evertz | 3000MVP-OV-HSN |
| PTNEV1 | 1152 | Power Supply | Greensboro | 9/30/2006 | Evertz | STG |
| PTNEV1 | 1511 | Processor/Output Module w/ 72 DVI-I SXGA/UXGA, 4-HD-SDI | Greensboro | 12/31/2006 | Evertz | 3000MVP-PPMV |
| PTNEV1 | 1162 | Quad Computer Video Input Module | Greensboro | 12/31/2006 | Evertz | 3000MVP-GI-4 |
| PTNEV1 | 1121 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1122 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1123 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1124 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1153 | Sync. Pulse Generator & PS & GPS | Greensboro | 9/30/2006 | Evertz | HTG |
| PTNEV1 | 1159 | Video Processor, Multidisplay | Greensboro | 9/30/2006 | Evertz | 3000MVP-PPV4.5 |
| PTNEV1 | 1160 | Video Processor, Multidisplay | Greensboro | 9/30/2006 | Evertz | 3000MVP-PPV4.5 |
| PTNEV1 | 1579 | Monitor, TV | Greensboro | 9/30/2007 | Gefon | Dvi1000hd |
| PTNEV1 | 498 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 499 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 500 | RECEIVER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 501 | RECEIVER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 885 | SCANNER, HP 7450C | Greensboro | 9/25/2003 | INSIGHT | |
| PTNEV1 | 1553 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1554 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1556 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1559 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 876 | DVD PLAYER, SAMSUNG | Greensboro | 11/4/2002 | JESUS APPLIANCES | |
| PTNEV1 | 1518 | LCD, 32" | Greensboro | 12/31/2006 | JVC | |
| PTNEV1 | 1198 | Monitor, 17" 750 TVL | Greensboro | 9/30/2006 | JVC | |
| PTNEV1 | 1154 | Monitor, 17", HD/DTV | Greensboro | 9/30/2006 | JVC | DT-V1710CGU |
| PTNEV1 | 936 | Analog/Digital CC Encoder | Greensboro | 2/28/2005 | Link Elect./? | |
| PTNEV1 | 1471 | Multi-Viewers, Analog | Greensboro | 9/30/2006 | Media Concepts | |
| PTNEV1 | 624 | WAVEFORM/VECTORSCOPE, TEKTRONIX 1750 | Greensboro | 3/5/1998 | MEDIA CONCEPTS | |
| PTNEV1 | 845 | PHOTOSHOP, ADOBE 5.5 | Greensboro | 1/31/2001 | MOONDOG | |
| PTNEV1 | 848 | SCANNER, ACER 320P | Greensboro | 1/31/2001 | MOONDOG | |
| PTNEV1 | 1019 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1020 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1021 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1022 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1023 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1024 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 998 | Design & CAD Drawings for Master Control Upgrade | Greensboro | 6/30/2007 | NV | NM |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1221 | Additional Computer System | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1184 | Computer System | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1593 | Computer, Commercial Playback | Greensboro | 6/30/2007 | Nverzion | E6300 |
| PTNEV1 | 1220 | Ethernet Machine Control 8 ports | Greensboro | 6/30/2007 | Nverzion | |
| PTNEV1 | 1058 | Ethernet Machine Control 8 Ports | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1067 | Event Scheduler | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1594 | Software, Commercial Playback | Greensboro | 6/30/2007 | Nverzion | Ncontrol |
| PTNEV1 | 1214 | Software, NCONTROL Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1215 | Software, NCONTROL Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1216 | Software, NCONTROL Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1213 | Software, NPOINT Segmenter | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1634 | Software, OSI Translator, Traffic Export Interface | Greensboro | 9/30/2007 | Nverzion | Nconvert, Traffic Export |
| PTNEV1 | 1633 | Software, OSI Translator, Traffic Import Interface | Greensboro | 9/30/2007 | Nverzion | Nconvert, Traffic Import |
| PTNEV1 | 1217 | Software, Redundant NBASE Media Database Manager | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1219 | Software, Traffic Export Interface | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1218 | Software, Traffic Import Interface | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1053 | 3 Channel MPEG Multiport | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1385 | Content Director | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1386 | Content Director | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1387 | Content Manager | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1390 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1391 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1392 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1393 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1394 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1395 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1396 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1397 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1398 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1399 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1400 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1401 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1068 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1051 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1207 | DV/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omneon | MIP-1003A |
| PTNEV1 | 1208 | DV/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omneon | MIP-1003A |
| PTNEV1 | 1209 | DV/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omneon | MIP-1003A |
| PTNEV1 | 1050 | HD Ingest MediaPort | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1047 | MediaDirector2100 | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1048 | MediaDirector2100 | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1632 | MediaPort, HD Encode, HD-SDI Recorder | Greensboro | 9/30/2007 | Omneon | Multi-Rate MPEG |
| PTNEV1 | 1052 | MediaStore w/ 16.73 SBOD | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1513 | Network Switch, 1 GigE, 48 Ports | Greensboro | 12/31/2006 | Omneon | CNS-1001 |
| PTNEV1 | 1543 | Omneon Video | Greensboro | 12/31/2006 | Omneon | |
| PTNEV1 | 1563 | Spectrum Manager | Greensboro | 9/30/2007 | Omneon | Single Seat License |
| PTNEV1 | 1049 | Software, Transfer Tool | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1388 | Switch, Network, 1GigE, 48 Ports | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1389 | Switch, Network, 1GigE, 48 Ports | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1384 | System Manager | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 842 | PHOTOSHOP, ADOBE 6.0 | Greensboro | 4/24/2001 | PANA COMPUTERS | |
| PTNEV1 | 1224 | DA Audio & Video Converter, 10-bit, SDI/Embedded Audio to Component or Composit | Greensboro | 9/30/2006 | Panasonic | AJAD10CEA |
| PTNEV1 | 1223 | Digital Video Camera | Greensboro | 9/30/2006 | Panasonic | AJ-SD255 DVCPRO |
| PTNEV1 | 1476 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 1477 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 1478 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJAHDP |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1479 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1480 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1481 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1482 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1483 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1484 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1485 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1486 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1487 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2007 | Panasonic | AJA-HDP |
| PTNEV1 | 1630 | Chips,14, SDRAM DDR 400ror OSI- | Greensboro | 9/30/2007 | PNY | Optima-D1GBPC320PT |
| PTNEV1 | 1070 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1071 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1072 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1073 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1095 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1097 | Display, 46" | Greensboro | 9/30/2006 | Samsung | 460P |
| PTNEV1 | 1453 | Display, 46" | Greensboro | 9/30/2006 | Samsung | |
| PTNEV1 | 1031 | LCD, 32" | Greensboro | 12/31/2006 | Samsung | 1080p |
| PTNEV1 | 1519 | LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1458 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1459 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1460 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1461 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1462 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1463 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1468 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1469 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1465 | Monitor, HD-LCD, 57" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1467 | Monitor, HD-LCD, 57" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1013 | Raid Backup Storage, News | Greensboro | 9/30/2007 | Seagate | 750GB drive |
| PTNEV1 | 1544 | Computer, Self-Built w/ ASUS Case | Greensboro | 12/31/2006 | Self-built | NA |
| PTNEV1 | 1545 | Computer, Self-Built w/ ASUS Case | Greensboro | 12/31/2006 | Self-built | NA |
| PTNEV1 | 1472 | Computer | Greensboro | 9/30/2006 | Self-Built/ASUS | |
| PTNEV1 | 1076 | Toolcase w/ Tools | Greensboro | 9/30/2006 | Sesco Data Systems | |
| PTNEV1 | 642 | 32 X 1 ROUTER, SIERRA VIDEO SYSTEM | Greensboro | 6/18/1998 | SIERRA VIDEO SYSTEM | |
| PTNEV1 | 637 | MAIN FRAME, SIERRA VIDEO SYSTEM | Greensboro | 2/28/1997 | SIERRA VIDEO SYSTEM | |
| PTNEV1 | 1191 | UPS, Smart, 5000VA | Greensboro | 9/30/2006 | Smart | Su5000R5T |
| PTNEV1 | 1192 | UPS, Smart, 5000VA | Greensboro | 9/30/2006 | Smart | Su5000R5T |
| PTNEV1 | 1594 | TC Electronics Audio Processor SDI | Greensboro | 9/30/2007 | TCE | Version DB8 |
| PTNEV1 | 1595 | TC Electronics Audio Processor SDI | Greensboro | 9/30/2007 | TCE | Version DB8 |
| PTNEV1 | 1451 | HDSDI | Greensboro | 9/30/2006 | Tefen | V-R70P |
| PTNEV1 | 617 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 618 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 619 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 620 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 621 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 622 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 1210 | Configuration Laptop | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1180 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |
| PTNEV1 | 1181 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1182 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1202 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1203 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1211 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |
| PTNEV1 | 1212 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1057 | DAC Output card | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1506 | Unet Hub | Greensboro | 12/31/2006 | Utah Scientific | 80263-2 |
| PTNEV1 | 1054 | Utah-400 V-64 Frame | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1454 | Software | Greensboro | 9/30/2006 | Vbrick | 1 yr update |
| PTNEV1 | 1163 | Dual HD/SD Input | Greensboro | 9/30/2006 | Videotek | VTM-4100 |
| PTNEV1 | 1204 | SDI Input Module, Dual HD/SD | Greensboro | 9/30/2006 | Videotek | VTM-4100 |
| PTNEV1 | 1101 | Software, SNMP Alarm Monitoring, Email Notification Configuration Application So | Greensboro | 9/30/2006 | VistaLINK PRO | |
| PTNEV1 | 1059 | Additional Computer System | Greensboro | 9/30/2006 | Vizrt | |
| PTNEV1 | 1077 | Computer, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1078 | Computer, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1060 | Software, NCONTROL Standard Router Software Package | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1489 | Software, SDHD Viz Trio 3D CG Dual Output Graphics System | Greensboro | 9/30/2006 | Vizrt | VHD-PCG-SD/HD Trio Dual |
| PTNEV1 | 1079 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1080 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1081 | Software, Viz Image Effects Pac | Greensboro | 9/30/2009 | Vizrt | |
| PTNEV1 | 1227 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | |
| PTNEV1 | 1228 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | SVR-PI-FXFAC |
| PTNEV1 | 1490 | Software, Viz Image Effects Pac | Greensboro | 9/30/2009 | Vizrt | SVR-PI-FXFAC |
| PTNEV1 | 1492 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | SVR-PI-FXFAC |
| PTNEV1 | 1229 | Software, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | SVR-PI-FXFAC |
| PTNEV1 | 1230 | Software, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | Vizrt | |
| PTNEV1 | 1225 | Viz Artist Interface | Greensboro | 9/30/2006 | Vizrt | SMArtist-UIC |
| PTNEV1 | 1226 | Viz Trio UI | Greensboro | 9/30/2006 | Vizrt | SMTrio-UIC |
| PTNEV1 | 1441 | Rack, for Studio Computer | Greensboro | 9/30/2006 | Winstead | V8843 |
| PTNEV1 | 922 | 2 TV's | Greensboro | 10/31/2004 | | |
| PTNEV1 | 723 | 6' EQUIPMENT RACK (BLACK) | Greensboro | 6/1/1998 | | |
| PTNEV1 | 906 | Arc Server S/W Upgrade | Greensboro | 7/22/2004 | | |
| PTNEV1 | 1233 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1234 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1237 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1238 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1241 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1242 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1243 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1244 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1250 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1251 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1252 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1255 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1256 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1261 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1262 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1348 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1349 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1350 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1351 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1358 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1359 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1360 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1361 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1362 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1264 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1268 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1258 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1270 | Chair, Liberty | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date in Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1272 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1274 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1278 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1278 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1280 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1282 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1284 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1286 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1288 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1290 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1292 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1294 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1296 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1297 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1298 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1299 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1300 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1301 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1302 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1303 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1315 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1316 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1317 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1318 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1319 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1320 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1321 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1322 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1323 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1324 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1325 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1326 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1327 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1328 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1329 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1330 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1331 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1332 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1339 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1340 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1341 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1342 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1347 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1352 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1353 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1354 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1355 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1357 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1358 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1365 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1366 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1367 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1252 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1256 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1240 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1254 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1260 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1305 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1186 | Computer, Automation Control for Single Control Point | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1245 | Credenza, Filing, Quadrifoglio, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 928 | Dell Notebook | Greensboro | 12/31/2004 | | |
| PTNEV1 | 1231 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1235 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1239 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1253 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1259 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1304 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1345 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1257 | File Cabinet, Metal, 5 Drawer | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1258 | File Cabinet, Metal, 5 Drawer | Greensboro | 9/30/2006 | | |
| | | Intertel Phone Desk Phones (Lot) | | | | |
| | | Intertel Phone Switch | | | | |
| PTNEV1 | 921 | Monitor | Greensboro | 9/30/2004 | | |
| PTNEV1 | 923 | Monitor | Greensboro | 12/19/2004 | | |
| PTNEV1 | 1246 | Quadrifoglio, Round Glass Top Conference Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1061 | Satellite Receiver, Analog, Standard 930B | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1062 | Satellite Receiver, Analog, Standard 930B | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1063 | Satellite Receiver, Digital, Standard 422Ci | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1064 | Satellite Receiver, Digital, Standard 422Ci | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1333 | Sofa, Sway 2 Seat | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1370 | Table Desk, Glass Arced Curved Shape w/ Curved Perforated Metal Modesty Panel | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1346 | Table, Conference, Round Glass Top | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1293 | Table, Conference, Virtu, Arced, Rectangle Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1383 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1384 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1388 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1369 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1334 | Table, Retrospect, Round, Cocktail | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1343 | Table, Vela Round Table 42" | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1344 | Table, Vela Round Table 42" | Greensboro | 9/30/2006 | | |
| PTNEV1 | 918 | Traffic Computers | Greensboro | 10/6/2004 | | |
| PTNEV1 | 924 | Windows and Office Upgrade | Greensboro | 11/1/2004 | | |
| PTNEV1 | 1314 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1247 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1248 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1249 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1263 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1265 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1267 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1269 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1271 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1273 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1275 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1277 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1279 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1281 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1283 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1285 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1287 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---------|--------|-------------|----------|-----------------|--------------|-------|
| PTNEV1 | 1289 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1291 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1307 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1308 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1309 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1310 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1311 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1312 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1313 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1335 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1336 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1337 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1338 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1356 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 926 | Chief Engineer Laptop | San Francisco | 12/22/2004 | | |

**Schedule 2**

**Acquired Assets**

[Attached hereto.]

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 837 | PRINTER, HP LASERJET 8000N | Corp | 8/31/2000 | VALCOM | NM |
| PTNEV1 | 1015 | AOC 19" Mon itor-LCD | El Paso | 6/30/2006 | AOC | NM |
| PTNEV1 | 1016 | AOC 19" Mon itor-LCD | El Paso | 6/30/2006 | AOC | |
| PTNEV1 | 957 | 1999 DODGE CARAVAN | El Paso | 12/31/2005 | BRYAN ROSS | |
| PTNEV1 | 1423 | Computer | El Paso | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 982 | Dell All in One Inkjet 962 | El Paso | 9/30/2006 | Dell | |
| PTNEV1 | 1184 | Switch, Layer 3, Power Connect 6024, 24 Port | El Paso | 9/30/2006 | Dell | PowerConnect 6024 |
| PTNEV1 | 1515 | Firewall | El Paso | 9/30/2006 | Dell | Pro-4100 w/ 2Y CG |
| PTNEV1 | 1547 | Vehicle, News, Toyota RAV4 | El Paso | 12/31/2006 | Sonicwall | Rav 4 |
| PTNEV1 | 882 | VPN, SONICWALL PRO100 | El Paso | 12/31/2006 | Toyota | |
| PTNEV1 | 1445 | Monitor, LCD, 19" | El Paso | 1/8/2003 | VALCOM | |
| PTNEV1 | 1572 | Antenna | Fresno | 9/30/2007 | Viewsonic | VP930B |
| PTNEV1 | 1637 | Antenna | Fresno | 9/30/2007 | Alimux | 200 Outdoor |
| PTNEV1 | 1638 | Antenna | Fresno | 9/30/2007 | Alimux | 200 Outdoor |
| PTNEV1 | 778 | SERVER, DELL 4300 | Fresno | 2/4/1999 | Alimux | 200 Outdoor |
| PTNEV1 | 1549 | Generator, Quinn | Fresno | 3/31/2006 | DELL | |
| PTNEV1 | 1646 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080/59 94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Quinn | |
| PTNEV1 | 1647 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080/59 94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 1648 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080/59 94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 1649 | Camera,1/2" HD CCD XDCAM HD Camcorder 1080/59 94i, 50i, 29.97P, 25P | Fresno | 9/30/2007 | Sony | |
| PTNEV1 | 731 | 1998 Winnebago MPU | Fresno | 9/23/1998 | Sony | |
| PTNEV1 | 933 | 2005 Honda Pilot | Fresno | 3/31/2005 | | |
| PTNEV1 | 934 | 2005 Honda Pilot | Fresno | 3/31/2005 | | |
| PTNEV1 | 1548 | New Toyota Rav 4 | Fresno | 3/31/2005 | | |
| PTNEV1 | 1523 | News Toyota Rav 4 | Fresno | 12/31/2006 | | |
| PTNEV1 | 1383 | QTV MinCue Pro News, Support Multiple Newsroom System, Real Time Updating, On Ai | Fresno HD News | 12/31/2006 | | |
| PTNEV1 | 1533 | Patchbay | Fresno HD News | 9/30/2006 | ADC | DA8-14 |
| PTNEV1 | 987 | Adobe After Effects 7.0 Pro & Adobe Photo Shop 9.0 | Fresno HD News | 9/30/2006 | Adobe | After Effects 7.0,Photo |
| PTNEV1 | 1566 | Adobe Creative Suite 2 Premium | Fresno HD News | 6/30/2006 | Adobe | 2 |
| PTNEV1 | 1449 | Wireless Bridge & Layer 2 Switch | Fresno HD News | 6/30/2007 | ADT | 5.8GHz ISM Band xmtr/rec |
| PTNEV1 | 1617 | Charger, 4 position | Fresno HD News | 6/30/2007 | Anton Bauer | Quad 2702 |
| PTNEV1 | 1018 | AOC 19" Mon itor-LCD | Fresno HD News | 9/30/2006 | AOC | NM |
| PTNEV1 | 1222 | Software, Editing | Fresno HD News | 6/30/2006 | AOC | NM |
| PTNEV1 | 1584 | Lights | Fresno HD News | 9/30/2006 | Apple, Adobe | Final Cut Studio, After E |
| PTNEV1 | 1167 | Octet User Station | Fresno HD News | 6/30/2007 | B&H | NA |
| PTNEV1 | 1168 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1169 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1171 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1172 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1173 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1174 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1175 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1176 | Octet User Station | Fresno HD News | 9/30/2006 | Black Box | KV1713A |
| PTNEV1 | 1166 | Serverswitch, Octopus 16 | Fresno HD News | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1413 | Octet User Station | Fresno HD News | 9/30/2006 | BlackBox | KV1702A |
| PTNEV1 | 1414 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1415 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1416 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1417 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1418 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1419 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1420 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1421 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |
| PTNEV1 | 1422 | Computer | Fresno HD News | 9/30/2006 | Canopus | NLE |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1503 | Computer, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1532 | Computer, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1424 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1425 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1426 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1427 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1428 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1429 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1430 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1431 | Software, Editing | Fresno HD News | 9/30/2006 | Canopus | EDIUS HD/SD Broadcast Pro |
| PTNEV1 | 1627 | Software, Closed Captioning | Fresno HD News | 9/30/2007 | Caption Maker | 700NLE |
| PTNEV1 | 1607 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1608 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1609 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1610 | Focus System w/ Focus head, 1-Stage Aluminum Tripod, Mid-Level Spreader, Case | Fresno HD News | 9/30/2007 | Cartoni | CARF101 |
| PTNEV1 | 1539 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2/D |
| PTNEV1 | 1541 | Receiver, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2/E |
| PTNEV1 | 1542 | Receiver, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2/E |
| PTNEV1 | 1540 | Receiver, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PRC-2/D |
| PTNEV1 | 1521 | Transmitter, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2/D |
| PTNEV1 | 1536 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2/E |
| PTNEV1 | 1537 | Transmitter, Wireless IFB(Block 24) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2/D |
| PTNEV1 | 1538 | Transmitter, Wireless IFB(Block 25) | Fresno HD News | 12/31/2006 | Clear-Com | PTX-2/E |
| PTNEV1 | 847 | AUDIO MIXER, MACKIE 1220VLZ PRO | Fresno HD News | 11/15/2001 | CROUSE-KIMZEY COMPANY | |
| PTNEV1 | 1591 | Computer, Newzcom System Server | Fresno HD News | 6/30/2007 | Dell | Poweredge 2970 |
| PTNEV1 | 1663 | Computer, WSI Weather System, HD TV/ HW Bundle | Fresno HD News | 9/30/2007 | Dell | 690 |
| PTNEV1 | 1661 | Computer, WSI Weather System, Producer HW Bundle | Fresno HD News | 9/30/2007 | Dell | 690 |
| PTNEV1 | 1662 | Computer, WSI Weather System, True View Sky HW Bundle | Fresno HD News | 9/30/2007 | Dell | 690 |
| PTNEV1 | 1667 | Monitor, Flat Panel, 24" | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1668 | Monitor, Flat Panel, 24" | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1666 | Monitor, Flat Panel, 30" | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1619 | Receiver-Earth Station, WSI Weather System | Fresno HD News | 9/30/2007 | Dell | |
| PTNEV1 | 1581 | Software, Broadcasting, Editing | Fresno HD News | 9/30/2007 | Edius | 4 |
| PTNEV1 | 1104 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1105 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1106 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1107 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1108 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1109 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1110 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1111 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1112 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1113 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1114 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1115 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1116 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1117 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1103 | HD SDI Reclocking DA | Fresno HD News | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1201 | SDI 4 AES Pair Audio Embedder Card for 3 RU Frame | Fresno HD News | 9/30/2006 | Evertz | 7720AE4+3RU |
| PTNEV1 | 1628 | Encoder, Closed Caption, HD w/ Subtitles | Fresno HD News | 9/30/2007 | Link | |
| PTNEV1 | 874 | AUDIO D/A, RDL, RU-DA4D | Fresno HD News | 11/20/2002 | MARKERTEK | |
| PTNEV1 | 875 | AUDIO D/A, RDL, RU-DA4D | Fresno HD News | 11/20/2002 | MARKERTEK | |
| PTNEV1 | 1435 | HDSDI | Fresno HD News | 9/30/2006 | Marshall | V-R65SP |
| PTNEV1 | 1177 | SDI | Fresno HD News | 9/30/2006 | Marshall | V-R44P |
| PTNEV1 | 1178 | SDI | Fresno HD News | 9/30/2006 | Marshall | V-R44P |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1577 | Newsset | Fresno HD News | 9/30/2007 | NA | NA |
| PTNEV1 | 1026 | Audio Board-Channel 4 Bus Mixer | Fresno HD News | 6/30/2006 | NV | NM |
| PTNEV1 | 1442 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Fresno HD News | 9/30/2006 | Omneon | |
| PTNEV1 | 1032 | HDP HD-SDI/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJ/AHDP |
| PTNEV1 | 1033 | HDP HD-SDI/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJ/AHDP |
| PTNEV1 | 1034 | HDP HD-SDI/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJ/AHDP |
| PTNEV1 | 1035 | HDP HD-SDI/SDI to DVI-D and Audio Converter for LCD or Plasma Monitors | Fresno HD News | 9/30/2006 | Panasonic | AJ/AHDP |
| PTNEV1 | 824 | LIGHT, ANTON BAUER ULZ-230 | Fresno HD News | 3/31/2000 | PHOTOMART | |
| PTNEV1 | 1432 | Computer | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEV1 | 1433 | Computer | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEV1 | 1434 | Computer | Fresno HD News | 9/30/2006 | Professional Video | |
| PTNEV1 | 1087 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1088 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1089 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1090 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1091 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1092 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1093 | Black Box, Octet User Station | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1074 | Patchbay, Digital Audio | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1086 | Serverswitch, Octopus 8 | Fresno HD News | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1193 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1194 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1195 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1196 | Single Floor Stand | Fresno HD News | 9/30/2006 | PVS | P69 |
| PTNEV1 | 1525 | Control System | Fresno HD News | 9/30/2006 | PVS | |
| PTNEV1 | 1493 | MD Conversion Frame | Fresno HD News | 12/31/2008 | Ross Video | OVD-MD-ENPS |
| PTNEV1 | 1470 | Multi-Definition Production Switcher | Fresno HD News | 9/30/2006 | Ross Video | S2SMD-024-C-B |
| PTNEV1 | 1473 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | MD-DD1C |
| PTNEV1 | 1474 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 1475 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 1488 | Tripod | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 935 | Video,Sachtler/VIDEO 14 II w a Sony VCT-14 | Fresno HD News | 9/30/2006 | Sachtler | DV 4 II SL MCF |
| PTNEV1 | 1094 | Display, 46" | Fresno HD News | 3/31/2005 | Sachtler/Video 14 II | |
| PTNEV1 | 1095 | Display, 46" | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1096 | Display, 46" | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1197 | Monitor, 46", LCD | Fresno HD News | 9/30/2006 | Samsung | 460P |
| PTNEV1 | 1456 | Monitor, HD-LCD, 40" | Fresno HD News | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1457 | Monitor, HD-LCD, 40" | Fresno HD News | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1464 | Monitor, HD-LCD, 57" | Fresno HD News | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1465 | Monitor, HD-LCD, 57" | Fresno HD News | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1498 | Presentation Monitor, 26" HD LCD TV | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1500 | Presentation Monitor, 26", HD LCD TV | Fresno HD News | 9/30/2006 | Samsung | |
| PTNEV1 | 1620 | Microphone, Beltpack for Weather Talent | Fresno HD News | 9/30/2007 | Sennheiser | EW112G2 |
| PTNEV1 | 1657 | Camera Remote, CCU w/ power up to 150 meters, Sony RMB750 | Fresno HD News | 9/30/2007 | Sony | see desc. |
| PTNEV1 | 1658 | Camera Remote, CCU w/ power up to 150 meters, Sony RMB750 | Fresno HD News | 9/30/2007 | Sony | see desc. |
| PTNEV1 | 1659 | Camera Remote, CCU w/ power up to 150 meters, Sony RMB750 | Fresno HD News | 9/30/2007 | Sony | see desc. |
| PTNEV1 | 1656 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc. |
| PTNEV1 | 1660 | Camera,XDCAM HD Camcorder, MPEG HD & DVCAM switchable recording | Fresno HD News | 9/30/2007 | Sony | see desc. |
| PTNEV1 | 1571 | XD Cam Deck | Fresno HD News | 9/30/2007 | Sony | see desc. |
| PTNEV1 | 1621 | Prompter, Monitor, Flat Panel | Fresno HD News | 9/30/2007 | Sony | PDW-F30 XDCAM, HD |
| PTNEV1 | 1435 | Software, Teleprompter | Fresno HD News | 9/30/2006 | Tel | LCD150C |
| PTNEV1 | 1378 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | TeleScript | PRO NEWS 200 |
| PTNEV1 | 1379 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |
| PTNEV1 | 1380 | Teleprompter, 15" | Fresno HD News | 9/30/2006 | Telescript | PFS150-S |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 615 | EQUIPMENT RACK, STANTRON | Fresno HD News | 3/51/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 616 | EQUIPMENT RACK, STANTRON | Fresno HD News | 3/51/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 1446 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP920B |
| PTNEV1 | 1447 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP920B |
| PTNEV1 | 1448 | Monitor, LCD, 19" | Fresno HD News | 9/30/2006 | Viewsonic | VP920B |
| PTNEV1 | 1082 | Software, Viz Image Effects Pac | Fresno HD News | 9/30/2006 | VizRT | |
| PTNEV1 | 1491 | Software, Viz Image Effects Pac | Fresno HD News | 9/30/2006 | Vizrt | SVR-PI-FXPAC |
| PTNEV1 | 1364 | Software, Viz Trio 3D CG Single HD Output Graphics System | Fresno HD News | 9/30/2006 | VizRT | |
| PTNEV1 | 1362 | Audio Board w/Meter Bridge | Fresno HD News | 9/30/2006 | Yamaha | DM 1000 V2 |
| PTNEV1 | 1371 | Intercom w/IFB Wireless | Fresno HD News | 11/5/2004 | | |
| PTNEV1 | 917 | KLVR Wireless Handheld Microphone System | Fresno HD News | 11/5/2004 | | |
| PTNEV1 | 1497 | LCD for Anchor Front | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1381 | Microphones, Wireless | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 1495 | Newsset/Anchor Desk, platform and walls | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 706 | Ross Synergy Switch Overdrive News Automation | Fresno HD News | 9/30/2006 | | |
| PTNEV1 | 914 | VIZ Microphone System | Fresno HD News | 9/30/2004 | | |
| PTNEV1 | 1592 | 4 Channel Multiviewer | Fresno HD News | 9/30/2007 | | |
| PTNEV1 | 1640 | Computer | Greensboro | 12/31/2007 | | |
| PTNEV1 | 1452 | HDSDI | Greensboro | 9/30/2006 | | V-R70P |
| PTNEV1 | 1520 | KVM Dual Head KVM with USB, Serial & Audio | Greensboro | 12/31/2006 | | PTC-2042 |
| PTNEV1 | 1179 | Mobile Cart | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1045 | Monitor | Greensboro | 9/30/2006 | | NM |
| PTNEV1 | 1046 | Monitor | Greensboro | 9/30/2006 | | NM |
| PTNEV1 | 1641 | Receiver, CNN Live Content | Greensboro | 12/31/2007 | | |
| PTNEV1 | 972 | Software License from Dell | Greensboro | 12/31/2007 | | |
| PTNEV1 | 999 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1000 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1001 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1002 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1003 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1004 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1005 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1006 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1007 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1008 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1009 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1010 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1011 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1012 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1013 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1014 | Acer 17" Monitor-LCD | Greensboro | 6/30/2006 | Acer | NM |
| PTNEV1 | 1611 | UPS, 5000VA | Greensboro | 9/30/2006 | APC | SU5000R5T-TF3 |
| PTNEV1 | 1612 | UPS, 5000VA | Greensboro | 9/30/2007 | APC | SU5000R5T-TF3 |
| PTNEV1 | 938 | ArcServ Exchange Backup Agent Software | Greensboro | 9/30/2007 | ArcServ/Exchange Agent | |
| PTNEV1 | 1185 | Satellite Receiver | Greensboro | 1/31/2005 | Atlas | MRD-1RU |
| PTNEV1 | 1535 | MGCP Gateway | Greensboro | 9/30/2006 | Audiocodes | MP-104 |
| PTNEV1 | 1407 | Octel User Station | Greensboro | 12/31/2006 | BlackBox | KV1713A |
| PTNEV1 | 1408 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1409 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1410 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1411 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1713A |
| PTNEV1 | 1412 | Octel User Station | Greensboro | 9/30/2006 | BlackBox | KV1701A |
| PTNEV1 | 1406 | Serverswitch | Greensboro | 9/30/2006 | BlackBox | |
| PTNEV1 | 1069 | Canare Crimp Tools | Greensboro | 9/30/2006 | Canare | |
| PTNEV1 | 1206 | Receiver, Digital Ci | Greensboro | 9/30/2006 | CompuSat | Standard 422 |

| Company | System | Description | Location | Date in Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1183 | Server, 1U CompuSat Earth Station Controller | Greensboro | 9/30/2006 | CompuSat | 2.8Ghz |
| PTNEV1 | 779 | 17" MONITOR, ULTRASCAN 1000HS | Greensboro | 2/4/1999 | DELL | |
| PTNEV1 | 1578 | Computer | Greensboro | 9/30/2007 | Dell | Optiplex 320 |
| PTNEV1 | 1628 | Computer, Desktop | Greensboro | 9/30/2007 | Dell | |
| PTNEV1 | 1402 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1403 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1404 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1405 | Monitor | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1188 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1189 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1190 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1450 | Monitor, Flat Panel | Greensboro | 9/30/2006 | Dell | 2007FP |
| PTNEV1 | 1516 | Monitor, Flat Panel | Greensboro | 12/31/2006 | Dell | 2007FP |
| PTNEV1 | 1165 | Switch, Layer 3, Power Connect 6024, 24 Port | Greensboro | 9/30/2006 | Dell | PowerConnect 6024 |
| PTNEV1 | 1629 | Word New Server | Greensboro | 9/30/2007 | Dell | |
| PTNEV1 | 997 | Dell Latitude D510 | Greensboro | 8/31/2005 | Dell\D510 | |
| PTNEV1 | 677 | 4.5 PATRIOT ANTENNA DISH | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 678 | 4.5 PATRIOT ANTENNA DISH | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 681 | RECEIVER, STANDARD 830 | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 682 | RECEIVER, STANDARD 830 | Greensboro | 7/8/1998 | EASI | |
| PTNEV1 | 939 | EASI 4.5 Meter AZ/EL Motorized Antenna | Greensboro | 5/31/2005 | EASI | |
| PTNEV1 | 940 | EASI 4.5 Meter AZ/EL Motorized Antenna | Greensboro | 5/31/2005 | EASI | |
| PTNEV1 | 679 | ANTENNA POSITIONER, RCI 2000 | Greensboro | 7/8/1998 | EASO | |
| PTNEV1 | 680 | ANTENNA POSITIONER, RCI 2000 | Greensboro | 7/8/1998 | EASO | |
| PTNEV1 | 1139 | Analog Video Distribution Amplifier | Greensboro | 9/30/2006 | Evertz | 7700ADA |
| PTNEV1 | 1140 | Analog Video Distribution Amplifier | Greensboro | 9/30/2006 | Evertz | 7700ADA73RU |
| PTNEV1 | 1141 | Analog Video Distribution Amplifier | Greensboro | 9/30/2006 | Evertz | 7700ADA73RU |
| PTNEV1 | 1622 | Card-HD to SD Down Convertor & DA | Greensboro | 9/30/2007 | Evertz | 7700ADA73RU |
| PTNEV1 | 1623 | Card-VistaLINK Frame Controller | Greensboro | 9/30/2007 | Evertz | 7713HDC>3RU |
| PTNEV1 | 1161 | Desktop Control Panel | Greensboro | 9/30/2006 | Evertz | 7700FC>3RU |
| PTNEV1 | 1164 | Dual Analog Audio Dist. | Greensboro | 9/30/2006 | Evertz | 3000DCP |
| PTNEV1 | 1130 | Dual Analog Audio Dist | Greensboro | 9/30/2006 | Evertz | 7700ADA |
| PTNEV1 | 1098 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/30/2006 | Evertz | 7700ADA |
| PTNEV1 | 1099 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/30/2006 | Evertz | 7736CD2 |
| PTNEV1 | 1100 | Dual Composite Analog to SDI, Analog Audio to AES & Embed | Greensboro | 9/30/2006 | Evertz | 7736CD2 |
| PTNEV1 | 1119 | Frame Controller | Greensboro | 9/30/2006 | Evertz | 7736CD2 |
| PTNEV1 | 1145 | Frame Controller | Greensboro | 9/30/2006 | Evertz | 7700FC |
| PTNEV1 | 1156 | Frame Controller | Greensboro | 9/30/2006 | Evertz | 7700FC |
| PTNEV1 | 1125 | HD 4 AES Pair Audio Embedder | Greensboro | 9/30/2006 | Evertz | 3000FC |
| PTNEV1 | 1148 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7721AE4 |
| PTNEV1 | 1149 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7711UC |
| PTNEV1 | 1150 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7713UC |
| PTNEV1 | 1199 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7736CE2 |
| PTNEV1 | 1200 | HD Modular Upconverter w/ VBI Embed Audio | Greensboro | 9/30/2006 | Evertz | 7711UC-HD>3RU |
| PTNEV1 | 1126 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7711UC-HD>3RU |
| PTNEV1 | 1127 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1128 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1205 | HD SDI Audio De-embedder | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1118 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7721AD4 |
| PTNEV1 | 1132 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1133 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1134 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1135 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1136 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1137 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1138 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1142 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1143 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1144 | HD SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1151 | HD to SD Down Converter & DA | Greensboro | 9/30/2006 | Evertz | 5600MSC |
| PTNEV1 | 1143 | HD to SD Down Converter & DA | Greensboro | 9/30/2006 | Evertz | 7713HDC |
| PTNEV1 | 1444 | HD to SD Down Converter & DA | Greensboro | 9/30/2006 | Evertz | 7713HDC |
| PTNEV1 | 1147 | HD/SD SDI Frame Sync. | Greensboro | 9/30/2006 | Evertz | 7746FSE |
| PTNEV1 | 1504 | IF-C51SDI1G SDI Card w/ embedded audio & level display | Greensboro | 12/31/2006 | Evertz | |
| PTNEV1 | 1120 | Multiframe w/ Power Supply | Greensboro | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1131 | Multiframe w/ Power Supply | Greensboro | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1146 | Multiframe w/ Power Supply | Greensboro | 9/30/2006 | Evertz | 7700FR-C |
| PTNEV1 | 1624 | Multiframe, 15 slots | Greensboro | 9/30/2007 | Evertz | 7700FRC |
| PTNEV1 | 1155 | MVP Frame + Power Supply | Greensboro | 9/30/2006 | Evertz | 3000 Series |
| PTNEV1 | 1102 | Network Control Panel | Greensboro | 9/30/2006 | Evertz | 9000NCP2 |
| PTNEV1 | 1645 | Octal Auto-Detecting HD/SD/Comp. Analog | Greensboro | 12/31/2007 | Evertz | NA |
| PTNEV1 | 1157 | Octal Auto-detecting HD/SD/Comp. Analog | Greensboro | 9/30/2006 | Evertz | 3000MVP-OV-HSN |
| PTNEV1 | 1158 | Octal Auto-detecting HD/SD/Comp. Analog | Greensboro | 9/30/2006 | Evertz | 3000MVP-OV-HSN |
| PTNEV1 | 1507 | Octal Auto-detecting HD/SD/Comp. Analog | Greensboro | 12/31/2006 | Evertz | 3000MVP-OV-HSN |
| PTNEV1 | 1152 | Power Supply | Greensboro | 9/30/2006 | Evertz | STG |
| PTNEV1 | 1511 | Processor/Output Module w/ 72 DVI4 SXGA/UXGA, 4-HD-SDI | Greensboro | 12/31/2006 | Evertz | 3000MVP-PPMV |
| PTNEV1 | 1162 | Quad Computer Video Input Module | Greensboro | 12/31/2006 | Evertz | 3000MVP-GI-4 |
| PTNEV1 | 1121 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1122 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1123 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1124 | SD/SDI Reclocking DA | Greensboro | 9/30/2006 | Evertz | 7700DA7 |
| PTNEV1 | 1153 | Sync. Pulse Generator & PS & GPS | Greensboro | 9/30/2006 | Evertz | HTG |
| PTNEV1 | 1159 | Video Processor, Multidisplay | Greensboro | 9/30/2006 | Evertz | 3000MVP-PPV-5 |
| PTNEV1 | 1160 | Video Processor, Multidisplay | Greensboro | 9/30/2006 | Evertz | 3000MVP-PPV-5 |
| PTNEV1 | 1579 | Monitor, TV | Greensboro | 9/30/2007 | Gefen | Dvi1000hd |
| PTNEV1 | 498 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 499 | ENDEC ENCODER/DECODER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 500 | RECEIVER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 501 | RECEIVER, SAGE (EAS) | Greensboro | 1/1/1997 | HARRIS | |
| PTNEV1 | 885 | SCANNER, HP 7450C | Greensboro | 9/25/2003 | INSIGHT | |
| PTNEV1 | 1553 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1554 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1555 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1556 | Computer,Gateway | Greensboro | 9/30/2007 | Intertel | Multiapp V. 4.1 |
| PTNEV1 | 1518 | DVD PLAYER, SAMSUNG | Greensboro | 11/4/2002 | JESUS APPLIANCES | |
| PTNEV1 | 876 | LCD, 32" | Greensboro | 12/31/2006 | JVC | |
| PTNEV1 | 1198 | Monitor, 17" 750 TVL | Greensboro | 9/30/2006 | JVC | |
| PTNEV1 | 1154 | Monitor, 17", HD/DTV | Greensboro | 9/30/2006 | JVC | |
| PTNEV1 | 938 | Analog/Digital CC Encoder | Greensboro | 2/28/2005 | Link Elect./7 | DT-V1710CGU |
| PTNEV1 | 1471 | Multi-Viewers, Analog | Greensboro | 9/30/2006 | Media Concepts | |
| PTNEV1 | 624 | WAVEFORM/VECTORSCOPE, TEKTRONIX 1750 | Greensboro | 3/5/1988 | MEDIA CONCEPTS | |
| PTNEV1 | 845 | PHOTOSHOP, ADOBE 5.5 | Greensboro | 1/31/2001 | MOONDOG | |
| PTNEV1 | 846 | SCANNER, ACER 320P | Greensboro | 1/31/2001 | MOONDOG | |
| PTNEV1 | 1019 | Computer | Greensboro | 6/30/2006 | NM | NM |
| PTNEV1 | 1020 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1021 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1022 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1023 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 1024 | Computer | Greensboro | 6/30/2006 | NV | NM |
| PTNEV1 | 998 | Design & CAD Drawings for Master Control Upgrade | Greensboro | 6/30/2007 | NV | NM |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1221 | Additional Computer System | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1184 | Computer System | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1593 | Computer, Commercial Playback | Greensboro | 6/30/2007 | Nverzion | E5900 |
| PTNEV1 | 1220 | Ethernet Machine Control 8 ports | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1058 | Ethernet Machine Control 8 Ports | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1067 | Event Scheduler | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1594 | Software, Commercial Playback | Greensboro | 6/30/2007 | Nverzion | Ncontrol |
| PTNEV1 | 1214 | Software, NCONTROL Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1215 | Software, NCONTROL Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1216 | Software, NCONTROL, Playlist | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1213 | Software, NPOINT Segmenter | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1634 | Software, OSI Translator, Traffic  Export Interface | Greensboro | 9/30/2007 | Nverzion | Nconvert, Traffic Export |
| PTNEV1 | 1633 | Software, OSI Translator, Traffic Import Interface | Greensboro | 9/30/2007 | Nverzion | Nconvert, Traffic Import |
| PTNEV1 | 1217 | Software, Redundant NBASE Media Database Manager | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1219 | Software, Traffic Export Interface | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1218 | Software, Traffic Import Interface | Greensboro | 9/30/2006 | Nverzion | |
| PTNEV1 | 1053 | 3 Channel MPEG Multiport | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1385 | Content Director | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1386 | Content Director | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1387 | Content Manager | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1390 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1391 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1392 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1393 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1394 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1395 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1396 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1397 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1398 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1399 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1400 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1401 | Content Server | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1068 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1051 | Dual Channel HD MPEG MultiPort w/ Built-In Up & Down Conversion | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1207 | DV/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omneon | MIP-1003A |
| PTNEV1 | 1208 | DV/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omneon | MIP-1003A |
| PTNEV1 | 1209 | DV/MPEG Plus Media Port Embedded | Greensboro | 9/30/2006 | Omneon | MIP-1003A |
| PTNEV1 | 1050 | HD Ingest MediaPort | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1047 | MediaDirector2100 | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1048 | MediaDirector2100 | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1632 | MediaPort, HD Encode, HD-SDI Recorder | Greensboro | 9/30/2007 | Omneon | |
| PTNEV1 | 1052 | MediaStore w/ 16.73 SBOD | Greensboro | 9/30/2006 | Omneon | Multi-Rate MPEG |
| PTNEV1 | 1513 | Network Switch, 1 GigE, 48 Ports | Greensboro | 12/31/2006 | Omneon | CNS-1001 |
| PTNEV1 | 1543 | Omneon Video | Greensboro | 12/31/2006 | Omneon | |
| PTNEV1 | 1563 | Spectrum Manager | Greensboro | 9/30/2007 | Omneon | |
| PTNEV1 | 1049 | Software, Transfer Tool | Greensboro | 9/30/2006 | Omneon | Single Seat License |
| PTNEV1 | 1388 | Switch, Network, 1GigE, 48 Ports | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1389 | Switch, Network, 1GigE, 48 Ports | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 1384 | System Manager | Greensboro | 9/30/2006 | Omneon | |
| PTNEV1 | 842 | PHOTOSHOP, ADOBE 6.0 | Greensboro | 4/24/2001 | PANA COMPUTERS | |
| PTNEV1 | 1224 | DA Audio & Video Converter, 10-bit, SDI/Embedded Audio to Component or Composit | Greensboro | 9/30/2006 | Panasonic | |
| PTNEV1 | 1223 | Digital Video Camera | Greensboro | 9/30/2006 | Panasonic | AJA01OCEA |
| PTNEV1 | 1476 | HDP HD-SD/SSI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJ-SD255 DVCPRO |
| PTNEV1 | 1477 | HDP HD-SD/VSI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJAHDP |
| PTNEV1 | 1478 | HDP HD-SDI/SSI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJAHDP |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1479 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1480 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1481 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1482 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1483 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1484 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1485 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1486 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1487 | HDP HD-SDI/SDI to DVI-D & Audio Converter for LCD or Plasma Monitors | Greensboro | 9/30/2006 | Panasonic | AJA-HDP |
| PTNEV1 | 1630 | Chips,14, SDRAM DDR 400for OS+ | Greensboro | 9/30/2007 | PNY | Optima-DTGBPC320PT |
| PTNEV1 | 1070 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1071 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1072 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1073 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1095 | Patchbay, Video | Greensboro | 9/30/2006 | Professional Video Supply | |
| PTNEV1 | 1097 | Display, 46" | Greensboro | 9/30/2006 | Samsung | |
| PTNEV1 | 1453 | Display, 46" | Greensboro | 9/30/2006 | Samsung | 460P |
| PTNEV1 | 1031 | LCD, 32" | Greensboro | 9/30/2006 | Samsung | |
| PTNEV1 | 1519 | LCD, 40" | Greensboro | 12/31/2008 | Samsung | 1080P |
| PTNEV1 | 1458 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1459 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1460 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1461 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1462 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1463 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1468 | Monitor, HD-LCD, 40" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1489 | Monitor, HD-LCD, 57" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1466 | Monitor, HD-LCD, 57" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1467 | Monitor, HD-LCD, 57" | Greensboro | 9/30/2006 | Samsung | 1080P |
| PTNEV1 | 1613 | Raid Backup Storage, News | Greensboro | 9/30/2007 | Seagate | 750GB drive |
| PTNEV1 | 1544 | Computer, Self-Built w ASUS Case | Greensboro | 12/31/2008 | Self-built | NA |
| PTNEV1 | 1545 | Computer, Self-Built w ASUS Case | Greensboro | 12/31/2008 | Self-built | NA |
| PTNEV1 | 1472 | Computer | Greensboro | 9/30/2006 | Self-Built/ASUS | |
| PTNEV1 | 1076 | Toolcase w/ Tools | Greensboro | 9/30/2006 | Sesoo Data Systems | |
| PTNEV1 | 642 | 32 X 1 ROUTER, SIERRA VIDEO SYSTEM | Greensboro | 6/18/1998 | SIERRA VIDEO SYSTEM | |
| PTNEV1 | 637 | MAIN FRAME, SIERRA VIDEO SYSTEM | Greensboro | 2/28/1998 | SIERRA VIDEO SYSTEM | |
| PTNEV1 | 1191 | UPS, Smart, 5000VA | Greensboro | 9/30/2006 | Smart | Su5000RST |
| PTNEV1 | 1192 | UPS, Smart, 5000VA | Greensboro | 9/30/2006 | Smart | Su5000RST |
| PTNEV1 | 1594 | TC Electronics Audio Processor SDI | Greensboro | 9/30/2007 | TCE | Version DB8 |
| PTNEV1 | 1566 | TC Electronics Audio Processor SDI | Greensboro | 9/30/2007 | TCE | Version DB8 |
| PTNEV1 | 1451 | HDSDI | Greensboro | 9/30/2006 | Tefon | V-R70P |
| PTNEV1 | 617 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 618 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 619 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 620 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 621 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 622 | EQUIPMENT RACK, STANTRON | Greensboro | 3/5/1998 | THE WATERFORD GROUP | |
| PTNEV1 | 1210 | Configuration Laptop | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1180 | Configuration Panel | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1181 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |
| PTNEV1 | 1182 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1202 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1203 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-72 |
| PTNEV1 | 1211 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |
| PTNEV1 | 1212 | Control Panel | Greensboro | 9/30/2006 | Utah Scientific | UCP-XY |

| Company | System | Description | Location | Date in Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1057 | DAC Output card | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1506 | Unet Hub | Greensboro | 12/31/2006 | Utah Scientific | 80263-2 |
| PTNEV1 | 1054 | Utah-400 V-64 Frame | Greensboro | 9/30/2006 | Utah Scientific | |
| PTNEV1 | 1454 | Software | Greensboro | 9/30/2006 | Vbrick | 1 yr update |
| PTNEV1 | 1163 | Dual HD/SD Input | Greensboro | 9/30/2006 | Videotek | VTM-4100 |
| PTNEV1 | 1204 | SDI Input Module, Dual HD/SD | Greensboro | 9/30/2006 | Videotek | VTM-4100 |
| PTNEV1 | 1101 | Software, SNMP Alarm Monitoring, Email Notification Configuration Application So | Greensboro | 9/30/2006 | VistaLINK PRO | |
| PTNEV1 | 1059 | Additional Computer System | Greensboro | 9/30/2006 | Vizrt | |
| PTNEV1 | 1077 | Computer, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1078 | Computer, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1090 | Software, NCONTROL Standard Router Software Package | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1489 | Software, SD/HD Viz Trio 3D CG Dual Output Graphics System | Greensboro | 9/30/2006 | Vizrt | VHD-PCG-SD/HD Trio Dual |
| PTNEV1 | 1079 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1080 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1081 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1227 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | SVR-PI-FXPAC |
| PTNEV1 | 1228 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | SVR-PI-FXPAC |
| PTNEV1 | 1490 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | SVR-PI-FXPAC |
| PTNEV1 | 1492 | Software, Viz Image Effects Pac | Greensboro | 9/30/2006 | Vizrt | SVR-PI-FXPAC |
| PTNEV1 | 1229 | Software, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1230 | Software, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1225 | Software, Viz Trio 3D CG Single HD Output Graphics System | Greensboro | 9/30/2006 | VizRT | |
| PTNEV1 | 1228 | Viz Artist Interface | Greensboro | 9/30/2006 | Vizrt | SMArtist-UIC |
| PTNEV1 | 1226 | Viz Trio UI | Greensboro | 9/30/2006 | Vizrt | SMTrio-UIC |
| PTNEV1 | 1441 | Rack, for Studio Computer | Greensboro | 9/30/2006 | Winstead | V8843 |
| PTNEV1 | 922 | 2 TV's | Greensboro | 10/31/2004 | | |
| PTNEV1 | 723 | 6' EQUIPMENT RACK (BLACK) | Greensboro | 6/1/1998 | | |
| PTNEV1 | 906 | Arc Server S/W Upgrade | Greensboro | 7/2/2004 | | |
| PTNEV1 | 1233 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1234 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1237 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1238 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1241 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1242 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1243 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1244 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1250 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1251 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1252 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1255 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1256 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1261 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1262 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1348 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1349 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1350 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1351 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1306 | Chair, Can Can | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1359 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEV1 | 1360 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEV1 | 1361 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEV1 | 1362 | Chair, Cortona Open Arm Guest Chairs | Greensboro | 9/30/2005 | | |
| PTNEV1 | 1264 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1266 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1268 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1270 | Chair, Liberty | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---|---|---|---|---|---|---|
| PTNEV1 | 1272 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1274 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1276 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1278 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1280 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1282 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1284 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1286 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1288 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1290 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1292 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1294 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1295 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1296 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1297 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1298 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1299 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1300 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1301 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1302 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1303 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1315 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1316 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1317 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1318 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1319 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1320 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1321 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1322 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1323 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1324 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1325 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1326 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1327 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1328 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1329 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1330 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1331 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1332 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1339 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1340 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1341 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1342 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1347 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1352 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1353 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1354 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1355 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1357 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1358 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1365 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1366 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1367 | Chair, Liberty | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1232 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1238 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---------|--------|-------------|----------|-----------------|--------------|-------|
| PTNEV1 | 1240 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1254 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1260 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1305 | Chair, Liberty, Mesh Back | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1198 | Computer, Automation Control for Single Control Point | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1245 | Credenza, Filing, Quadrifoglio, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 928 | Dell Notebook | Greensboro | 12/31/2004 | | |
| PTNEV1 | 1231 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1235 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1239 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1253 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1259 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1304 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1345 | Desk, Quadrifoglio, Executive, L-Shape, Wood | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1257 | File Cabinet, Metal, 5 Drawer | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1258 | File Cabinet, Metal, 5 Drawer | Greensboro | 9/30/2006 | | |
| | | Internal Phone Desk Phones (Lot) | Greensboro | | | |
| | | Internal Phone Switch | Greensboro | | | |
| PTNEV1 | 921 | Monitor | Greensboro | 9/30/2004 | | |
| PTNEV1 | 923 | Monitor | Greensboro | 12/16/2004 | | |
| PTNEV1 | 1246 | Quadrifoglio, Round Glass Top Conference Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1061 | Satellite Receiver, Analog, Standard 930B | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1062 | Satellite Receiver, Analog, Standard 930B | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1063 | Satellite Receiver, Digital, Standard 422Ci | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1064 | Satellite Receiver, Digital, Standard 422Ci | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1333 | Sofa, Sway 2 Seat | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1370 | Table Desk, Glass Arced Curved Shape w/ Curved Perforated Metal Modesty Panel | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1346 | Table, Conference, Round Glass Top | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1293 | Table, Conference, Virtu, Arced, Rectangle Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1363 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1394 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1388 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1369 | Table, Cortona Occasional Table | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1334 | Table, Retrospect, Round, Cocktail | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1343 | Table, Vela Round Table 42" | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1344 | Table, Vela Round Table 42" | Greensboro | 9/30/2006 | | |
| PTNEV1 | 916 | Traffic Computers | Greensboro | 10/6/2004 | | |
| PTNEV1 | 924 | Windows and Office Upgrade | Greensboro | 11/1/2004 | | |
| PTNEV1 | 1314 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1247 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1248 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1249 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1263 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1265 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1287 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1269 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1271 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1273 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1275 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1277 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1279 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1281 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1283 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1285 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1287 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |

| Company | System | Description | Location | Date In Service | Manufacturer | Model |
|---------|--------|-------------|----------|-----------------|--------------|-------|
| PTNEV1 | 1289 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1291 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1307 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1308 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1309 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1310 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1311 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1312 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1313 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1335 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1336 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1337 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1338 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 1356 | Workstations, Quadrifoglio, Idea | Greensboro | 9/30/2006 | | |
| PTNEV1 | 926 | Chief Engineer Laptop | San Francisco | 12/22/2004 | | |

## Schedule 3

## Excluded Assets

None.

**Schedule 4.7**

**Litigation**

1. Duffy Stuart (a/k/a Duffy Atkins), Laura Calzada, Wendy Garcia, Pablo Gutierrez. Christopher Hewitt. Robert Kenney, Ted Land, Patrick Thomas, Karoline Wightman, individuals, PLAINTIFFS v. Pappas Telecasting of Nevada, L.P. d/b/a KREN-TV and KAZR-CA, Pappas Telecasting Companies, DEFENDANTS. Breach of contract action brought by nine (9) former employees of Reno stations after news programming was cancelled. Second Judicial District Washoe County, Nevada, 75 Court Street, Reno, NV, 89501. Pending. Case No. CV 08-0772

2. Kahler v. Pappas Telecasting of Nevada (d/b/a KREN). Auto accident claim. Date of accident was May 21, 2007. Employee of defendant rear-ended Danielle Kahler while she was stopped at a stoplight. KREN's employee admitted fault at the Scene of the accident. Second Judicial District Washoe County, Nevada, 75 Court Street, Reno. NV, 89501. Pending. Case No. 200·1043

3. Pappas Telecasting of Nevada. L.P. v. Ian Hill. This was a collection action, where a Judgment was entered in favor of the plaintiff. PTN, for $114,467.54 plus interest, entered December 28, Z007. Case No. CV 07-01068

4. Thomas Lee Adams, Plaintiff v. Pappas Telecasting (d/b/a KREN). Small claims case brought against KREN. Judgment in favor of T. Lee Adams in the amount of $1911.26. Case No. RSC 2008-000481. Judgment amount not paid because of BK.

**Schedule 4.8**

<u>**Taxes**</u>

1.    Tax Audit by the State Of California and the City and County of San Francisco is pending.