**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PAPPAS TELECASTING | ) | Case No. 08-10916 (PJW) |
| INCORPORATED, <u>et al.</u>,[1] | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | Relates To Docket No. 612, 820, *1550* |
|  | ) |  |

**FIRST AMENDED ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002, 4001, 6004, 6006 AND 9014 APPROVING (1) THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (2) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES, AND (3) CERTAIN RELATED RELIEF</u>**

Upon the motion dated November 26, 2008 [Docket No. 612] (the "**Sale Approval**

**Motion**"),[2] of E. Roger Williams, the trustee (the "**Trustee**") of the above-captioned debtors

(collectively, the "**Debtors**") under chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**"), for an order (the "**Sale Approval Order**" or the "**Order**") pursuant to

sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): approving (1) the sale

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are:
Pappas Telecasting Incorporated (2213), Pappas Telecasting of Central California, a California Limited
Partnership (3051); Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903);
Pappas Telecasting of Sioux City, L.P. (2089); Pappas Telecasting of Concord, a California Limited
Partnership (2459); Pappas Telecasting of Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez,
L.P. (2202); Pappas Telecasting of Nevada, L.P. (8024); Pappas Telecasting of Siouxland, LLC (2069);
CASA of Washington, LLC (7196); KMPH (TV) License, LLC (None); KFRE (TV) License, LLC
(None); Concord License, LLC (None); KTNC License, LLC (None); KPTM (TV) License, LLC (None);
WCWG License, LLC (None); KPTH License, LLC (None); KAZH License, LLC (None); KDBC
License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

[2] All capitalized terms used herein, unless otherwise defined herein, shall have the respective meanings
assigned to such terms in the Sale Approval Motion.

PHI 316,394,037v2

of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances and interests of any kind, (2) the assumption by the Debtors and the assignment by the Debtors to the successful bidder(s) at the Auction (as defined herein) of certain executory contracts and unexpired leases relating to the assets, and (3) certain related relief; and the Court having jurisdiction to consider the Sale Approval Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that proper and adequate notice of the Sale Approval Motion has been given and that no other or further notice is necessary; and a hearing in respect of the Sale Approval Motion having been held before the Court on January 13, 2009 (the **"Sale Approval Hearing"**); and the Court having reviewed and considered the Sale Approval Motion and the exhibits thereto, all pleadings relating to the Sale Approval Motion, and the arguments of counsel made, and the evidence proffered and/or adduced, at the Sale Approval Hearing; and it further appearing that the legal and factual bases set forth in the Sale Approval Motion establish just cause for the relief granted herein; and it further appearing that the relief sought in the Sale Approval Motion is in the best interests of the Debtors and their estates; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

### <u>Jurisdiction and Final Order</u>

A.      The Court has jurisdiction over the Sale Approval Motion pursuant to 28 U.S.C. §§ 1334 and 157(a).  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.      The statutory predicates for the relief requested herein are sections 105, 363 and 365 of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006 and 9014 of the Bankruptcy

2

Rules. The proposed sale constitutes a sale of property of the Debtors' estates outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

C.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

### Chapter 11 Case Background

D.     On May 10, 2008 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. Until the appointment of the Trustee, the Debtors continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

E.     Pursuant to an order of this Court entered on May 13, 2008 [Docket No. 43], the Debtors' chapter 11 cases (the "**Chapter 11 Cases**") were procedurally consolidated and are being jointly administered.

F.     On May 20, 2008, the Office of the United States Trustee for the District of Delaware (the "**United States Trustee**") filed a notice [Docket No. 90] appointing an official committee of unsecured creditors (the "**Committee**") in the Chapter 11 Cases.

G.     On August 5, 2008, this Court entered an order [Docket No. 258] directing the United States Trustee to appoint a trustee in the Chapter 11 Cases. On August 14, 2008, the United States Trustee filed a notice [Docket No. 281] with this Court appointing E. Roger Williams as trustee of the Debtors' chapter 11 estates. On August 18, 2008, this Court entered an order [Docket No. 288] approving the appointment of the Trustee.

### Background Specific to the Sale Approval Motion

H.     On October 27, 2008, the Trustee filed a motion [Docket No. 478] (the "**Bidding Procedures Motion**") seeking the entry of an order establishing, among other things, the bidding procedures to govern the sale of substantially all of the Debtors' assets that are the subject of the

PHI 316,394,037v2

Sale Approval Motion. On November 14, 2008, following a hearing before the Court to consider the Bidding Procedures Motion, the Court entered an order [Docket No. 563] (the "**Bidding Procedures Order**") (a) approving the form of the bidding procedures annexed to the Bidding Procedures Order as Exhibit A (the "**Bidding Procedures**"), (b) fixing December 16, 2008 at 2:00 p.m. (prevailing Eastern Time) as the date and time for the Sale Approval Hearing, (c) directing the Trustee to file the Sale Approval Motion no later than November 26, 2008, (d) approving the form of notice of (i) the auction (the "**Auction**") conducted to implement the asset sale contemplated by the Bidding Procedures Motion, (ii) the Bidding Procedures and (iii) the Sale Approval Hearing, (e) fixing December 4, 2008 at 4:00 p.m. (prevailing Eastern Time) as the deadline (the "**Bid Deadline**") for submitting bids for the Assets, or any portion thereof, (f) fixing December 11, 2008, commencing at 11:00 a.m. (prevailing Eastern Time) as the date and time for the Auction, (g) fixing December 12, 2008, at 4:00 p.m. (prevailing Eastern Time) as the deadline (the "**Sale Approval Motion Objection Deadline**") for serving and filing objections to the Sale Approval Motion, (h) fixing 4:00 p.m. (prevailing Eastern Time) on December 12, 2008[3] as the deadline (the "**Cure Amount Objection Deadline**") for non-Debtor counterparties (each a "**Counterparty**" and collectively, the "**Counterparties**") to the Acquired Contracts and Acquired Leases (each as defined in the Fortress APA) to file and serve their respective objections (collectively, the "**Cure Amount Objections**" and individually, a "**Cure Amount Objection**"), if any, to the Seller's Proposed Cure Amounts for the Acquired Contracts and the Acquired Leases, (i) fixing 12:00 p.m. Noon (prevailing Eastern Time) on December 15, 2008 as the deadline (the "**Adequate Assurance Objection Deadline**" and together with the Sale

---

[3] The Bidding Procedures Order provides that the deadline for the Counterparties to file and serve their respective objections, if any, to the Seller's Proposed Cure Amounts for the Acquired Contracts and the Acquired Leases shall be the later of (x) 4:00 p.m. (prevailing Eastern Time) on December 12, 2008 and (y) seven (7) days after the Seller files and serves the Sale Approval Motion. The Sale Approval Motion having been filed on November 26, 2008, December 12, 2008 at 4:00 p.m. (prevailing Eastern Time) is the applicable deadline.

4

Approval Motion Objection Deadline and the Cure Amount Objection Deadline, the "**Sale Deadlines**") for Counterparties to file and serve their respective objections, if any, to the proposed form(s) of "adequate assurance of future performance" to be provided by the Successful Bidder(s) and/or Backup Bidder(s) with respect to the applicable Acquired Contracts and Acquired Leases to be assumed by the Debtors and assigned to the Successful Bidder, and (j) providing certain other relief.

I.      Subsequent to the entry of, and as permitted by, the Bidding Procedures Order, the Auction was rescheduled for December 12, 2008 at 3:00 p.m. (prevailing Eastern Time), the Bid Deadline was extended to December 12, 2008 at 2:00 p.m. (prevailing Eastern Time), the Cure Amount Objection Deadline was extended to December 15, 2008 at 4:00 p.m. (prevailing Eastern Time), and the Sale Approval Hearing was continued to December 22, 2008 at 11:00 a.m. (prevailing Eastern Time) and then to January 5, 2009 at 2:00 p.m. (prevailing Eastern Time). Notice of each such rescheduling, extension and continuance was timely filed with this Court. The Sale Approval Hearing subsequently was continued until January 13, 2009 at 10:30 a.m. (prevailing Eastern Time), and notice of such rescheduling was previously filed with the Court.

J.      The Trustee conducted the Auction on December 12, 2008 in accordance with the Bidding Procedures Order. At the conclusion of the Auction, the Trustee selected the Qualified Bid submitted by New World TV Group, LLC (together with its successors and assigns, the "**Successful Bidder**"), the nominee of the Pre-Petition Agent, as the Successful Bid. The Successful Bid is evidenced by that certain Asset Purchase Agreement (together with all documents and agreements ancillary thereto and executed in connection therewith, including, without limitation, the Local Marketing Agreement (as defined herein), the "**Fortress APA**"),

dated as of December 12, 2008, executed by the Successful Bidder and the Debtors party thereto (collectively, the "**Seller**"), a copy of which (excluding the schedules thereto, which schedules shall be filed separately following the entry of this Order) is annexed hereto as **Exhibit A**. The Fortress APA embodies, among other things, (a) a credit bid (the "**Credit Bid**") for the Acquired Assets (as defined in the Fortress APA) in the amount of $260,000,000 (the "**Successful Bid Amount**"), (b) the agreement by the Seller to assume and assign to the Successful Bidder the Acquired Contracts and the Acquired Leases identified on schedules annexed to the Fortress APA, and (c) the agreement by the Seller and the Successful Bidder to enter into the "Local Marketing Agreement" in the form annexed to the Fortress APA as Exhibit G (the "**Local Marketing Agreement**") immediately upon entry of this Order for the purpose of providing for the management and operation of the Television Stations pending issuance of the FCC Consent (as defined herein).

K.    On December 15, 2008, in accordance with the Bidding Procedures Order, the Trustee filed with the Court a notice (the "**Notice of Auction Results**") (Docket No. 699) that, among other things, identified the Successful Bidder for the Television Stations that are the subject of the Successful Bid, and the Successful Bid Amount. Also, on December 15, 2008, in accordance with the Bidding Procedures Order, the Trustee caused the Notice of Auction Results to be posted on the website of the Debtors' claims agent, Administar Services Group, LLC, www.administarllc.com.

### Pre-Petition Agent's Credit Bid

L.    The Bidding Procedures Order provides that, subject to the rights of the Trustee, the Committee and other parties in interest under paragraph 30 of the Financing Order [Docket No. 355], as amended by that certain *Fourth Consent Order And Stipulation By And Among The*

*Official Committee of Unsecured Creditors, Fortress Credit Corp as Administrative Agent and Facility Agent, Harry J. Pappas And Stella Pappas, And E. Roger Williams As The Chapter 11 Trustee, Extending Certain Deadlines* entered by the Court on January 12, 2009 [Docket No. 812] (the **"Fourth Consent Order"**), the Assets are subject to a valid, duly perfected, first-priority, non-avoidable lien held by the Pre-Petition Agent (for the benefit of the Pre-Petition Lenders) as security for the Fortress Claim, which, as of the Petition Date, is in the unpaid amount of $329,073,933.03 (the **"Fortress Claim Amount"**).[4] The Bidding Procedures Order further provides, among other things, that, for all purposes relating to the Bidding Procedures, the Auction and the Sale Approval Hearing, and subject to the rights of the Trustee, the Committee and other parties in interest under paragraph 30 of the Financing Order, as amended by the Fourth Consent Order, the Fortress Claim shall be deemed allowed, and the Pre-Petition Agent, or its nominee, shall be permitted to submit a credit bid pursuant to section 363(k) of the Bankruptcy Code for one or more (including all) of the Television Stations (together with their respective Broadcast Assets and the Acquired Contracts and the Acquired Leases).

M.      The Credit Bid was authorized and was proper in all respects pursuant to the provisions of the Bidding Procedures Order and section 363(k) of the Bankruptcy Code.

### Notice

N.      Proper and timely notice of the Bidding Procedures Order, the Auction, the Bidding Procedures, the Sale Approval Motion, the Sale Deadlines and the Sale Approval Hearing was provided to all parties entitled thereto in the manner and otherwise in accordance with the Bidding Procedures Order, the Bankruptcy Rules and the Bankruptcy Code, as evidenced by the notices, affidavits and certificates of service and publication filed with this

---

[4] The Pre-Petition Agent is holding the sum of $15,000,000 that was paid to the Pre-Petition Agent prior to the Petition Date by certain of the Debtors; that sum has not yet been applied against the Fortress Claim.

PHI 316,394,037v2

Court. Such notice constitutes good and sufficient notice of the Bidding Procedures Order, the Auction, the Bidding Procedures, the Sale Approval Motion, the Sale Deadlines and the Sale Approval Hearing in view of all relevant circumstances, and no other or further notice of such matters is or shall be required.

O.     The Trustee has afforded a reasonable and sufficient opportunity to object or be heard with respect to the relief requested in the Sale Approval Motion to all interested persons and entities by causing (w) a conformed copy of the Bidding Procedures Order, (x) the Bidding Procedures, (y) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B, and (z) a copy of the Sale Approval Motion (including the exhibits thereto) to be sent by first-class mail, postage prepaid, to, (i) the United States Trustee, (ii) counsel to the Committee, (iii) all creditors and equity security holders identified in the list of creditors and equity security holders heretofore filed herein with the Court by the Debtors, (iv) any party asserting a lien a against all or any portion of the Assets, (v) all parties, or their counsel, who have, in writing, expressed an interest in or submitted written offers to the Debtors, Moelis or the Trustee for the Assets, or any portion thereof, (vi) the Internal Revenue Service, (vii) the FCC, (viii) all federal, state and local regulatory and taxing authorities that have a known interest in the relief requested in the Sale Approval Motion, (ix) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (x) all counterparties to those Acquired Contracts and Acquired Leases that may be assumed and assigned as part of the transactions contemplated by the Sale Approval Motion, (xi) the Attorney General's Office for the States of Delaware, California, Washington, Texas, Nebraska, Iowa and North Carolina, respectively, (xii) the United States Securities and Exchange Commission, (xiii) the United States Attorney's Office for the States of Delaware,

California, Washington, Texas, Nebraska, Iowa and North Carolina, respectively, (xiv) counsel to the Pre-Petition Agent, and (xv) counsel to certain of the Pre-Petition Lenders (all such parties, collectively, the "**Notice Parties**"). In light of the circumstances, the foregoing notice to the Notice Parties was reasonably calculated to provide timely, adequate and sufficient notice to the Debtors' major creditor constituencies, those parties most interested in the Chapter 11 Cases, and those parties that potentially were interested in bidding on the Assets of relevant information concerning the Auction, the Bidding Procedures and the Sale Approval Hearing.

P.      The Trustee caused notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B to be published in the national edition of *The Wall Street Journal* on or before seven (7) days prior to the Bid Deadline, as authorized in the Bidding Procedures Order.

## Power and Authority of Trustee to Execute the Fortress APA and Consummate the Sale

Q.      The Fortress APA was executed on behalf of the Debtors by the Trustee. The Trustee is duly authorized to execute the Fortress APA on behalf of the Debtors and take and perform any and all acts and actions that are necessary to effectuate and consummate the transactions contemplated therein, including, without limitation executing and delivering to the Successful Bidder the Local Marketing Agreement.

R.      Subject to (x) the entry of this Sale Approval Order, and (y) the consent of the FCC (the "**FCC Consent**") to the transfer of the Licenses (as defined in the Fortress APA), (1) the Trustee has full requisite power and authority (a) to execute the Fortress APA and all other documents contemplated thereby, including, without limitation, the Local Marketing Agreement, and (b) to consummate the transactions contemplated by the Fortress APA on behalf of the Debtors, and (2) the Fortress APA, and all of the transactions and documents contemplated thereby, including, without limitation, the Local Marketing Agreement, have been duly and

PHI 316,394,037v2

validly authorized by all necessary action on the part of the Debtors. No further consents or approvals, other than those expressly provided for under the Fortress APA, are required for the Trustee to consummate the transactions contemplated by the Fortress APA.

**Trustee's Business Judgment and Justification for the Sale to the Successful Bidder**

S.    The sale of the Acquired Assets to the Successful Bidder in accordance with the terms and conditions set forth in the Fortress APA reflects the sound exercise of the Trustee's business judgment consistent with his fiduciary duties.

T.    Approval of the Fortress APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their estates, and parties in interest in the Chapter 11 Cases. The Trustee has demonstrated both (i) good and sufficient business purpose and justification and (ii) compelling circumstances for consummating the transactions contemplated by the Fortress APA outside of a plan of reorganization have been established, in that, among other things:

    1.    The Trustee has concluded that, due to the recent (and continuing) unprecedented turmoil and seizing up in the financial and capital markets and the concomitant curtailment of lending by providers of capital, the Debtors lack the ability to avail themselves of the capital markets as a means of addressing their liquidity constraints. Therefore, the Trustee, in the sound exercise of his business judgment, has determined that (i) a stand-alone business plan is not feasible, and (ii) unless the sale of the Acquired Assets to the Successful Bidder is concluded expeditiously as provided for in the Fortress APA, the value of the Acquired Assets may decline, and the Debtors, their estates and their creditors ultimately may realize less value for the Acquired Assets.

    2.    As demonstrated by the evidence presented in support of the Sale Approval Motion at the Sale Approval Hearing, the Trustee himself and through his retained professionals diligently, extensively and in good faith marketed the Acquired Assets to secure the highest and best offer therefor. In addition, on November 14, 2008, the Trustee mailed (a) a conformed copy of the Bidding Procedures Order, (b) the Bidding Procedures, and (c) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B, and on November 26, 2008, the Trustee mailed a copy of the Sale Approval Motion (including the exhibits thereto), in each case to, among other parties, all parties who have delivered to the Debtors during 2008 written expressions of interest in acquiring, or offers to acquire, all or a portion of the Acquired Assets. The Trustee also

10

caused a notice substantially in the form of Exhibit B to the Bidding Procedures Order to be published in the national edition of *The Wall Street Journal*.

3. The sale of the Acquired Assets at this time to the Successful Bidder pursuant to sections 105, 363(b), 363(k) and 365 of the Bankruptcy Code is the only viable alternative to preserve the value of the Acquired Assets and maximize the Debtors' estates for the benefit of all constituencies.

4. No Qualified Bid for the entirety of the Acquired Assets, other than the Successful Bid embodied in the Fortress APA, was submitted by the Bid Deadline (as defined in the Bidding Procedures Order) or otherwise at or before the Auction.

## The Fortress APA Constitutes the Highest and Best Offer for the Acquired Assets

U. The Trustee conducted an auction process in accordance with, and has otherwise complied in all material respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make an initial offer and, thereafter, a higher or otherwise better offer to purchase the Acquired Assets or any portion thereof. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.

V. The terms and conditions of the Fortress APA (i) are fair and reasonable, (ii) represent the highest and best offer for the Acquired Assets obtainable in the marketplace, (iii) will provide a greater recovery for the Debtors' estates than would be provided by any other practical, available alternative, and (iv) constitute reasonably equivalent value and fair consideration under applicable fraudulent transfer and fraudulent conveyance law, including, without limitation, sections 544 and 548 of the Bankruptcy Code. The terms and conditions set forth in the Fortress APA constitute the highest and best offer for the Acquired Assets.

W. The Trustee's determination that the Fortress APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Trustee's business judgment consistent with his fiduciary duty. The Committee, having been consulted by the Trustee, concurs with the Trustee's exercise of his business judgment.

11

X.     Approval of the Sale Approval Motion and the Fortress APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, and their estates.

### Good Faith and Non-Collusive Sale

Y.     The Fortress APA was negotiated, proposed and entered into by the Seller and the Successful Bidder without collusion, in good faith, and from arm's length bargaining positions. In all respects, the Successful Bidder has acted in good faith in purchasing the Acquired Assets, in that: (a) the Successful Bidder recognized that the Trustee was free to deal with any other party interested in acquiring the Acquired Assets, or any portion thereof; (b) the Successful Bidder complied with the provisions in the Bidding Procedures Order applicable to it; (c) the Credit Bid made by the Successful Bidder pursuant to the Fortress APA, and all other agreements made by the Successful Bidder and the Seller under the Fortress APA, have been disclosed fully; and (d) the Successful Bidder has not violated the provisions of section 363(n) of the Bankruptcy Code by any action or inaction. Therefore, the Successful Bidder is entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

Z.     Neither the Trustee nor the Successful Bidder has engaged in any conduct, whether by commission or omission, that would cause or permit the Fortress APA and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

### Transfer and Assignment of the Acquired Assets Free and Clear of Liens, Claims, Interests and Encumbrances

AA.     The conditions set forth in section 363(f) of the Bankruptcy Code have been satisfied in full. Accordingly, the transfer and assignment of the Acquired Assets by the Seller to the Successful Bidder pursuant to the Fortress APA constitutes a legal, valid and effective transfer and assignment to the Successful Bidder of, and except as provided in the Fortress APA,

shall vest the Successful Bidder with, all right, title, privilege and interest of the Debtors and the Trustee in, to and under the Acquired Assets, free and clear of all Liens, Claims, Interests and Encumbrances (each term as defined in the Fortress APA, and collectively, the "**Interests**"), other than Permitted Encumbrances and Permitted Exceptions (each term as defined in the Fortress APA), under the provisions of sections 363(b) and 363(f) of the Bankruptcy Code.

BB.    With respect to any and all entities and persons asserting any Interests in and to the Acquired Assets (including, without limitation, Interests asserted by any taxing authorities or other Governmental Authority (as defined in the Fortress APA)), either (i) applicable non-bankruptcy law permits the sale of the Acquired Assets free and clear of such Interests, (ii) such person or entity has consented, or, in the absence of an objection filed by such person or entity to the Sale Approval Motion, is deemed to have consented, to the sale of the Acquired Assets free and clear of such Interests, (iii) such Interest is in bona fide dispute, or (iv) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interests.

CC.    Except as provided in the Fortress APA or this Sale Approval Order with respect to Permitted Encumbrances and Permitted Exceptions, consummation of the transactions contemplated by the Fortress APA does not and will not subject the Successful Bidder to any Interests, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person or entity by reason of such transfer and assignment under the laws of the United States, any state, territory or possession applicable to such transactions.

### Assumption and Assignment of Executory Contracts and Unexpired Leases

DD.    The Trustee has demonstrated that (i) it is a sound and prudent exercise of his business judgment to cause the Debtors to assume, subject to, at the time of and effective upon the Closing, the Acquired Contracts and the Acquired Leases and assign the Acquired Contracts

13

and the Acquired Leases to the Successful Bidder in connection with the consummation of the

transactions contemplated by, and to the extent required by, the Fortress APA, (ii) the

assumption and assignment of the Acquired Contracts and the Acquired Leases are an integral

and inseparable component of the transactions contemplated by the Fortress APA and, as such,

enhance the value of the Debtors' estates and are in the best interests of the Debtors, their estates

and their creditors.

      EE.    Annexed hereto as **Exhibit B**[5] is a list (the "**Cure Amount List**") that (a)

identifies for each Acquired Contract and Acquired Lease with respect to which no Cure Amount

Objection was filed (or, if such an objection was filed, the Trustee and the applicable

Counterparty have resolved such objection) the title and date of, and the parties to, such

Acquired Contract and Acquired Lease and (b) sets forth the dollar amount (the "**Cure**

**Amount**"), if any, that is necessary to be paid by the Seller in order to cure all defaults, if any,

under such agreement. The payment of the Cure Amount (as set forth in the Cure Amount List

annexed hereto as **Exhibit B** and in any Cure Amount Notice (as defined herein)) will be

sufficient in all respects (i) to cure any and all defaults, if any, existing prior to the date hereof

under the Acquired Contracts and the Acquired Leases that are being assumed and assigned by

the Debtors to the Successful Bidder, within the meaning of section 365(b)(1)(A) of the

Bankruptcy Code, and (ii) to provide to the applicable Counterparty to each Acquired Contract

and Acquired Lease compensation or adequate assurance of compensation for any actual

pecuniary loss to such Counterparty resulting from a default prior to the date hereof under the

Acquired Contract or the Acquired Lease to which it is a party, within the meaning of

section 365(b)(1)(B) of the Bankruptcy Code. The Acquired Contracts and the Acquired Leases

---

[5] **Exhibit B** to this Order shall be filed separately following the entry of this Order.

that are identified on Exhibit B are collectively referred to herein as the "**Exhibit B Agreements**."

FF.     Annexed hereto as **Exhibit C** is a list that identifies (i) each Counterparty who filed with the Court a Cure Amount Objection with respect to which the Trustee and such Counterparty have not yet reached a resolution, (ii) the applicable Acquired Contract or Acquired Lease to which the Cure Amount Objection relates, and (iii) the applicable docket number assigned to each such objection. The cure amounts that relate to the Acquired Contracts and the Acquired Leases identified on **Exhibit C** annexed hereto are referred to collectively as the "**Unresolved Cure Amounts**." The Acquired Contracts and the Acquired Leases that are identified on Exhibit C are collectively referred to as the "**Exhibit C Agreements**."

GG.     The Successful Bidder has provided adequate assurance of its future performance with respect to the Acquired Contracts and the Acquired Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## Miscellaneous

HH.     The Successful Bidder is not a successor to the Debtors or their estates with respect to the Acquired Business or otherwise. Without limiting the generality of the foregoing, the transactions contemplated by the Fortress APA do not constitute a consolidation, merger or de facto merger of the Successful Bidder and the Debtors.

II.     The relief requested in the Sale Approval Motion is in the best interests of the Debtors, their estates, and parties in interest.

JJ.     All findings of fact announced by the Court at the Sale Approval Hearing are hereby incorporated into this Sale Approval Order as if fully set forth herein.

KK.     For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to one or more individuals a policy

15

prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

LL.     This Order amends the *Order Granting Trustee's Motion for an Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014 Approving (1) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (3) Certain Related Relief* entered by the Court on January 13, 2008 [Docket No. 820] (the "**Original Sale Order**") and makes ministerial changes to the Original Sale Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The findings of fact and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2.     The relief requested in the Sale Approval Motion is granted as set forth herein, and the transactions contemplated under the Fortress APA are hereby approved.

3.     Except as otherwise expressly provided herein, all objections, if any, to the Sale Approval Motion or the relief requested therein that have not been withdrawn, waived, resolved or settled, as announced to the Court at the Sale Approval Hearing or by stipulation filed with the Court, and all reservations of rights set forth therein, are hereby overruled on the merits.

16

## Authorization to Execute, and Approval of, the Fortress APA

4.     The terms and conditions of the Fortress APA are authorized and approved in all respects pursuant to sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(a), 365(b), and 365(f) of the Bankruptcy Code.

5.     The form and substance of the Fortress APA, including, without limitation, the Local Marketing Agreement, hereby are approved in all respects.  Pursuant to section 363(b) of the Bankruptcy Code, the execution of the Fortress APA on behalf of the Debtors by the Trustee, hereby is ratified and approved, and the Trustee is authorized to deliver the executed Fortress APA to the Successful Bidder.  The Trustee hereby is authorized, directed and empowered to cause the Seller to execute and deliver to the Successful Bidder all other agreements and documents ancillary to and contemplated by the Fortress APA, including, without limitation, the Local Marketing Agreement, and to cause the Seller to implement and consummate all of the transactions and perform all of his duties and obligations set forth in the Fortress APA, and take all further actions as reasonably may be requested by the Successful Bidder for the purpose of assigning, transferring, granting, conveying and conferring to the Successful Bidder or reducing to Successful Bidder's possession any or all of the Acquired Assets, or as may be necessary or appropriate to the performance of the Seller's obligations as contemplated by the Fortress APA.

## Transfer of the Acquired Assets

6.     Except as provided in the Fortress APA, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, effective upon the consummation of the transactions contemplated by the Fortress APA, the Acquired Assets shall be transferred and assigned to the Successful Bidder, and the Successful Bidder shall take title to and possession of the Acquired Assets, free and clear of any and all Interests, other than the Permitted Encumbrances and the Permitted Exceptions. The transfer of the Acquired Assets to the Successful Bidder pursuant to the this Order and the

17

Fortress APA constitutes a legal, valid and effective transfer of the Acquired Assets and shall vest the Successful Bidder with all right, title, and interest of the Trustee and the Debtors in and to all Acquired Assets free and clear of all Interests (other than Permitted Encumbrances and Permitted Exceptions).

7.    Except as expressly permitted or otherwise specifically provided by the Fortress APA or this Sale Approval Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests (other than Permitted Encumbrances and Permitted Exceptions) against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing Date (as defined in the Fortress APA), as applicable, or the transfer of the Acquired Assets to the Successful Bidder, hereby are forever barred, estopped, and permanently enjoined from asserting against the Successful Bidder or its successors or assigns, their property, or the Acquired Assets, such persons' or entities' respective Interests.

8.    All persons and entities, including, without limitation, the Debtors and their non-Debtor affiliates, that have custody, possession and/or control of some or all of the Acquired Assets on the Closing Date are directed to surrender custody, possession and control of such Acquired Assets to the Successful Bidder or its assignee at the Closing (as defined in the Fortress APA). Nothing in this Order or in the Fortress APA shall be construed to transfer to the Successful Bidder title to assets that are not owned by one or more of the Sellers.

18

9.      Notwithstanding anything in this Order to the contrary, no assignment of any rights and interests of the Debtors in any FCC license shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority, including imposing any regulatory conditions and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

### Assumption and Assignment of Assumed Executory Contracts

10.     The Debtors or the Trustee, as applicable, hereby are authorized and directed, pursuant to sections 365(a), 365(b) and 365(f) of the Bankruptcy Code, to (i) assume the Exhibit B Agreements and assign the Exhibit B Agreements to the Successful Bidder, subject to, at the time of and effective upon the Closing, free and clear of any and all Interests (other than Permitted Encumbrances and Permitted Exceptions), and (ii) execute and deliver to the Successful Bidder such documents or other instruments as may be necessary to transfer and assign to the Successful Bidder, and cause the Successful Bidder to assume, the Exhibit B Agreements. For the avoidance of doubt, no Contract (as defined in the Fortress APA) that constitutes an Excluded Asset (as defined in the Fortress APA) under the Fortress APA shall be assumed and assigned pursuant to the provisions of this Order.

11.     The Exhibit B Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder in accordance with their respective terms, notwithstanding any provision in any such Exhibit B Agreements (including those of the type described in section 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested with all right, title,

19

privilege and interest of the relevant Debtor in, to and under the applicable Exhibit B Agreements.

12.     Pursuant to the terms of the Fortress APA and consistent with the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, the Debtors hereby are authorized and directed to pay, at the Closing, or as soon thereafter as is practicable or as otherwise ordered by the Court, the Cure Amounts, if any, set forth in (a) the Cure Amount List attached as **Exhibit B** hereto, and (b) each and every Cure Amount Notice (as defined herein), with respect to each Acquired Contract and Acquired Lease that is assumed and assigned to the Successful Bidder pursuant to the Fortress APA, and, upon such payment, all defaults of the Debtors under such Acquired Contracts and Acquired Leases existing prior to the date of this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed in all respects cured by the Debtors, and the Successful Bidder shall have no liability or obligation in respect of such defaults (including, without limitation, any liability to compensate a Counterparty for any actual pecuniary loss to such Counterparty resulting from such defaults), except as otherwise expressly may be agreed between the Successful Bidder and such Counterparty.

13.     Without further order of this Court, following the entry of this Order, the Trustee shall be authorized to reach agreement with the Counterparties that are identified on **Exhibit C** annexed hereto concerning the applicable Unresolved Cure Amounts relating to the Acquired Contracts and the Acquired Leases identified on **Exhibit C**.  Promptly after reaching such agreement, the Trustee shall file with this Court a notice (a **"Cure Amount Notice"**) of such agreement that identifies the particular Exhibit C Agreement that is the subject of such agreement, the name of the Counterparty to such Exhibit C Agreement, and the dollar amount of

20

the Cure Amount to which the parties agreed. Upon the filing of a Cure Amount Notice with respect to an Exhibit C Agreement, such Exhibit C Agreement, without further order of the Court, shall be deemed to be, and shall be treated as, an Exhibit B Agreement for all applicable purposes under this Order (including, without limitation, paragraphs 10, 11 and 12 of this Order) as though such Exhibit C Agreement had been listed on Exhibit B *ab initio*. In the event that, within sixty (60) days after the entry of this Order, the Trustee is unable to reach such agreement with one or more Counterparties to an Exhibit C Agreement, the Trustee shall file motion papers with this Court seeking adjudication of the proper Cure Amount(s) and any other issue affecting the right of the Debtors to assume and assign to the Successful Bidder the relevant Exhibit C Agreement(s). Pending resolution of a Cure Amount Objection (either by the filing by the Trustee of a Cure Amount Notice or by further order of this Court), the rights of each Counterparty that has filed a Cure Amount Objection that has not been withdrawn, waived, resolved or settled, as announced to the Court at the Sale Approval Hearing or by stipulation filed with the Court, shall be preserved with respect to the issue of cure raised in its Cure Amount Objection.

14. Upon payment of the Cure Amounts, if any, set forth in the Cure Amount List attached hereto as **Exhibit B** and in the Cure Amount Notices that may be filed with respect to the Counterparties and their respective Exhibit C Agreements listed on **Exhibit C** annexed hereto (in each case only with respect to the Acquired Contracts and the Acquired Leases that are assumed and assigned to the Successful Bidder pursuant to the Fortress APA), each Counterparty to such Acquired Contract or Acquired Lease hereby shall be forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Trustee, the Successful Bidder, or the property of any of them, any default or claim of breach arising under such Acquired Contract

21

or Acquired Lease and existing as of the date of the this Order or, against the Successful Bidder, any counterclaim, defense, setoff, recoupment or any other claim asserted or assertable against the Debtors, their estates or the Trustee.

15.     Upon the Closing and the payment of the relevant Cure Amounts by the Debtors, the Successful Bidder shall be deemed to be substituted for each relevant Debtor as a party to the applicable Acquired Contracts and Acquired Leases, and the Debtors and their estates shall be relieved from any liability for breach of such Acquired Contracts or Acquired Leases occurring after the Closing Date.  The failure of the Debtors, the Trustee, or the Successful Bidder to enforce at any time one or more terms or conditions of any Acquired Contract or Acquired Lease shall not be a waiver of such terms or conditions or of the right of the Debtors, the Trustee, or the Successful Bidder, as the case may be, to enforce every term and condition of the Acquired Contracts and the Acquired Leases.

16.     The Successful Bidder has provided adequate assurance of its future performance under the relevant Acquired Contracts and the Acquired Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

17.     Notwithstanding any other provision in this Order, but subject to the provisions of this paragraph 17, any licenses, authorizations, contracts, agreements or other interests of the United States of America (the "**Federal Government**") in which one or more of the Debtors has an interest (collectively, the "**Government Contracts**") shall be treated, determined and administered in the ordinary course of business as if the Chapter 11 Cases were never filed, and the Debtors, the Trustee and the Successful Bidder shall comply with all applicable non-bankruptcy law, federal regulations and statutes, as well as the provisions of the Government Contracts.  Subject to their compliance with applicable non-bankruptcy law, federal regulations

22

and statutes and the provisions of the Government Contracts, the Debtors and the Trustee shall enjoy the full rights, benefits and privileges of the Government Contracts pending the Closing Date. The Successful Bidder shall provide the Federal Government no less than thirty-two (32) days' written notice[6] of the anticipated Closing Date and, unless the Federal Government shall provide the Trustee and the Successful Bidder with written notice within thirty (30) days thereafter that the Federal Government does not consent to the assumption by the Debtors and the assignment to the Successful Bidder of a particular Government Contract, all Government Contracts shall be assumed by the Debtors and assigned to the Successful Bidder at the Closing without the need for further order of this Court. Nothing in this Order shall be interpreted to set Cure Amounts for any of the Government Contracts or affect the rights of the Federal Government or the Successful Bidder and/or the Debtors to offset or recoup any amounts due under, or relating to, any Government Contract, which rights are expressly preserved. Further, nothing in this Order shall be interpreted to prevent the Trustee from rejecting one or more Government Contracts pursuant to section 365 of the Bankruptcy Code on or prior to the Closing Date.

### Satisfaction, Termination and Release of Interests in the Acquired Assets

18.     If any person or entity that holds an Interest in or against the Acquired Assets (or any portion thereof) that is evidenced by a financing statement, mortgage, mechanic's liens, *lis pendens*, or other document or instrument filed or recorded in a governmental office established for filing and recording such documents shall not have delivered to the Trustee or the Successful Bidder prior to the Closing, in proper form for filing or recording (as the case may be) and

---

[6] In addition to any other notice to the Federal Government required under the applicable Government Contracts, the Successful Bidder shall provide the written notice contemplated by the accompanying text by overnight delivery service, or by hand, to: Ellen Slights, United States Attorney's Office, 1007 Orange Street, Suite 700, P. O. Box 2046, Wilmington, Delaware 19899; and John Stemplewicz, U.S. Department of Justice, 1100 L Street, N.W., Room 10052, Washington D.C. 20530.

23

executed and witnessed by the appropriate parties, termination statements, instruments of

satisfaction, or releases of such Interests that such person or entity holds with respect to the

Acquired Assets, then (i) each of the Debtors (or the Trustee, on behalf of such Debtor) and the

Successful Bidder hereby is authorized to execute and file or record such statements,

instruments, releases and other documents on behalf of the Successful Bidder, and (ii) the

Successful Bidder hereby is authorized to file, register or otherwise record a certified copy of this

Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence

of the satisfaction, termination and release of all Interests against or in the Acquired Assets other

than the Permitted Liens and the Permitted Exceptions; *provided, however*, notwithstanding the

foregoing, for purposes of filing, registering or recording a certified copy of this Order in a

governmental office established for filing, registering or recording Interests on land records, the

certified copy of this Order may be filed, registered or recorded with the same effect if it is not

accompanied by Exhibits A, B and C annexed hereto, but, rather, is accompanied by a schedule,

in the form annexed hereto as **Schedule 1**, that sets forth a description of the parcels of land that

are affected by this Order.

19.     This Order is and shall be (i) effective as a determination that, effective on the

Closing Date, (a) all Interests (other than the Permitted Encumbrances and the Permitted

Exceptions) affecting the Acquired Assets prior to the Closing Date, unconditionally have been

released, discharged and terminated, and (b) the transfer and assignment of the Acquired Assets

has been effected, and (ii) binding upon and govern the acts of all persons and entities, including,

without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other

intellectual property, administrative agencies, governmental departments, secretaries of state,

federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing or recording any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Fortress APA.

20.     Other than with respect to the Permitted Encumbrances, the Permitted Exceptions, and the Assumed Liabilities (as defined in the Fortress APA), (i) the Successful Bidder shall not have any liability or responsibility for any obligation of or claim against the Trustee or the Debtors related to the Acquired Assets arising prior to the Closing Date, (ii) under no circumstances shall the Successful Bidder be deemed a successor of or to the Debtors for purposes of any Interest against or in the Trustee or the Debtors or the Acquired Assets, (iii) the Successful Bidder shall not be liable for any claims against the Debtors or the Trustee or any of their predecessors or affiliates, and the Successful Bidder shall not have any successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors or the Trustee arising prior to the Closing Date, and (iv) following the Closing Date, no holder of an Interest against or in the Debtors or the Acquired Assets shall interfere with the Successful Bidder's title to, or use and enjoyment of, the Acquired Assets based on or related to such Interest or any actions that the Debtors or the Trustee may take in the Chapter 11 Cases.

**Further Assurances**

21.     The Debtors, and the Trustee, on behalf of the Debtors, hereby are authorized to take all such actions and execute and deliver to the Successful Bidder such other and further agreements and documents as shall be necessary to consummate and give effect to the Fortress APA and the transactions contemplated thereby without further order of the Court.

### Retained Jurisdiction

22.     The Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Fortress APA, any amendments thereto authorized by this Order, any waivers and consents thereunder, and each of the agreements, documents and instruments ancillary thereto and executed in connection therewith, including, without limitation, the Local Marketing Agreement, (ii) to compel delivery of the Acquired Assets to the Successful Bidder, (iii) to resolve any disputes, controversies or claims arising out of or relating to the Fortress APA, and (iv) to interpret, implement and enforce the provisions of this Order.

### Sections 363(m) and 363(n)

23.     The Successful Bidder is a good faith purchaser of the Acquired Assets. Accordingly, in the absence of a stay pending appeal, the Successful Bidder shall be entitled to the protections of Section 363(m) of the Bankruptcy Code with respect to the transactions contemplated by the Fortress APA if this Order or any authorization contained herein is reversed or modified on appeal.

24.     The transactions provided for in the Fortress APA may not be avoided under section 363(n) of the Bankruptcy Code.

### Additional Provisions

25.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Fortress APA and the provisions of this Order.

26

26. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Fortress APA, the Debtors or the Successful Bidder or affect or give rise to any claim against the Acquired Assets.

27. The Successful Bid Amount shall be applied and credited against the Fortress Claim Amount upon the occurrence of the Closing.

28. The terms and provisions of the Fortress APA, together with the terms and provisions of this Order, shall be binding in all respects upon the Trustee, the Debtors, their estates, their creditors and equity interest holders, any holders of Interests in the Acquired Assets, all non-Debtor parties to the Acquired Contracts and the Acquired Leases, respectively, the Successful Bidder and the respective affiliates, successors and assigns of the foregoing entities and persons, any affected third parties, persons and entities asserting a claim against or interest in the Debtors' estates or any of the Acquired Assets, and any trustees hereafter appointed in the Chapter 11 Cases or upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. This Order and the Fortress APA shall inure to the benefit of the Debtors, their estates, their creditors, the Successful Bidder and their respective successors and assigns.

29. The failure specifically to include in this Order any particular provisions of the Fortress APA, or any document or agreement ancillary thereto (including, without limitation, the Local Marketing Agreement), shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Fortress APA and the transactions contemplated thereby be authorized and approved in their entirety and performed in accordance with their terms.

30. The Fortress APA and any related agreements, documents or other instruments, including, without limitation, the Bill of Sale and Assignment, the Assumption Agreement, the

Lease Assignment (each term as defined in the Fortress APA), and the Local Marketing Agreement, may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; *provided, however*, that any such modification, amendment or supplement has no materially adverse effect on the Debtors' estates or their creditors, and *provided further* that the Trustee shall provide prior notice of any such modification, amendment or supplement, as soon as practicable prior to the execution thereof, by electronic transmission or telecopier, to (i) counsel for the Committee and (ii) any other creditor or party in interest whose interests are uniquely and directly affected thereby.

31.    The Successful Bidder shall file with the Court final schedules and exhibits to the Fortress APA as soon as practicable, but in no event later than seven (7) Business Days following the Closing Date.

32.    Nothing contained in any subsequent order of the Court, or in any plan of reorganization or any order of this Court confirming such plan in the Chapter 11 Cases, shall conflict with or impair the provisions of the Fortress APA or this Order.

33.    Except as expressly set forth in the Fortress APA, nothing contained in this Order shall be deemed to waive, release or otherwise affect the rights of the Trustee with respect to the Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code.

34.    The 10-day stay imposed pursuant to Bankruptcy Rules 6004(h) and 6006(d) shall not be in effect, and this Order shall be effective and enforceable immediately upon entry. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk such appeal being foreclosed as moot in the event that the parties elect to close the transactions contemplated by the Fortress APA prior to this Order becoming a final order.

PHI 316,394,037v2

35.     The findings of fact and conclusions of law set forth herein shall not prejudice or enhance the right, if any, of the Trustee or the Committee, or the right, if any, of any other party in interest (including, without limitation, Harry J. Pappas and/or Stella Pappas) to commence a Challenge or an Adversary Proceeding (as such terms are defined in the Financing Order, as amended by the Fourth Consent Order) on or before the Challenge Date. For the avoidance of doubt, nothing herein shall confer or grant standing to any party in interest (including, without limitation, Harry J. Pappas and/or Stella Pappas) to bring or commence a Challenge or an Adversary Proceeding.

36.     To the extent that any provision of this Order shall be inconsistent with the provisions of the Fortress APA, the terms of this Order shall control and govern.

37.     This Order shall take effect, *nunc pro tunc*, as of January 13, 2009, the date on which the Original Sale Order was entered.

Dated: Wilmington, Delaware
       September 9, 2009

The Honorable Peter J. Walsh
United States Bankruptcy Judge

PHI 316,394,037v2