# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 08-10916 (PJW) |
| PAPPAS TELECASTING ) | |
| INCORPORATED, et al.,[1] ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Ref. Docket No. 1469 |
| ) | |

## ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 9014 APPROVING THE SALE OF THE REMAINING RENO ASSETS TO NEW WORLD TV GROUP, LLC, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Upon the motion dated August 17, 2009 [Docket No. 1469] (the "**Sale Approval Motion**"),[2] of E. Roger Williams, the trustee (the "**Trustee**") of the above-captioned debtors (collectively, the "**Debtors**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (the "**Sale Approval Order**" or this "**Order**") pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): approving (1) the sale by Pappas Telecasting of Nevada, L.P. ("**Pappas Telecasting Nevada**" or the "**Sale Debtor**") of the Remaining Reno Assets to New World TV Group, LLC free and clear of all liens, claims, encumbrances and interests of any kind, and (2) certain related relief; and the Court having

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Pappas Telecasting Incorporated (2213), Pappas Telecasting of Central California, a California Limited Partnership (3051); Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903); Pappas Telecasting of Sioux City, L.P. (2089); Pappas Telecasting of Concord, a California Limited Partnership (2459); Pappas Telecasting of Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez, L.P. (2202); Pappas Telecasting of Nevada, L.P. (8024); Pappas Telecasting of Siouxland, LLC (2069); CASA of Washington, LLC (7196); KMPH (TV) License, LLC (None); KFRE (TV) License, LLC (None); Concord License, LLC (None); KTNC License, LLC (None); KPTM (TV) License, LLC (None); WCWG License, LLC (None); KPTH License, LLC (None); KAZH License, LLC (None); KDBC License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

[2] All capitalized terms used herein, unless otherwise defined herein, shall have the respective meanings assigned to such terms in the Sale Approval Motion.

*PHI 316,457,217v4*

jurisdiction to consider the Sale Approval Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that proper and adequate notice of the Sale Approval Motion has been given and that no other or further notice is necessary; and a hearing in respect of the Sale Approval Motion having been held before the Court on September 9, 2009 (the "**Sale Approval Hearing**"); and the Court having reviewed and considered the Sale Approval Motion and the exhibits thereto, all pleadings relating to the Sale Approval Motion, and the arguments of counsel made, and the evidence proffered and/or adduced, at the Sale Approval Hearing; and it further appearing that the legal and factual bases set forth in the Sale Approval Motion establish just cause for the relief granted herein; and it further appearing that the relief sought in the Sale Approval Motion is in the best interests of the Debtors and their estates; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

<u>**Jurisdiction and Final Order**</u>

A. The Court has jurisdiction over the Sale Approval Motion pursuant to 28 U.S.C. §§ 1334 and 157(a). This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B. The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, and Rules 2002, 6004, and 9014 of the Bankruptcy Rules. The proposed sale constitutes a sale of property of the Debtors' estates outside the ordinary course of business within the meaning of section 363(b) of the Bankruptcy Code.

C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

### Chapter 11 Case Background

D. On May 10, 2008 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. Until the appointment of the Trustee, the Debtors continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

E. Pursuant to an order of this Court entered on May 13, 2008 [Docket No. 43], the Debtors' chapter 11 cases (the "**Chapter 11 Cases**") were procedurally consolidated and are being jointly administered.

F. On May 20, 2008, the Office of the United States Trustee for the District of Delaware (the "**United States Trustee**") filed a notice [Docket No. 90] appointing an official committee of unsecured creditors (the "**Committee**") in the Chapter 11 Cases.

G. On August 5, 2008, this Court entered an order [Docket No. 258] directing the United States Trustee to appoint a trustee in the Chapter 11 Cases. On August 14, 2008, the United States Trustee filed a notice [Docket No. 281] with this Court appointing E. Roger Williams as trustee of the Debtors' chapter 11 estates. On August 18, 2008, this Court entered an order [Docket No. 288] approving the appointment of the Trustee.

### Background Specific to the Sale Approval Motion

H. On August 14, 2009, the Trustee filed a motion [Docket No. 1464] (the "**Bidding Procedures Motion**") seeking the entry of an order establishing, among other things, the bidding procedures to govern the sale of the Remaining Reno Assets that are the subject of the Sale Approval Motion. On August 26, 2009, following a hearing before the Court to consider the Bidding Procedures Motion, the Court entered an order [Docket No. 1502] (the "**Bidding Procedures Order**") (a) approving the form of the bidding procedures annexed to the Bidding

Procedures Order as Exhibit A (the "**Bidding Procedures**"), (b) fixing September 9, 2009 at 9:30 a.m. (prevailing Eastern Time) as the date and time for the Sale Approval Hearing, (c) approving the form of notice of (i) the auction (the "**Auction**") conducted to implement the asset sale contemplated by the Bidding Procedures Motion, (ii) the Bidding Procedures and (iii) the Sale Approval Hearing, (d) fixing September 2, 2009 at 4:00 p.m. (prevailing Eastern Time) as the deadline (the "**Bid Deadline**") for submitting bids for the Remaining Reno Assets, (e) fixing September 3, 2009, commencing at 11:00 a.m. (prevailing Eastern Time) as the date and time for the Auction, (f) fixing September 4, 2009, at 4:00 p.m. (prevailing Eastern Time) as the deadline (the "**Sale Approval Motion Objection Deadline**") for serving and filing objections to the Sale Approval Motion, (g) providing certain other relief.

I. No bids were received prior to the Bid Deadline in accordance with the Bidding Procedures Order. As a result of receiving no bids, on September 2, 2009 (after the expiration of the Bid Deadline), the Trustee filed the Notice of Cancellation of Auction and Designation of Prevailing Bid in Connection with the Sale by Pappas Telecasting of Nevada, L.P. of Remaining Reno Assets after the Bid Deadline [Docket No. 1538].

J. The Trustee selected the Qualified Bid submitted by New World TV Group, LLC (together with its successors, assigns and designees, the "**Successful Bidder**"), the nominee of the Pre-Petition Agent, as the Successful Bid. The Successful Bid is evidenced by that certain Asset Purchase Agreement (together with all documents and agreements ancillary thereto and executed in connection therewith, the "**Reno APA**"), dated as of August 13, 2009, executed by the Successful Bidder and Pappas Telecasting Nevada, a copy of which is annexed hereto as **Exhibit A**. The Reno APA embodies, among other things, a credit bid (the "**Credit Bid**") by the

Successful Bidder, as nominee of the Pre-Petition Agent, for the Remaining Reno Assets (as defined in the Reno APA) in the amount of $2,500,000.00 (the "**Successful Bid Amount**").

### Pre-Petition Agent's Credit Bid

K. The Bidding Procedures Order provides that the Remaining Reno Assets are subject to a valid, duly perfected, first-priority, non-avoidable lien held by the Pre-Petition Agent (for the benefit of the Pre-Petition Lenders) as security for the Fortress Claim, which, as of the Petition Date, is in the unpaid amount of $329,073,933.03 (the "**Fortress Claim Amount**").[3] The Bidding Procedures Order further provides, among other things, that, for all purposes relating to the Bidding Procedures, the Auction and the Sale Approval Hearing, the Fortress Claim shall be deemed allowed, and the Pre-Petition Agent, or its nominee, shall be permitted to submit a credit bid pursuant to section 363(k) of the Bankruptcy Code for the Remaining Reno Assets.

L. The Credit Bid was properly authorized and valid in all respects pursuant to the provisions of the Pre-Petition Loan Documents, the Bidding Procedures Order and section 363(k) of the Bankruptcy Code.

### Notice

M. Proper and timely notice of the Bidding Procedures Order, the Auction, the Bidding Procedures, the Sale Approval Motion, the Sale Approval Motion Objection Deadline and the Sale Approval Hearing was provided to all parties entitled thereto in the manner and otherwise in accordance with the Bidding Procedures Order, the Bankruptcy Rules and the Bankruptcy Code, as evidenced by the notices, affidavits and/or certificates of service and publication filed with this Court. Such notice constitutes good and sufficient notice of the

---

[3] The Pre-Petition Agent is holding the sum of $15,000,000 that was paid to the Pre-Petition Agent prior to the Petition Date by certain of the Debtors; that sum has not yet been applied against the Fortress Claim.

Bidding Procedures Order, the Auction, the Bidding Procedures, the Sale Approval Motion, the Sale Motion Objection Deadline and the Sale Approval Hearing in view of all relevant circumstances, and no other or further notice of such matters is or shall be required.

N. The Trustee has afforded a reasonable and sufficient opportunity to object or be heard with respect to the relief requested in the Sale Approval Motion to all interested persons and entities by causing (w) a conformed copy of the Bidding Procedures Order, (x) the Bidding Procedures, (y) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B, and (z) a copy of the Sale Approval Motion (including the exhibits thereto) to be sent by first-class mail, postage prepaid, to, (i) the United States Trustee, (ii) counsel to the Committee, (iii) all creditors and equity security holders identified in the list of creditors and equity security holders heretofore filed herein with the Court by the Pappas Telecasting of Nevada, L.P. and Reno License, LLC debtors, (iv) any party asserting a lien a against all or any portion of the Remaining Reno Assets, (v) all parties, or their counsel, who have, in writing, expressed an interest in or submitted written offers to the Debtors, Moelis or the Trustee for all or any portion of the Remaining Reno Assets, (vi) the Internal Revenue Service, (vii) the FCC, (viii) all federal, state and local regulatory and taxing authorities that have a known interest in the relief requested in the Sale Approval Motion, (ix) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (x) the Attorney General's Office for the State of Nevada, (xi) the United States Securities and Exchange Commission, (xii) the United States Attorney's Office for the States of Nevada and Delaware, respectively, (xiii) counsel to the Pre-Petition Agent, and (xiv) counsel to certain of the Pre-Petition Lenders (all such parties, collectively, the "**Notice Parties**"). In light of the circumstances, the foregoing notice to the Notice Parties was

reasonably calculated to provide timely, adequate and sufficient notice to the Debtors' major creditor constituencies, those parties most interested in the Chapter 11 Cases, and those parties that potentially were interested in bidding on the Remaining Reno Assets of relevant information concerning the Auction, the Bidding Procedures and the Sale Approval Hearing.

### Power and Authority of Trustee to Execute the Reno APA and Consummate the Sale

O. The Reno APA was executed on behalf of the Sale Debtor by the Trustee. The Trustee is duly authorized, on behalf of the Sale Debtor, to execute the Reno APA and take and perform any and all acts and actions that are necessary to effectuate and consummate the transactions contemplated therein.

P. Subject to the entry of this Sale Approval Order, (1) the Trustee has full requisite power and authority (a) to execute the Reno APA and all other documents contemplated thereby, and (b) to consummate the transactions contemplated by the Reno APA on behalf of the Sale Debtor, and (2) the Reno APA, and all of the transactions and documents contemplated thereby, have been duly and validly authorized by all necessary action on the part of the Sale Debtor. No further consents or approvals, other than those expressly provided for under the Reno APA, are required for the Trustee to consummate the transactions contemplated by the Reno APA.

### Trustee's Business Judgment and Justification for the Sale to the Successful Bidder

Q. The sale of the Remaining Reno Assets to the Successful Bidder in accordance with the terms and conditions set forth in the Reno APA reflects the sound exercise of the Trustee's business judgment consistent with his fiduciary duties.

R. Approval of the Reno APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their estates, and parties in interest in the Chapter 11 Cases. The Trustee has demonstrated both (i) good and sufficient business

PHI 316,457,217v4

7

purpose and justification and (ii) compelling circumstances for consummating the transactions contemplated by the Reno APA outside of a plan of reorganization have been established, in that, among other things:

1. The Trustee, in the sound exercise of his business judgment, has determined that (i) a stand-alone business plan is not feasible, and (ii) unless the sale of the Remaining Reno Assets to the Successful Bidder is concluded expeditiously as provided for in the Remaining Reno Assets Sale Motion and the Reno APA, the value of the Remaining Reno Assets may decline, and the Debtors, their estates and their creditors ultimately may realize less value for the Remaining Reno Assets.

2. As demonstrated by the evidence presented in support of the Sale Approval Motion at the Sale Approval Hearing, the Trustee himself and through his retained professionals diligently and in good faith marketed the Remaining Reno Assets to secure the highest and best offer therefor. In addition, on August 28, 2009, the Trustee caused to be mailed (a) a conformed copy of the Bidding Procedures Order, (b) the Bidding Procedures, and (c) a notice of the Auction, the Bidding Procedures, and the Sale Approval Hearing in substantially the form attached to the Bidding Procedures Order as Exhibit B, and on August 17, 2009, the Trustee caused to be mailed a copy of the Sale Approval Motion (including the exhibits thereto), in each case to, among other parties, all parties who have delivered to the Debtors written expressions of interest in acquiring, or offers to acquire, all or a portion of the Debtors' assets.

3. The sale of the Remaining Reno Assets at this time to the Successful Bidder pursuant to sections 105, 363(b), 363(f) and 363(k) of the Bankruptcy Code is the only viable alternative to preserve the value of the Remaining Reno Assets and maximize the Debtors' estates for the benefit of all constituencies.

4. No Qualified Bid for the entirety of the Remaining Reno Assets, other than the Successful Bid embodied in the Reno APA, was submitted by the Bid Deadline (as defined in the Bidding Procedures Order) or otherwise at or before the Auction.

## The Reno APA Constitutes the Highest and Best Offer for the Remaining Reno Assets

S. The terms and conditions of the Reno APA (i) are fair and reasonable, (ii) represent the highest and best offer for the Remaining Reno Assets, (iii) will provide a greater recovery for the Debtors' estates than would be provided by any other practical, available alternative, and (iv) constitute reasonably equivalent value and fair consideration under applicable fraudulent transfer and fraudulent conveyance laws of the United States, any state, territory, possession, or the District of Columbia.

T.  Approval of the Sale Approval Motion and the Reno APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, and their estates.

### Good Faith and Non-Collusive Sale

U.  The Reno APA was negotiated, proposed and entered into by the Sale Debtor and the Successful Bidder without collusion, in good faith, and from arm's length bargaining positions. In all respects, the Successful Bidder has acted in good faith in purchasing the Remaining Reno Assets and, as such, is entitled to the full benefit and protection afforded by section 363(m) of the Bankruptcy Code.

V.  Neither the Trustee nor the Successful Bidder has engaged in any conduct, whether by commission or omission, that would cause or permit the Reno APA and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

### Transfer and Assignment of the Remaining Reno Assets Free and Clear of Liens, Claims, Interests and Encumbrances

W.  The transfer and assignment of the Remaining Reno Assets by the Sale Debtor to the Successful Bidder pursuant to the Reno APA are or will be legal, valid and effective transfers and assignments to the Successful Bidder of, and except as expressly provided in the Reno APA, shall vest the Successful Bidder with, all right, title, privilege and interest of the Sale Debtor and the Trustee in and to the Remaining Reno Assets, free and clear of all Liens, Claims, Interests and Encumbrances (each term as defined in the Reno APA, and collectively, the "**Interests**"), other than Permitted Encumbrances (as defined in the Reno APA) and Permitted Exceptions (as defined in the Reno APA) pursuant to, and to the fullest extent permitted by, the provisions of section 363 of the Bankruptcy Code.

X. The Trustee, acting on behalf of the Sale Debtor, may sell the Remaining Reno Assets free and clear of all Interests (other than as specifically set forth in the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object, or who withdrew their objections, to the Sale or the Remaining Reno Assets Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Y. Except as provided in the Reno APA or this Sale Approval Order with respect to Permitted Encumbrances and Permitted Exceptions, consummation of the transactions contemplated by the Reno APA does not and will not subject the Successful Bidder to any Interests, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person or entity by reason of such transfer and assignment under the laws of the United States, any state, territory or possession applicable to such transactions.

Z. The Successful Bidder would not have entered into the Reno APA and would not have agreed to consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Remaining Reno Assets to the Successful Bidder were not free and clear of all Interests (other than as expressly set forth in the Reno APA), or if the Successful Bidder would, or in the future could, be liable for any encumbrances (other than as specifically set forth in the Reno APA).

### Miscellaneous

AA. The Successful Bidder is not a successor to the Sale Debtor or their estates with respect to the business and operations currently or formerly conducted by the Sale Debtor or otherwise. Without limiting the generality of the foregoing, the transactions contemplated by the

Reno APA do not constitute a consolidation, merger or de facto merger of the Successful Bidder and the Sale Debtor.

BB.  The relief requested in the Sale Approval Motion is in the best interests of the Debtors, their estates, and parties in interest.

CC.  For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  The findings of fact and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2.  The relief requested in the Sale Approval Motion is granted as set forth herein, and the transactions contemplated under the Reno APA are hereby approved.

3.  All objections, if any, to the Sale Approval Motion or the relief requested therein that have not been withdrawn, waived or settled, as announced to the Court at the Sale Approval Hearing or by stipulation filed with the Court, and all reservations of rights set forth therein, are hereby overruled on the merits.

### Authorization to Execute, and Approval of, the Reno APA

4.  The terms and conditions of the Reno APA are authorized and approved in all respects pursuant to sections 105(a), 363(b), 363(f), 363(k), and 363(m) of the Bankruptcy Code.

5. The form and substance of the Reno APA hereby are approved in all respects. Pursuant to section 363(b) of the Bankruptcy Code, the execution of the Reno APA by the Trustee, acting on behalf of the Sale Debtor, hereby is ratified and approved, and the Trustee is authorized and directed to deliver the executed Reno APA to the Successful Bidder. The Trustee hereby is authorized, directed and empowered to (i) cause the Sale Debtor to execute and deliver to the Successful Bidder all other agreements and documents ancillary to and contemplated by the Reno APA, including, without limitation, bills of sale, title documents and any other documents or instruments that reasonably may be necessary or desirable to implement the Reno APA and implement and consummate the transactions contemplated thereby, (ii) perform, and cause the Sale Debtor to perform, all of his and its duties and obligations set forth in the Reno APA, and (iii) take all further actions as reasonably may be requested by the Successful Bidder for the purpose of assigning, transferring, granting, conveying and conferring to the Successful Bidder or reducing to Successful Bidder's possession any or all of the Remaining Reno Assets, or as may be necessary or appropriate to the performance of the Sale Debtor's and/or the Trustee's obligations as contemplated by the Reno APA.

## Transfer of the Remaining Reno Assets

6. Except as provided in the Reno APA, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, effective upon the consummation of the transactions contemplated by the Reno APA, the Remaining Reno Assets shall be transferred and assigned to the Successful Bidder, and the Successful Bidder shall take title to and possession of the Remaining Reno Assets, free and clear of any and all Interests, other than the Permitted Encumbrances and Permitted Exceptions, with all such Interests to attach to the net proceeds, if any, of the Sale in the order of their priority, with the same validity, force and effect as they had against the Remaining Reno Assets as of the Petition Date, all subject to the rights, claims, defenses and

PHI 316,457,217v4

12

objections, if any, of the Debtors with respect to such Interests. The transfer of the Remaining Reno Assets to the Successful Bidder pursuant to this Order and the Reno APA constitutes a legal, valid and effective transfer of the Remaining Reno Assets and shall vest the Successful Bidder with all right, title, and interest of the Trustee and the Sale Debtor in and to all Remaining Reno Assets free and clear of all Interests (other than Permitted Encumbrances and Permitted Exceptions).

7. Except as expressly permitted or otherwise specifically provided by the Reno APA or this Sale Approval Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests (other than Permitted Encumbrances and Permitted Exceptions) against or in the Debtors or the Remaining Reno Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Sale Debtor, the Remaining Reno Assets, the operation of the Debtors' or the Sale Debtor's business prior to the Closing Date (as defined in the Reno APA), as applicable, or the transfer of the Remaining Reno Assets to the Successful Bidder, hereby are forever barred, estopped, and permanently enjoined from asserting against the Successful Bidder and its successors, assigns and designees, their property, or the Remaining Reno Assets, such persons' or entities' respective Interests.

8. All persons and entities, including, without limitation, the Debtors and their non-Debtor affiliates, that have custody, possession and/or control of some or all of the Remaining Reno Assets on the Closing Date are directed to surrender custody, possession and control of such Remaining Reno Assets to the Successful Bidder or its designee at the Closing (as defined

in the Reno APA). Nothing in this Order or in the Reno APA shall be construed to transfer to the Successful Bidder title to assets that are not owned by the Sale Debtor.

### Satisfaction, Termination and Release of Interests in the Remaining Reno Assets

9. If any person or entity that holds an Interest in or against the Remaining Reno Assets (or any portion thereof) that is evidenced by a financing statement, mortgage, mechanic's liens, *lis pendens*, or other document or instrument filed or recorded in a governmental office established for filing and recording such documents shall not have delivered to the Trustee or the Successful Bidder prior to the Closing, in proper form for filing or recording (as the case may be) and executed and witnessed by the appropriate parties, termination statements, instruments of satisfaction, or releases of such Interests that such person or entity holds with respect to the Remaining Reno Assets, then (i) each of the Sale Debtor, the Trustee, on behalf of the Sale Debtor, and the Successful Bidder hereby is authorized to execute and file or record such statements, instruments, releases and other documents in lieu and on behalf of such person or entity and on behalf of the Successful Bidder, and, alternatively, (ii) the Successful Bidder hereby is authorized to file, register or otherwise record a certified copy of this Order, without Exhibit A but accompanied by a schedule that identifies and describes the Remaining Reno Assets, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the satisfaction, termination and release of all Interests against or in the Remaining Reno Assets other than the Permitted Liens and the Permitted Exceptions.

10. This Order is and shall be (i) effective as a determination that, effective on the Closing Date, (a) all Interests (other than the Permitted Encumbrances and the Permitted Exceptions) affecting the Remaining Reno Assets prior to the Closing Date, unconditionally have been released, discharged and terminated, and (b) the transfer and assignment of the Remaining Reno Assets has been effected, and (ii) binding upon and govern the acts of all

persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Remaining Reno Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing or recording any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Reno APA, including, without limitation, a certified copy of this Order.

11. Other than as expressly set forth in the Reno APA, (i) the Successful Bidder shall not have any liability or responsibility for any obligation of or claim against the Trustee or the Debtors related to the Remaining Reno Assets arising prior to the Closing Date, (ii) under no circumstances shall the Successful Bidder be deemed a successor of or to the Debtors or the Sale Debtor, or their respective business and operations, for purposes of any Interest against or in the Trustee or the Debtors or the Remaining Reno Assets, (iii) the Successful Bidder shall not be liable for any claims against the Debtors or the Trustee or any of their predecessors or affiliates, and the Successful Bidder shall not have any successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or the Sale Debtor or any obligations of the Debtors, the Sale Debtor or the Trustee arising prior to the Closing Date, and (iv) following the Closing Date, no holder of an Interest against or in the Debtors or the Remaining Reno

Assets shall interfere with the Successful Bidder's title to, or use and enjoyment of, the Remaining Reno Assets based on or related to such Interest or any actions that the Debtors or the Trustee may take in the Chapter 11 Cases.

### Further Assurances

12. The Sale Debtor, and the Trustee, on behalf of the Sale Debtor, hereby are authorized to take all such actions and execute and deliver to the Successful Bidder such other and further agreements and documents as shall be necessary to consummate and give effect to the Reno APA and the transactions contemplated thereby without further order of the Court.

### Retained Jurisdiction

13. The Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Reno APA, any amendments thereto authorized by this Order, any waivers and consents thereunder, and each of the agreements, documents and instruments ancillary thereto and executed in connection therewith, (ii) to compel delivery of the Remaining Reno Assets to the Successful Bidder, (iii) to resolve any disputes, controversies or claims arising out of or relating to the Reno APA, and (iv) to interpret, implement and enforce the provisions of this Order.

### Sections 363(m) and 363(n)

14. The Successful Bidder is a good faith purchaser of the Remaining Reno Assets. Accordingly, in the absence of a stay pending appeal, the Successful Bidder shall be entitled to the protections of Section 363(m) of the Bankruptcy Code with respect to the transactions contemplated by the Reno APA if this Order or any authorization contained herein is reversed or modified on appeal.

15. The transactions provided for in the Reno APA may not be avoided under section 363(n) of the Bankruptcy Code.

### Additional Provisions

16. The consideration, including, without limitation, the Credit Bid, provided by the Successful Bidder for the Remaining Reno Assets under the Reno APA is fair and reasonable.

17. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Reno APA and the provisions of this Order.

18. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Reno APA or give rise to any claim against the Remaining Reno Assets, the Debtors, the Trustee or the Successful Bidder.

19. The Successful Bid Amount shall be applied and credited against the Fortress Claim Amount upon the occurrence of the Closing.

20. The terms and provisions of the Reno APA, together with the terms and provisions of this Order, shall be binding in all respects upon the Trustee, the Debtors, their estates, their creditors and equity interest holders, any holders of Interests in the Remaining Reno Assets, the Successful Bidder and the respective affiliates, successors and assigns of the foregoing entities and persons, any affected third parties, persons and entities asserting a claim against or interest in the Debtors' estates or any of the Remaining Reno Assets, and any trustee hereafter appointed in the Chapter 11 Cases or upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. This Order and the Reno APA shall inure to the benefit of the Debtors, their estates, their creditors, the Successful Bidder and their respective successors and assigns.

21. The failure specifically to include in this Order any particular provisions of the Reno APA, or any document or agreement ancillary thereto, shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Reno APA and the transactions contemplated thereby be authorized and approved in their entirety and performed in accordance with their terms.

22. The Reno APA and any related agreements, documents or other instruments, including, without limitation, all bills of sale and assignments, may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; *provided, however*, that any such modification, amendment or supplement shall have no materially adverse effect on the Debtors' estates or their creditors, and *provided further* that the Trustee shall provide prior notice of any such modification, amendment or supplement, as soon as practicable prior to the execution thereof, by electronic transmission or telecopier, to (i) counsel for the Committee; (ii) the United States Trustee; and (iii) any other creditor or party in interest whose interests are uniquely and directly affected thereby.

23. Nothing contained in any subsequent order of the Court, or in any plan of reorganization or any order of this Court confirming such plan in the Chapter 11 Cases, shall conflict with or impair the provisions of the Reno APA or this Order.

24. The 10-day stay imposed pursuant to Bankruptcy Rules 6004(h) shall not be in effect, and this Order shall be effective and enforceable immediately upon entry. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk such appeal being foreclosed as moot in the event that the parties elect to close the transactions contemplated by the Reno APA prior to this Order becoming a final order.

SO ORDERED this _9_ day of Sept, 2009

Peter J. Walsh
United States Bankruptcy Judge