# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PAPPAS TELECASTING | ) Case No. 08-10916 (PJW) |
| INCORPORATED, *et al.*,[1] | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Objection Deadline: May 20, 2010 @ 4:00 p.m.** |
| | ) **(prevailing Eastern time)** |
| | ) **Hearing Date: May 27, 2010 @ 10:30 a.m.** |
| | ) **(prevailing Eastern time)** |
| | ) |

## MOTION OF CHAPTER 11 TRUSTEE, PURSUANT TO SECTIONS 105(a), 349 AND 1112(b) OF THE BANKRUPTCY CODE, FOR THE ENTRY OF AN ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES; (II) RELEASING AND DISCHARGING THE CHAPTER 11 TRUSTEE; (III) AUTHORIZING THE ABANDONMENT AND/OR DESTRUCTION OF BUSINESS RECORDS; (IV) DISMISSING THE CLAIMS AGENT; AND (V) GRANTING CERTAIN RELATED RELIEF

E. Roger Williams, Chapter 11 Trustee (the "**Trustee**") appointed in the chapter 11 cases of the above-captioned debtors (collectively, the "**Debtors**"), by and through his undersigned counsel, hereby moves the Court (the "**Motion**") for the entry of an Order, pursuant to sections 105(a), 349 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), (i) dismissing the Debtors' bankruptcy cases; (ii) releasing and discharging the Trustee; (iii) authorizing the abandonment and/or destruction of business records; (iv) dismissing the claims agent; and (v) certain related relief.  In support of this Motion, the Trustee respectfully represents as follows:

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Pappas Telecasting Incorporated (2213); Pappas Telecasting of Central California, a California Limited Partnership (3051); Pappas Telecasting of the Midlands, L.P. (8586); WCWG of the Triad, LLC (7903); Pappas Telecasting of Sioux City, L.P. (2089); Pappas Telecasting of Concord, a California Limited Partnership (2459); Pappas Telecasting of Houston, L.P. (2089); Pappas Telecasting of El Paso-Juarez, L.P. (2202); Pappas Telecasting of Nevada, L.P. (8024); Pappas Telecasting of Siouxland, LLC (2069); CASA of Washington, LLC (7196); KMPH (TV) License, LLC (None); KFRE (TV) License, LLC (None); Concord License, LLC (None); KTNC License, LLC (None); KPTM (TV) License, LLC (None); WCWG License, LLC (None); KPTH License, LLC (None); KAZH License, LLC (None); KDBC License, LLC (None); Reno License, LLC (None); and KCWK License, LLC (None).

# I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

# II.    BACKGROUND

## A.    The Chapter 11 Filings and Jurisdiction

2.    On May 10, 2008 (the "**Petition Date**"), each of the above-captioned Debtors (the "**Debtors**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On May 13, 2008, the Court entered an order directing joint administration of the Debtors' cases for procedural purposes only [Docket No. 43].

3.    On February 12, 2008, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these cases (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code.

4.    On May 13, 2008, the Court entered an Order Authorizing Appointment and Retention of Administar Services Group, LLC As Claims, Noticing, and Balloting Agent [Docket No. 44].  In June 2009, the bankruptcy services unit of Administar Services Group, LLC was consolidated with Kurtzman Carson Consultants (the "**Claims Agent**").

5.    On August 5, 2008, this Court entered an Order Approving the Emergency Motion for Appointment of a Chapter 11 Trustee [Docket No. 258].  On or about August 14, the United States Trustee filed United States Trustee's Application for Order Approving Appointment of Chapter 11 Trustee [Docket No. 281].  On August 18, 2008, this Court entered an Order approving the appointment of E. Roger Williams as Trustee [Docket No. 288].

PHI 316,570,039v3

**B.**     **The Debtors' Pre and Post-Petition Financing**

**1.**     **Pre-Petition Financing**

6.     Debtors (i) Pappas Telecasting Incorporated, (ii) Pappas Telecasting of Central California, L.P., (iii) Pappas Telecasting of the Midlands, L.P., (iv) WCWG of the Triad, LLC, (v) Pappas Telecasting of Sioux City, L.P., (vi) Pappas Telecasting of Concord, L.P., (vii) Pappas Telecasting of Houston, L.P., (viii) Pappas Telecasting of El Paso-Juarez, L.P, (ix) Pappas Telecasting of Nevada, L.P, (x) Pappas Telecasting of Siouxland, LLC, and (xi) CASA of Washington, LLC (collectively the "**Fortress Borrowers**") are parties to that certain Credit Agreement dated as of March 1, 2006 (as amended, the "**Pre-Petition Credit Agreement**") with Fortress Credit Corp, as Administrative Agent and Facility Agent (the "**Pre-Petition Agent**" or "**Fortress**"), and certain other lenders party thereto, including Fortress Credit Corp (collectively, the "**Pre-Petition Lenders**").

7.     The Debtors' obligations (the "**Pre-Petition Debt**") under the Pre-Petition Credit Agreement, as of the Petition Date, were determined by the Court to be in the aggregate amount of $329,941,293.68, comprising unpaid principal in the amount of $303,574,665.36 (the "**Pre-Petition Secured Bank Claim**" or the "**Pre-Petition Obligations**"), accrued and unpaid interest in the amount of $25,499,267.67, and the Pre-Petition Agent's and the Pre-Petition Lenders' accrued and unpaid fees, costs, expenses and other charges (collectively, the "**Fortress Expenses**") incurred by the Pre-Petition Agent and the Pre-Petition Lenders under the Pre-Petition Credit Agreement in the amount of $867,360.65.

8.     Each of the Debtors that is not a Fortress Borrower under the Pre-Petition Credit Agreement (collectively, the "**Fortress Guarantors**") is a party to that certain Subsidiary Guaranty and Security Agreement dated as of March 1, 2006, among themselves and Fortress Credit Corp., as Administrative Agent, pursuant to which the Fortress Guarantors guaranteed the

obligations of the Fortress Borrowers under the Pre-Petition Credit Agreement and pledged and granted a security interest in their assets and property to Fortress (for the benefit of the Pre-Petition Lenders) as security for the Pre-Petition Debt.

9.     The Pre-Petition Debt is secured by perfected, valid, enforceable, and non-avoidable, first-priority liens on and security interests (the "**Pre-Petition Liens**") in (i) substantially all of the Fortress Borrowers' real and personal property (the "**Pre-Petition Collateral**") pursuant to the Pre-Petition Credit Agreement and other security documents executed by the Debtors in favor of the Pre-Petition Lenders; and (ii) all of the equity interests in the Debtors pursuant to that certain Affiliate Pledge Agreement dated as of March 1, 2006, among Harry J. Pappas, PTI, the pledgors listed on Annex 1 thereto and Fortress Credit Corp., as Administrative Agent.

## 2.     The DIP Financing

10.     On July 28, 2008, the Debtors filed a Motion for Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition Secured Financing From Their Prepetition Secured Lenders Pursuant to Sections 105, 362, 364(c) and 364(e) of the Bankruptcy Code [Docket No. 198] (the "**DIP Motion**").

11.     On September 10, 2008, the Court entered an Order approving the DIP Motion on a final basis [Docket No. 355] (the "**Final DIP Order**"). The Final DIP Order authorized the Trustee (acting on behalf of the Debtors) to obtain post-petition financing by entering into certain agreements for a senior secured superpriority debtor-in-possession credit facility with Fortress as administrative agent and facility agent under such credit facility (the "**Post-Petition Financing Documents**") and the lenders party thereto or a subset thereof. The Debtors' obligations under the Post-Petition Financing Documents are secured by valid, duly perfected, senior priming liens upon and security interests in substantially all of the Debtors' assets.

PHI 316,570,039v3

12.     Pursuant to paragraph 30 of the Final DIP Order, the Committee, the Trustee and certain other parties in interest were granted until October 17, 2008 (the **"Challenge Date"**) to investigate and commence and adversary proceeding (i) to challenge (x) the validity, amount, extent, enforceability, priority, perfection, and / or avoidability of the Pre-Petition Liens, (y) the validity, amount, or enforceability of the Prepetition Secured Bank Claim and (z) whether the Pre-Petition Liens and/or the Pre-Petition Secured Bank Claim are subject to any offset, defense, counterclaim, right of recoupment or disallowance under section 502(d) of the Bankruptcy Code, or subordination under section 510 of the Bankruptcy Code, and (ii) to seek to avoid and recover any such liens and any transfers made by the Debtors in respect of the Pre-Petition Obligations and subordinate or disallow the Pre-Petition Secured Bank Claim, in whole or in part.  The Challenge Date was extended several times, ultimately through May 11, 2009.

13.     Ultimately, following extensive investigations and analysis, both the Committee and the Trustee concluded that no viable challenges to or estate causes of action with respect to the Pre-Petition Liens and/or Pre-Petition Secured Bank Claim existed.

## C.     The Debtors' Asset Sales

### 1.     The Initial Reno Asset Sale

14.     On September 5, 2008, the Trustee filed a Motion For An Order Pursuant To Sections 105, 363, 364 And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001, 6004 And 6006 (I)(A) Establishing Bidding Procedures In Connection With The Sale Of The Reno Station Assets, Including A Break-Up Fee And Other Bid Protections, (B) Approving The Form And Manner Of Notices, (C) Scheduling Dates for An Auction And Sale Approval Hearing, (D) Authorizing And Approving (i) The Form Of An Asset Purchase Agreement, (ii) The Incurrence By The Buyer Of The Net TBA Costs And The Digital Conversion Equipment Costs On Behalf Of The Sale Debtors' Estates, (iii) Granting Of A Superpriority Claim To Buyer

With Respect To The Net TBA Costs And The Digital Conversion Equipment Costs; (II) Approving The Sale Of Reno Station Assets Free And Clear Of Liens, Claims And Encumbrances To The Successful Bidder; And (III) Approving Procedures To Determine Cure Amounts Related To The Assumption And Assignment Of Certain Executory Contracts And Leases [Docket No. 347] (the "**Initial Reno Sale Motion**").  In the Initial Reno Sale Motion, the Trustee sought to sell most, but not all, of the tangible and intangible assets and property (collectively, the "**Reno Assets**") of Pappas Telecasting of Nevada, L.P. ("**Pappas Telecasting Nevada**" or the "**Sale Debtor**") and Reno License, LLC (collectively, the "**Reno Debtors**").

15.     On October 29, 2008, following a hearing, the Court entered an Order approving the Initial Reno Sale Motion [Docket No. 483] (the "**Initial Reno Sale Order**"), which authorized and approved the transfer and assignment of the Reno Assets by the Reno Debtors to Entravision Communications Corporation ("**Entravision**").

## 2.     The Multiple Station Sale and the Multiple Station Sale Motion

16.     After entry of the Initial Reno Sale Order, the Debtors sought to sell their remaining stations and related assets.  To that end, on October 27, 2008, the Trustee filed a *Motion For An Order Pursuant To Sections 105, 363, And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001, 6004, 6006 And 9014 (A) Establishing Bidding Procedures In Connection With The Sale Of Substantially All Of The Debtors' Assets, (B) Scheduling Date And Time To Hold The Auction For The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Interests, (C) Scheduling The Date And Time For The Hearing To Consider (1) The Sale Of The Assets And (2) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Relating To The Assets, And (D) Approving The Form And Manner Of Notice Of The Auction And The Sale Approval Hearing* (the "**Multiple Station Bidding Procedures Motion**") (Docket No. 478).

17.     On November 14, 2008, this Court granted the Bidding Procedures Motion and entered an Order Granting Chapter 11 Trustee's Motion For An Order (A) Establishing Bidding Procedures In Connection With The Sale Of Substantially All Of The Debtors' Assets, (B) Scheduling Date And Time To Hold The Auction For The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Interests, (C) Scheduling The Date And Time For The Hearing To Consider (1) The Sale Of The Assets And (2) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Relating To The Assets, And (D) Approving The Form And Manner Of Notice Of The Auction And The Sale Approval Hearing [Docket No. 563] (the **"Multiple Station Bidding Procedures Order"**).

18.     On November 26, 2008, in furtherance of the Multiple Station Bidding Procedures Order, the Trustee filed a Motion For An Order Pursuant To Sections 105, 363, And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001, 6004, 6006 And 9014 Approving (1) The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests, (2) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (3) Certain Related Relief (the "**Multiple Station Sale Motion**") (Docket No. 612), pursuant to which the Trustee sought authority of this Court, among other things, to sell, free and clear of liens, claims, encumbrances and other interests, all or substantially all of the Debtors' assets used or useful in connection with the operation of the following television stations, including, without limitation, all applicable licenses, permits and authorizations issued by or pending before the FCC that are necessary or useful for the business or operation of the Debtors' television stations identified below (the

"**Television Stations**") or the conduct of such television stations (such assets, collectively, the "**Multiple Station Assets**"):[2]

| Television Station | Facility ID# | Community of License | Debtor Owning Television Station |
|---|---|---|---|
| KMPH-TV | 51488 | Visalia, CA | Pappas Telecasting Incorporated |
| KFRE-TV | 59013 | Sanger, CA | Pappas Telecasting of Central California, a California limited partnership |
| KTNC and KUNO | 21533 8378 | Concord, CA Fort Bragg, CA | Pappas Telecasting of Concord, a California limited partnership |
| KCWK | 84238 | Walla Walla, WA | CASA of Washington, LLC |
| KAZH | 70492 | Baytown, TX | Pappas Telecasting of Houston, L.P. |
| KDBC | 33764 | El Paso, TX | Pappas Telecasting of El Paso-Juarez, L.P. |
| KPTM | 51491 | Omaha, NE | Pappas Telecasting of the Midlands, L.P. |
| KPTH-TV | 77451 | Sioux City, IA | Pappas Telecasting of Sioux City, L.P. |
| WCWG-TV | 35385 | Lexington, NC | WCWG of the Triad, LLC |

19.     In accordance with the Multiple Station Bidding Procedures Order, on December 12, 2008 the Trustee conducted an auction for the sale of the Multiple Station Assets. At the conclusion of the auction, the Trustee selected New World TV Group, LLC ("**New World**"), the nominee of the Pre-Petition Agent, as the winning bidder.  New World's bid was evidenced by that certain Asset Purchase Agreement (together with all documents and agreements ancillary thereto and executed in connection therewith, the "**Multiple Station APA**"), dated as of December 12, 2008, among New World and the Debtors party thereto

---

[2]     The Multiple Station Assets do not include the Remaining Reno Assets (as defined in the Remaining Reno Assets Sale Motion (as defined in paragraph 21 below).

PHI 316,570,039v3

pursuant to which, among other things, New World agreed to acquire, and the Debtors agreed to sell, subject to the approval of the Bankruptcy Court and in consideration of a credit bid by New World in the amount of $260,000,000 (the "**Fortress $260,000,000 Credit Bid**"), all of the Debtors' right, title, privilege and interest in, to and under the "Acquired Assets" (as defined in the Multiple Station APA).

20.     On January 13, 2009, following a hearing before the Court to consider the relief sought pursuant to the Multiple Station Sale Motion, the Court entered its Order Granting Trustee's Motion for an Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 Approving (1) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (3) Certain Related Relief [Docket No. 820] (the "**Multiple Station Sale Approval Order**") pursuant to which the Court, among other things, (i) authorized and approved the Multiple Station APA in all respects and the Debtors' execution and delivery of the Multiple Station APA to New World, (ii) authorized and directed the Debtors to consummate the transactions contemplated by the Multiple Station APA, and (iii) authorized and directed the Debtors to assume certain executory contracts and unexpired leases and assign such executory contracts and unexpired leases to New World, subject to, at the time of and effective upon the Closing (as defined in the Multiple Station APA), free and clear of any and all Interests (as defined in the Multiple Station APA).

### 3.     The Remaining Reno Asset Sale

21.     On August 17, 2009, the Trustee filed his Motion for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014 Approving the Sale of the Remaining Reno Assets to New World TV Group, LLC, Free and

Clear of Liens, Claims and Encumbrances [Docket No. 1469] (the **"Remaining Reno Assets Sale Motion"**).

22.     On September 9, 2009, the Court entered the Order Granting Trustee's Motion for an Order Approving the Sale of the Remaining Reno Assets to New World TV Group, LLC, Free and Clear of Liens, Claims, Encumbrances and Other Interests [Docket No. 1552] (the **"Remaining Reno Assets Sale Order"**).

23.     The sales pursuant to the Multiple Station Sale Order and Remaining Reno Assets Sale Order closed on October 15, 2009.

**D.     April 2009 Stipulation By and Among the Committee, the Trustee and Fortress Credit Corp.**

24.     On April 10, 2009, the Committee and Trustee filed a joint motion (the **"Joint Motion"**), pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for an order approving a stipulation (the **"Stipulation"**) entered into by and among the Committee, the Trustee and Fortress, in its capacity as administrative agent and facility agent for the Debtors' prepetition secured lenders.

25.     The Stipulation provides, *inter alia*, for the transfer by the Pre-Petition Lenders of cash (the **"Committee Carve-Out Cash"**) from the proceeds of the Pre-Petition Collateral in the amount of (a) $1.0 million plus (y) $0.125 for every dollar by which the aggregate amount of Allowed GUCs (as defined in the Stipulation) in the Debtors' chapter 11 cases exceeds $4.0 million but is less than or equal to $12.0 million, plus (z) $0.0625 for every dollar by which the aggregate amount of Allowed GUCs in the Debtors' chapter 11 cases exceeds $12.0 million but is less than or equal to $20.0 million; and (b) a percentage (to be agreed upon by the Committee, or its designee, the Pre-Petition Lenders and the Trustee (the consent of the Trustee not to be unreasonably withheld, delayed or denied)) of any insurance proceeds (such proceeds as the

Committee and the Pre-Petition Lenders agree to allocate to holders of Allowed GUCs (the **"Committee D&O Proceeds"**) that may be recovered from any of the Debtors D&O policies as a result of any action or actions that may be brought against the Debtors' current or former officers, directors or management, which actions the Trustee, or his designee, shall prosecute. Notwithstanding the foregoing, the Committee Carve-Out Cash shall not exceed the lesser of (x) $2.5 million, (y) the amount yielded by application of the formula set forth in section (a) of this paragraph, and (z) the aggregate amount of Allowed GUCs.

26.     In addition, the Committee has agreed to use the Committee Carve-Out Cash to pay (i) the allowed and unpaid priority claims (the **"Priority Claims"**) and (ii) the allowed and unpaid administrative expenses timely filed in the Debtors' cases (the **"Administrative Expense Claims"**[3]).     Please see Section H herein entitled "Claim Resolution Process" for a further explanation of what constitutes the unpaid Priority Claims and Administrative Expense Claims.

27.     On April 30, 2009, the Court held a hearing to consider the relief sought in the Joint Motion, at which time the Court approved the Joint Motion, subject to certain specific reservations as described below.

28.     On May 14, 2009, the Court entered an order approving the Joint Motion to the extent provided therein [Docket No. 1127] (the **"May 14, 2009 Order"**).     Although the May 14, 2009 Order approving the Joint Motion approved the settlement among the Committee, the Trustee and Fortress, the Order specifically provides that:

> "The Court makes no ruling and leaves open for future consideration the question of whether the settlement embodied in the Stipulation adversely affects holders of administrative expense claims and holders of priority claims against the Debtors. As a result, the Pre-Petition Secured Lenders shall not fund any of the sums ("Committee Carve-Out Cash") that they have agreed to

---

[3]     Administrative Claims shall not include fee and expense claims of professionals retained or utilized in these bankruptcy cases, and no such claims shall be payable out of the Committee Carve-Out Cash.

> make available for the benefit of Allowed GUCs under the Stipulation until further order (the "Settlement Funding Order") of this Court authorizing the funding of the Committee Carve-Out Cash."

*See* May 14, 2009 Order, ¶ 4.

29.     The May 14, 2009 Order further contains certain reservations of rights pending further order of this Court.  In particular, the Order provides:

> "The rights of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Trustee, the Committee, Fortress and the Pre-Petition Secured Lenders are preserved as to (x) whether the Committee Carve-Out Cash constitutes property of the Debtors' estates and must be paid to the Trustee on behalf of the Debtors' estates, or, alternatively, (y) whether the Committee Carve-Out Cash constitutes the sole property of the holders of Allowed GUCs and must be paid directly to the holders of Allowed GUCs (or a trust created for the benefit of holders of Allowed GUCs)…"

*See* May 14, 2009 Order, ¶ 5.

30.     In addition, the May 14, 2009 Order contains certain conditions that govern the funding by the Pre-Petition Secured Lenders (as defined in the May 14, 2009 Order) of the Committee Carve-Out Cash (as defined in the Order).  In pertinent part, the Order provides:

> "Notwithstanding anything herein to the contrary, the Pre-Petition Secured Lenders shall not be required to fund any of the Settlement Sums prior to the last to occur of (a) entry of the Settlement Funding Order, (b) the Closing (as defined in that certain Asset Purchase Agreement, dated as of December 12, 2008, among the Debtors, as sellers, and New World TV Group, LLC, as buyer), and (c) the delivery by the Trustee to counsel to the Committee and counsel to Fortress of (i) a written statement certifying that the Trustee and the Court have completed the claims objection process relating to all non-insider, general unsecured claims against the Debtors and (ii) a schedule that identifies the holder and allowed amount of each Allowed GUC and the aggregate amount of all Allowed GUCs; and provided further, however, that, notwithstanding the delay required by this Order with respect to the funding of the Committee Carve-Out Cash, the provisions of this Order shall take effect immediately upon its entry."

*See* May 14, 2009 Order, ¶ 6.

E.      **The Operational Separation and Settlement Agreement[4]**

31.      On October 7, 2009, the Trustee, on behalf of the Debtors' estates, and Harry J. Pappas and Stella A. Pappas, debtors and debtors in possession in the chapter 11 cases captioned *In re Harry J. Pappas and Stella A. Pappas*, Case No. 08-10949 (PJW) filed the Joint Motion of the Chapter 11 Trustee and the Individual Debtors, Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9019, for Entry of an Order (1) Approving Operational Separation and Settlement Agreement Entered Into By and Among the Corporate Chapter 11 Debtors, the Individual Debtors and Certain Non-Debtor Entities and (2) Granting Related Relief [Docket No. 1655] (the **"OSSA Motion"**).

32.      In anticipation of closing the transactions approved under the Multiple Station Sale Order, the Trustee, Harry J. Pappas (acting on his own behalf and on behalf of the Non-Debtor Entities and Connective Tissue) and the Buyers negotiated in order to resolve various matters described in the recitals to the Operational Separation and Settlement Agreement that concern property and property interests used or useable in the business and operations of the Corporate Debtors and the Non-Debtor Entities, respectively, in order, among other things, to: (i) transfer and deliver to the Buyers certain of such property and property interests, (ii) facilitate a smooth transition from the Corporate Debtors to Buyers with respect to the Corporate Debtors' business and operations, (iii) arrange for the allocation, separation and transfer of various assets that are commonly used by the Corporate Debtors and the Non-Debtor Entities to support their respective businesses, and (iv) memorialize the terms and conditions under which the Buyers and

---

[4]      Capitalized terms not otherwise defined in this Section E shall have the meanings ascribed to such terms in the OSSA Motion.

Non-Debtor Entities will provide one another with certain transition-related services in order to facilitate the smooth separation of their respective businesses during the transition period.

33.     This Court entered an Order granting the OSSA Motion on October 14, 2009 [Docket No. 1680].

**F.     Bar Dates**

34.     On October 31, 2008, the Committed filed its Motion for Entry of an Order (A) Setting Bar Dates for Filing Proofs of Claim or Motions, (B) Approving the Form and Manner of Filing Proofs of Claim, and (C) Approving Notice Thereof [Docket No. 493].

35.     On November 20, 2008, this Court entered the Order (I) Establishing Bar Dates for Filing Proofs of Claim [Docket No. 588] (the **"Bar Date Order"**)

36.     On August 28, 2009, the Trustee filed the Motion of the Chapter 11 Trustee for Order (A) Fixing Deadlines for Filing Requests for Allowance of Administrative Expense Claims Incurred After May 10, 2008 and (B) Designating Form and Manner of Notice Thereof [Docket No. 1511].

37.     On September 9, 2009, the Court entered the Order (A) Fixing Deadlines for Filing Requests for Allowance of Administrative Expense Claims Incurred After May 10, 2008 and (B) Designating Form and Manner of Notice Thereof [Docket No. 1553] (the **"Administrative Claim Bar Date Order"**).

**G.     Requested Approval of The GUC Trust Agreement**

38.     The Committee shall be filing its Certification of Counsel For Entry of an Order Approving a Grantor Trust in Furtherance of the Bankruptcy Court's May 14, 2009 Order Approving Joint Motion of the Official Committee of Unsecured Creditors and the Chapter 11 Trustee, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, for Entry of an Order Approving a Stipulation Entered Into By and Among the Committee, the

Trustee and Fortress Credit Corp [Docket No. TBD] seeking entry of an Order (A) Authorizing and Directing Transfer of the Committee Carve-Out Cash to the GUC Trust, (B) Approving the Form of the GUC Trust Agreement, and (C) Granting Certain Related Relief (the **"Proposed Funding Order"**) (Docket No. TBD).

39.     The Stipulation detailed in Section D above and the Proposed Funding Order contemplate, among other things, the establishment of a trust (the **"GUC Trust"**) for the benefit of the holders of the Allowed GUCs, and that Fortress will transfer the Committee Committee Carve-Out Cash to the GUC Trust as set forth in the Proposed Funding Order.

**H.     Claim Resolution Process**

40.     The Trustee has examined and, where appropriate, objected to various claims filed against the Debtors' estates.  All claim objections filed by the Trustee have been prosecuted to entry of an order by this Court or otherwise settled or resolved between the Trustee and the applicable claimants.

41.     The Trustee shall serve on the Committee and Fortress (a) his written certification that the Trustee and the Court have completed the claims reconciliation process relating to all non-insider, general unsecured claims against the Debtors and (b) a schedule that identifies the holder, its address and the allowed amount of each Allowed GUC (as defined in the Proposed Funding Order) and the aggregate amount of all Allowed GUCs[5].

42.     Those submissions by the Trustee demonstrate that the aggregate amount of all Allowed GUCs is $18,900,005.30.  Based on the Debtors' books and records and during the course of his claims reconciliation process, the Trustee has determined that the aggregate amount of outstanding claims against the Debtors' estates that are secured or entitled to priority,

---

[5]     The certification to be provided by the Trustee will separately identify the Allowed GUCs, Priority Claims and Administrative Claims.

PHI 316,570,039v3

administrative or otherwise, that remain unpaid is $69,667.00 (the **"Priority Claims"**).  See **Exhibit A** (attached hereto and incorporated herein by reference) for a listing of the Priority Claims.

43.     The Trustee has further determined that substantially all of the administrative expenses under section 503(b) of the Bankruptcy Code that were incurred by the Debtors, including administrative expense claims properly filed in these cases in response to the Court's Bar Date Order (excluding claims for fees and expenses incurred by professionals retained in these cases), have been paid in the ordinary course of the Debtors' business, and the aggregate, outstanding amount of such administrative expenses (excluding claims for fees and expenses incurred by professionals retained in these cases) is $19,253.80 (such administrative expenses, exclusive of such professional fees and expenses, **"Administrative Claims"**).  See **Exhibit B** (attached hereto and incorporated herein by reference) for a listing of the Administrative Claims.

44.     In furtherance of the Proposed Funding Order, and in an effort to wind-down the Debtors' estates, the Committee has proposed to provide for the payment of all allowed, unpaid Priority Claims and Administrative Claims as set forth in Paragraphs 40 and 41 above (except administrative expense claims for fees and expenses incurred by professionals retained in these cases) by using the Committee Carve-Out Cash to pay (i) the allowed Priority Claims and (ii) the allowed Administrative Claims.  Thus, upon information and belief, all allowed Administrative Claims (exclusive of professional fees and expenses) and allowed Priority Claims against the Debtors' estates will be paid in full from the Committee Carve-Out Cash.

## I.     Potential Avoidance Actions

45.     In his normal due diligence as Trustee, the Trustee has caused the Debtors' books and records to be reviewed for possible avoidance actions.  It should be noted that the Multiple Station APA provided in part as follows:

Section 6.3  Other Covenants of Setters and Buyers.

    (d)     Critical Vendors.

        (i)    Within forty-five (45) days following entry of the Sale Approval Order, Buyer shall deliver to Sellers a schedule of vendors that in Buyer's judgment are necessary and critical to the Acquired Business (the "Critical Vendors").

        (ii)    Sellers covenant and agree that they shall not, at any time, bring any claim or cause of action arising under Chapter 5 of the Bankruptcy Code, and shall dismiss any such claim or cause of action if brought, against any Critical Vendor.  Sellers also covenant and agree that they shall take all actions reasonably requested by Buyer to ensure that no such claim or cause of action is brought against any Critical Vendor.

46.    As a result of the terms contained in the Multiple Station APA as set forth above, the Trustee's due diligence uncovered only two potential avoidable actions:  (1) Sutherland Asbill & Brennan LLP; and Debevoise & Plimpton LLP.  The Sutherland Asbill & Brennan LLP matter was settled (see Docket No. 1917) which resulted in a $50,000.00 recovery to the Debtors' Estates, and Debevoise & Plimpton LLP's settlement is pending [Docket No. 2082].  If the Debevoise & Plimpton LLP settlement is approved (scheduled for hearing on May 17, 2010), it will generate a $25,000.00 recovery for the Debtors' Estates and reduce the amount of unsecured claims filed by Debevoise & Plimpton LLP against the Debtors' Estates.

## J.    Monthly Operating Reports And Quarterly Fees

47.    The Trustee has filed all of the monthly operating reports for the Debtors' Estates through February 2010.  By the time this motion is heard, the Trustee will have filed the March 2010 monthly operating report.  All quarterly fees due and owing to the United States Trustee's Office through and including February 10, 2010 have been paid.

48.    The Trustee will file all monthly operating reports up and through the effective date of dismissal of these cases as soon as practicable but no later than June 21, 2010.

Additionally, all quarterly fees due and owing to the United States Trustee's Office will be paid prior to the effective date of the dismissal of these cases.

**K.**     **Final Fee Hearing**

49.     The Trustee shall file his final Commission Request within ten (10) days of the hearing of this Motion and request a hearing prior to the effective date of dismissal of these cases. Counsel to the Trustee and to the Committee shall file within ten (10) days of the hearing of this Motion supplements to final fee applications, if applicable, and shall have a hearing prior to the effective date of the dismissal of these cases.

### III.     RELIEF REQUESTED

50.     Upon entry of the Proposed Funding Order, and subject to the Court's consideration of this Motion, the Trustee requests entry of an order (i) dismissing the Debtors' bankruptcy cases; (ii) releasing and discharging the Trustee; (iii) authorizing the abandonment and/or destruction of business records; (iv) dismissing the Claims Agent; and (v) certain related relief. The Court should approve the Motion because (a) the Trustee and/or Debtors are unable to bear the administrative burden of effectuating a plan of reorganization or liquidation; (b) all claims against the Debtors' estates have been resolved; and (c) the Debtors have no remaining estate assets to administer.

51.     Dismissal of the Debtors' cases and granting of the relief sought herein will maximize the value of the Debtors' estates, prevent the accruing of any further administrative expenses, and permit the prompt distribution of the Committee Carve-Out Cash to the holders of Allowed GUCs.

52.     As detailed in this Motion, other than a hearing on this Motion, reviewing and signing appropriate tax returns, the filing of necessary operating reports with this Court, and the final administration of professional fee applications and the Trustee's commission request, there

are no remaining tasks for the Trustee to complete.  The Trustee anticipates that all or nearly all of these tasks will be complete prior to the hearing on this Motion.  To the extent any tasks remain outstanding, the Trustee will request that the effectiveness of any Order granting this Motion be expressly conditioned upon the completion of such tasks, but by no later than June 30, 2010.

## APPLICABLE AUTHORITY

### A.   Dismissal Of The Debtors' Chapter 11 Cases; Release And Discharge Of The Chapter 11 Trustee

53.    Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's chapter 11 case "for cause."  11 U.S.C. § 1112(b); In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984); In re Blunt, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  Section 1112(b) of the Bankruptcy Code states, in pertinent part:  ". . . on request of any party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause . . . ."  A determination of cause is made by the court on a case-by-case basis.  Albany Partners, 749 F.2d at 674.  In addition, the decision to dismiss a case is particularly delegated to the bankruptcy court's sound discretion.  See In re Camden Ordinance Mfg. Co. of Arkansas, Inc., 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) (citing In re Atlas Supply Corp., 837 F.2d 1061, 1063 (5th Cir. 1988)).  Therefore, it is clear that the Court is authorized to dismiss the Debtors' chapter 11 bankruptcy cases upon a showing of "cause."

54.    The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; see also In re Preferred Door Co.,

990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a bankruptcy case); In re Sullivan Cent. Plaza I, Ltd., 935 F.2d 723, 728 (5th Cir. 1991) (stating that determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); In re Koerner, 800 F.2d 1358, 1367 & n. 7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); Albany Partners, 749 F.2d at 674 (same).

55.     Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of ten grounds for dismissal. 11 U.S.C. § 1112(b)(1)-(10); Frieouf v. U.S., 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is nonexhaustive); Blunt, 236 B.R. at 864 (same). One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]." 11 U.S.C. § 1112(b)(2); Preferred Door Co., 990 F.2d at 549; Sullivan Cent. Plaza I, 935 F.2d at 728. Here, the Court may dismiss the Debtors' chapter 11 bankruptcy cases because the Trustee and/or Debtors are unable to effectuate a plan. 11 U.S.C. § 1112(b)(5).

56.     Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist." See Preferred Door, 990 F.2d at 549 (quoting Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out); Blunt, 236 B.R. at 865 (finding cause to dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be nonexistent).

57.     Here, it is simply not possible or practical to effectuate a plan of reorganization or liquidation because the Debtors' assets have been liquidated and no remaining funds or

-20-

unencumbered assets exist. Furthermore, there is no remaining business to reorganize. By continuing in bankruptcy, the Debtors could incur additional administrative expenses beyond their ability to pay. In sum, the Debtors have met their burden of proof to show that cause exists to dismiss the Debtors' chapter 11 bankruptcy cases under section 1112(b) of the Bankruptcy Code due to the inability to effectuate a plan of reorganization or liquidation.

58. Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the creditors and of the estate. See In re Superior Sliding & Window, Inc., 14 F.3d 240, 243 (4th Cir. 1994); In re Mazzocone, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), aff'd 200 B.R. 568 (E.D. Pa. 1996); In re Warner, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988). A variety of factors demonstrate that it is in the best interest of the creditors and the Debtors' estates to dismiss the chapter 11 cases and authorize distribution of the Committee Carve-Out Cash to holders of Allowed GUCs, as contemplated by this Motion and Proposed Funding Order.

59. Among other things, a dismissal of a chapter 11 bankruptcy case meets the best interests of the creditors test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated. See In re BTS, Inc., 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); In re Camden Ordinance Mfg. Co. of Arkansas, Inc., 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage business which ceased business was unfeasible); In re Brogdon Inv. Co., 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing a chapter 11 bankruptcy proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

60. As explained above, the Debtors have nothing left to reorganize or liquidate. As of the date of this Motion, the Debtors' assets have been liquidated. All claims against the

Debtors' estates have been resolved. The only significant remaining task is for the GUC Trustee (as defined in the Proposed Funding Order) to distribute the Committee Cash Carve-Out to holders of Allowed GUCs. See In re SPM Mfg. Corp., 984 F.2d 1305 (1st Cir. 1993) (holding a secured creditor may share proceeds it is otherwise entitled to receive with unsecured creditors); In re MCorp. Fin., Inc., 160 B.R. 941 (S.D. Tex. 1993) (holding senior creditor may share its proceeds with specified junior creditors so long as junior creditors not receiving distribution receive at least as much as they would in a hypothetical chapter 7 without the sharing); In re World Health Alternatives, Inc., 344 B.R. 291 (Bankr. D. Del. 2006) (holding a secured creditor may carve out funds from its collateral for the benefit of unsecured creditors in exchange for committee's withdrawal of its objection to motion to sell substantially all of debtor's assets); In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001) (holding that secured lender's distribution to management did not preclude confirmation of the plan).

61.     Thus, dismissal of the Debtors' chapter 11 cases is in the best interests of their creditors because the Debtors' operations no longer exist, and the Committee Carve-Out Cash is immediately available for distribution to the holders of Allowed GUCs in accordance with the GUC Trust Agreement, Stipulation and Proposed Funding Order, including primarily the Debtors' general unsecured creditors.

62.     The Stipulation, Proposed Funding Order and this Motion represent the parties' cooperative efforts at reaching a solution that benefits all of the creditors within the confines of the Bankruptcy Code. Authorizing distribution of the Committee Carve-Out Cash and allowing dismissal of the Debtors' bankruptcy cases simply furthers the Bankruptcy Code's goal of efficient administration of the Debtors' bankruptcy estates to maximize the return to general unsecured creditors.

63.     In addition, dismissal is proper because the alternative—conversion to chapter 7—is impractical.  One element of the best interest of the "estate" focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy.  In re Clark, 1995 WL 495951, at 5 (N.D. Ill. 1995); In re Staff Inv. Co., 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993).  The prime criterion for assessing the interests of the estate is the maximization of its value as an economic enterprise.  See id.  Here, dismissal of the Debtors' cases will maximize the value of the Debtors' estates because conversion to a chapter 7 liquidation and appointment of a trustee would impose significant and unnecessary additional administrative costs upon the Debtors' estates.  Dismissal of the Debtors' chapter 11 bankruptcy cases is preferred in this instance because the Trustee and/or Debtors do not have any significant remaining duties, and the GUC Trustee will have only one remaining relatively simple administrative duty— distribution of the Committee Carve-Out Cash to the holders of Allowed GUCs.

**B.      Abandonment And/Or Destruction Of Business Records**

64.     The Debtors currently maintain certain business records, including, but not limited to, employee records, customer records, and other business documents (the **"Business Records"**), except any business records transferred to the applicable purchaser pursuant to the Initial Reno Sale Order, the Multiple Station Sale Approval Order and the Remaining Reno Assets Sale Order.

65.     Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy court's power to take whatever

-23-

action is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01 at 105-6 (15th ed. rev. 1999).

66. As is the case with a debtor's decision to reject an executory contract, the Court should apply the business judgment standard in reviewing the Trustee's decision to abandon property that is either of inconsequential value or burdensome to the estate. See In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary.... The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.") (internal citations omitted); Reich v. Burke (In re Reich), 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985) ("[I]f a trustee feels an asset is of inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' he may abandon it." (emphasis in original)).

67. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment. See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (same).

68. The Trustee's and/or Debtors' abandonment and destruction of the Business Records is warranted under sections 363 and 554(a), and the destruction, including the

incurrence of costs associated with destruction, is permitted under section 363 of the Bankruptcy Code. The Debtors have ceased operations and recently liquidated their assets. Accordingly, the only reason to maintain the Business Records is, to the extent necessary, to administer these cases. The Trustee has concluded that the Business Records are not needed for this purpose and are therefore worthless to the Debtors' estates. Because the Debtors have no proposed future operations and the Business Records have no independent value to these cases, there is no need to keep the Business Records. The cost to store the Business Records would be burdensome to the Debtors' estates.

69. To the extent that any Business Records contain personally identifiable information, the Trustee and/or Debtors will destroy such records in accordance with applicable law in order to protect any former employees or customers whose information appears therein. To the extent that the Trustee and/or Debtors have any obligations under federal or state law to retain any Business Records for a certain period of time, the Court may waive the Trustee's and/or Debtors' compliance with such obligations. As discussed above, under section 105(a), the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. Section 351 of the Bankruptcy Code, for example, establishes procedures whereby a debtor that is a health care business and does not have sufficient funds to pay for the storage of patient records in the manner required under applicable federal or state law may dispose of such records notwithstanding legal requirements that would otherwise mandate their retention by the debtor for a certain period of time. 11 U.S.C. § 351.

70. This Court, in the exercise of its equitable power under section 105(a) and by analogy to section 351, should waive the Trustee's and/or Debtors' compliance with any obligations that the Trustee and/or Debtors may have under federal or state law to retain the

Business Records. In addition, pursuant to section 554, the Trustee and/or Debtors have a right to abandon property that is burdensome to the estates and of inconsequential value and benefit to the estates, such as the Business Records. The need to comply with any obligations under federal or state law to retain the Business Records would frustrate the Trustee's and/or Debtors' exercise of their right to abandon property under the Bankruptcy Code.

71.     Given that the Debtors have liquidated their assets and that the Business Records are no longer needed, the Trustee believes that the Business Records should be destroyed. Prior to filing this Motion, the Trustee conferred with the purchasers pursuant to Initial Reno Sale Order, the Multiple Station Sale Approval Order and the Remaining Reno Assets Sale Order and the Committee to determine which, if any, of the Business Records should be preserved. Such Business Records have been removed and transferred to the appropriate party.

72.     The Trustee submits that the Business Records remaining serve no foreseeable purpose for the Trustee and/or Debtors, have no useful value, and as a result, their abandonment and/or destruction should be approved as storage of the Business Records is burdensome to the Debtors' estates, with no corresponding benefit.

**C.     Dismissal Of The Claims Agent**

73.     By this Court's Order dated May 17, 2008 authorizing the appointment and retention of the Claims Agent, the Debtors were authorized to retain Administar Services Group LLC, now known as Kurtzman Carson Consultants, to provide noticing services in these cases with respect to, *inter alia*, hearings, orders, and claims bar dates, as well as the service of any plan and disclosure statement filed in these cases and any solicitation of and tallying of ballots to accept or reject such plan.

74.     As set forth above, the Trustee has examined and, where appropriate, objected to various claims filed against the Debtors' estates. All claim objections filed by the Trustee have

-26-

been prosecuted to entry of an order by this Court or otherwise settled or resolved between the Trustee and the applicable claimants. The Trustee does not anticipate filing any additional motions in these cases, nor does the Trustee anticipate the need for any further services by the Claims Agent. In addition, because the Trustee has not filed and does not intend to file a plan or disclosure statement in these cases, the services of the Claims Agent are no longer required.

75. Accordingly, there are no remaining tasks to be completed by the Claims Agent and the Trustee submits that dismissal of the Claims Agent is appropriate and warranted in these cases.

## IV. NOTICE

76. Notice of this Motion will be sent by first-class mail, postage pre-paid and will be given to (i) the United States Trustee; (ii) counsel to the Committee; (iii) all creditors and equity security holders identified in the list of creditors and equity security holders heretofore filed herein with the Court by the Debtors; (iv) all parties who have requested notice in the Cases pursuant to Bankruptcy Rule 2002; (v) the United States Attorney's Office for the State of Delaware; (vi) counsel to the Pre-Petition Agent, and (vii) counsel to certain of the Pre-Petition Lenders (all such parties, collectively, the "**Notice Parties**").

## V. NO PRIOR REQUEST

77. No prior request for the relief sought in this Motion has been made to this or to any other Court.

## VI. CONCLUSION

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order (i) granting the Motion; (ii) dismissing the Debtors' chapter 11 cases; (iii) releasing and discharging the Trustee; (iv) authorizing the abandonment and/or destruction of business records; (v)

dismissing the claims agent; and (vi) granting such other and further relief as this Court deems just and proper.

Dated:  May 5, 2010

McCARTER & ENGLISH, LLP
Charles A. Stanziale, Jr., Esquire
Jeffrey T. Testa, Esquire
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
E-mail: cstanziale@mccarter.com
       jtesta@mccarter.com

Counsel for Chapter 11 Trustee,
E. Roger Williams

-and-

GREENBERG TRAURIG, LLP

*/s/  Dennis A. Meloro*
Victoria W. Counihan (Bar No. 3488)
Dennis A. Meloro (Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, DE  19801
Telephone: (302) 661-7000
Facsimile:  (302) 661-7360
E-mail: counihanv@gtlaw.com
       melorod@gtlaw.com

Co-Counsel for Chapter 11 Trustee,
E. Roger Williams

PHI 316,570,039v3

# EXHIBIT A

**Exhibit A to Motion Of Chapter 11 Trustee, Pursuant To Sections
105(a), 349 And 1112(b) Of The Bankruptcy Code, For The
Entry Of An Order (I) Dismissing The Debtors' Chapter 11 Cases;
(II) Releasing And Discharging The Chapter 11 Trustee;
(III) Authorizing The Abandonment And/Or Destruction
Of Business Records; (IV) Dismissing The Claims
Agent; And (V) Granting Certain Related Relief**


## PRIORITY CLAIMS UNPAID


| 1. | Nebraska Department of Revenue: | $69,667.00 |
| --- | --- | --- |
| | Total: | $69,667.00 |

# EXHIBIT B

**Exhibit B to Motion Of Chapter 11 Trustee, Pursuant To Sections 105(a), 349 And 1112(b) Of The Bankruptcy Code, For The Entry Of An Order (I) Dismissing The Debtors' Chapter 11 Cases; (II) Releasing And Discharging The Chapter 11 Trustee; (III) Authorizing The Abandonment And/Or Destruction Of Business Records; (IV) Dismissing The Claims Agent; And (V) Granting Certain Related Relief**

## ADMINISTRATIVE CLAIMS UNPAID

| | | |
|---|---|---|
| 1. | Harris Corporation: | $ 1,818.61 |
| 2. | Harris Corporation: | $  607.60 |
| 3. | Harris Corporation: | $ 1,827.59 |
| 4. | Interep National Radio Sales: | $15,000.00 |
| | Total: | $19,253.80 |